IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SALIX PHARMACEUTICALS, LTD.; SALIX )
PHARMACEUTICALS, INC.; BAUSCH )
HEALTH IRELAND LTD.; ALFASIGMA S.P.A., )
)
            Plaintiffs, )    C.A. No. 20-430 (RGA)
)
   v. )
)
NORWICH PHARMACEUTICALS, INC., )
)
            Defendant. )

**PLAINTIFFS' OPENING POST-TRIAL BRIEF
ON INFRINGEMENT AND SECONDARY CONSIDERATIONS**

 

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
kjacobs@morrisnichols.com
cclark@morrisnichols.com
*Attorneys for Plaintiffs*

OF COUNSEL:

Scott K. Reed
Steven C. Kline
Shannon K. Clark
Daniel A. Apgar
Alexis M. McJoynt
Damien N. Dombrowski
VENABLE LLP
1290 Avenue of the Americas
New York, NY  10104
(212) 218-2100

Becky E. Steephenson
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
(212) 307-5598

April 28, 2022

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

I.      INTRODUCTION ...................................................................................................1

II.     POLYMORPH PATENT CLAIMS ......................................................................1

        A.      Direct Infringement...................................................................................1

III.    HE AND IBS-D PATENT CLAIMS......................................................................1

        A.      Induced Infringement ...............................................................................1

                1.      Patients and Physicians Will Rely on Norwich's Label ..............................2

                2.      Patients, or Alternatively Physicians and Patients Jointly, Will Directly
                        Infringe.............................................................................................................4

                3.      Norwich Will Induce Infringement of the HE Patent Claims....................6

                        a)      Administering for 12 Months or Longer (All Claims)....................6

                        b)      Maintaining Remission of HE ('573 Patent, Claim 8)....................7

                        c)      Conn Score of 0 or 1 ('397 Patent, Claims 11 and 12)...................9

                        d)      Rifaximin Plus Lactulose ('397 Patent, Claim 12) ........................10

                4.      Norwich Will Induce Infringement of the IBS-D Patent Claims..............12

                        a)      Adults 65 Years of Age or Older ('667 Patent, Claim 3) .............12

                        b)      12-Week Durability of Response ('569 Patent, Claim 2).............14

        B.      Secondary Considerations of Nonobviousness ....................................15

                1.      HE Patent Claims.........................................................................................16

                2.      IBS-D Patents................................................................................................17

IV.     CONCLUSION.....................................................................................................18

# **TABLE OF AUTHORITIES**

**Page(s)**

*Adams Respiratory Ther., Inc. v. Perrigo Co.*,
  616 F.3d 1283 (Fed. Cir. 2010)...................................................................................1

*Akamai Techs, Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) (en banc)...........................................................2, 4

*Apple Inc. v. Samsung Elecs. Co.*,
  839 F.3d 1034 (Fed. Cir. 2016) (en banc).............................................................15

*AstraZeneca LP v. Apotex, Inc.*,
  623 F. Supp. 2d 579 (D.N.J. 2009) ........................................................................3

*AstraZeneca LP v. Apotex, Inc.*,
  633 F.3d 1042 (Fed. Cir. 2010)..........................................................1, 3, 8, 12, 14

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
  845 F.3d 1357 (Fed. Cir. 2017)..........................................................5, 6, 7, 9, 14

*Envtl. Designs, Ltd. v. Union Oil Co. of Cal.*,
  713 F.2d 693 (Fed. Cir. 1983)..............................................................................17

*GlaxoSmithKline LLC v. Teva Pharms. USA Inc.*,
  7 F.4th 1320 (Fed. Cir. 2021) ....................................................................2, 11, 13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)................................................................................................2

*Immunex Corp. v. Sandoz Inc.*,
  964 F.3d 1049 (Fed. Cir. 2021)........................................................15, 16, 17, 18

*Neptune Generics, LLC v. Eli Lilly & Co.*,
  921 F.3d 1372 (Fed. Cir. 2019)............................................................................17

*Orexigen Therapeutics, Inc. v. Actavis Lab'ys FL, Inc.*,
  282 F. Supp. 3d 793 (D. Del. 2017).........................................................4, 10, 15

*Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*,
  323 F. Supp. 3d 566 (D. Del. 2018)........................................................3, 4, 5, 6

*Persion Pharms. LLC v. Alvogen Malta Operations Ltd.*,
  945 F.3d 1184 (Fed. Cir. 2019)..............................................................................3

*Procter & Gamble Co.*,
566 F.3d 989 (Fed. Cir. 2009)......................................................................................16

*Sanofi v. Glenmark Pharms. Inc., USA*,
204 F. Supp. 3d 665 (D. Del. 2016)..................................6, 8, 9, 11, 12, 14, 16, 17

*Sanofi v. Watson Labs. Inc.*,
875 F.3d 636 (Fed. Cir. 2017)...............................................................................6, 14, 15

*Shire LLC v. Amneal Pharms., LLC*,
Case No. 11-3781, 2014 WL 2861430 (D.N.J. June 23, 2014)...............................11

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
876 F. Supp. 2d 295 (S.D.N.Y. 2012)..................................................................17

*Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*,
887 F.3d 1117 (Fed. Cir. 2018)...........................................................................1, 2, 13

## TABLE OF ABBREVIATIONS

| '195 patent | U.S. Patent No. 9,421,195 |
|---|---|
| '199 patent | U.S. Patent No. 7,612,199 |
| '206 patent | U.S. Patent No. 7,902,206 |
| '397 patent | U.S. Patent No. 10,335,397 |
| '569 patent | U.S. Patent No. 8,309,569 |
| '573 patent | U.S. Patent No. 8,642,573 |
| '667 patent | U.S. Patent No. 10,765,667 |
| BID | two times a day |
| FDA | Food and Drug Administration |
| HE | hepatic encephalopathy |
| IBS-D | irritable bowel syndrome with diarrhea |
| TID | three times a day |

## I.     INTRODUCTION

Norwich triggered this Hatch-Waxman case by seeking FDA approval to make a generic copy of Plaintiffs' Xifaxan® (rifaximin) 550 mg tablet ("Norwich's ANDA Product") with a label ("Norwich's Label") stating that its ANDA Product should be used for the treatment of irritable bowel syndrome with diarrhea (IBS-D) in adults and reduction in risk of overt hepatic encephalopathy (HE) recurrence in adults.

The Court held a bench trial from March 21-25, 2022 on infringement and validity of three sets of Orange Book-listed patents covering Xifaxan® 550 mg and its uses: (1) HE Patent Claims: '573 patent, claim 8; '195 patent, claim 6; and '397 patent, claims 11 and 12; (2) IBS-D Patent Claims: '569 patent, claim 2 and '667 patent, claim 3; and (3) Polymorph Patent Claims: '199 patent, claim 4 and '206 patent, claim 36.

This post-trial brief focuses on the disputed issues. The facts needed to meet Plaintiffs' burdens (most of which are undisputed) are in Plaintiffs' Proposed Findings of Fact.

## II.    POLYMORPH PATENT CLAIMS

### A.     Direct Infringement

If the FDA approves Norwich's ANDA, there is no dispute that Norwich's ANDA Product will infringe claim 4 of the '199 patent and claim 36 of the '206 patent, and there is no dispute that the rifaximin β specified for use in Norwich's ANDA Product will infringe claim 4 of the '199 patent. Uncontested Facts, ¶¶ 126, 127, 128.

## III.   HE AND IBS-D PATENT CLAIMS

### A.     Induced Infringement

Plaintiffs must show it is more likely than not that Norwich will knowingly induce direct infringement. *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1056 (Fed. Cir. 2010); *Adams Respiratory Ther., Inc. v. Perrigo Co.*, 616 F.3d 1283, 1287 (Fed. Cir. 2010). "When proof of

specific intent depends on" an ANDA filer's label, "the label must encourage, recommend, or promote infringement." *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018) (citation omitted). Actual knowledge or willful blindness satisfy the knowledge requirement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766-68 (2011). If more than one person is involved in directly infringing a method, the person who "directs or controls" the other's actions can be held responsible for infringement. *Akamai Techs, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022-23 (Fed. Cir. 2015) (en banc).

### 1.    Patients and Physicians Will Rely on Norwich's Label

Norwich's Label is an instruction manual telling patients and physicians how, when, and why to use Norwich's ANDA Product. Tr. 532:3-12, 540:5-542:6 (Schoenfeld); Tr. 66:22-68:8, 69:5-20, 85:17-19, 85:22-87:3, 87:16-88:18 (Brown). *See GlaxoSmithKline LLC v. Teva Pharms. USA Inc.*, 7 F.4th 1320, 1334 (Fed. Cir. 2021) ("Our precedent has consistently held that, when a product is sold with an infringing label or an infringing instruction manual, such a label is evidence of intent to induce infringement."). Common to Norwich's non-infringement defenses is its position that physicians and patients will not read Norwich's Label. That, however, is not what the evidence showed at trial, nor would it exempt Norwich from inducement. *Id*. at 1340 ("[W]e have affirmed induced infringement … on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers … without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

There is no dispute that some physicians will review Norwich's Label. Tr. 119:5-21, 120:11-16 (Mahl); Tr. 579:24-580:12 (Triadafilopoulos); Tr. 66:22-68:8 (Brown); Tr. 532:3-12, 540:5-542:6 (Schoenfeld); Tr. 693:17-22 (Harary). Indeed, physicians are the "principal intended audience" of drug labels. PTX 941 at 3930; *see also* Tr. 67:16-68:8 (Brown); Tr. 107:16-108:3 ("These [contents on the first page of Norwich's Label] are *Norwich's instructions* through the

2

FDA to tell a provider how a medication should be offered to a patient.") (emphasis added) (Mahl); Tr. 541:2-15 (Schoenfeld). It is legally irrelevant that some (but not all) of Norwich's experts personally do not plan to read Norwich's Label. *AstraZeneca LP v. Apotex, Inc.*, 623 F. Supp. 2d 579, 604 (D.N.J. 2009) ("Next, Apotex argues that its label is not actually causing the infringement because doctors will prescribe the drug however they please regardless of what the label provides. For example, Dr. Accetta testified that no matter what the label instructed, he would prescribe [the drug] twice-daily as he saw fit. This testimony misses the point. If the label explicitly instructed a once-daily administration, i.e., clearly an infringing use, Dr. Accetta's refusal to follow such instruction would not absolve Apotex."), *aff'd* 633 F.3d 1042 (Fed. Cir. 2010).

Patients also will review Norwich's Label. Tr. 69:5-20, 85:17-88:18 (Brown); Tr. 533:5-7, 541:16-21 (Schoenfeld). The "Patient Counseling Information" section provides instructions to the patients to take rifaximin "exactly as directed." Tr. 78:20-79:5 (Brown); Tr. 533:5-7 (Schoenfeld); JTX 73, § 17; *see also* PTX 941 at 3930 (comment that adding "Highlights" section to label cover "would help make labeling easier *for patients* and healthcare practitioners to understand") (emphasis added). *See Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*, 323 F. Supp. 3d 566, 586 (D. Del. 2018) (Bryson, J., sitting by designation) (finding defendant's label instructs patients to administer the ANDA product and "to do so as prescribed by their physicians"), *aff'd sub nom. Persion Pharms. LLC v. Alvogen Malta Operations Ltd.*, 945 F.3d 1184 (Fed. Cir. 2019). Although Norwich's HE expert did not think patients will be able to "read and understand" Norwich's Label, Tr. 111:2-16 (Mahl), and Norwich's IBS-D expert did not plan to give patients the label, Tr. 109:8-13 (Triadafilopoulos), "[i]n the context of specific intent, it is irrelevant that some users may ignore" sections of the label. *AstraZeneca*, 633 F.3d at 1060. And physicians will review Norwich's Label with patients to help them understand the contents or answer patients'

questions about it. Tr. 90:12-91:6, 78:11-19 (Physicians will tell patients that they must take rifaximin according to the label because "it's the labeled indication … that has been proven in clinical trials to work") (Brown); Tr. 539:12-541:15 (Schoenfeld).

As discussed below in sections III.A.3-4, Norwich's Label will encourage infringement of the HE and IBS-D Patent Claims. That is true regardless of whether patients read and follow the label on their own; whether patients read the label together with their physicians; or whether physicians communicate to patients the information from the label (*e.g.*, by reading it to patients).

### 2.   Patients, or Alternatively Physicians and Patients Jointly, Will Directly Infringe

It is more likely than not that patients will directly infringe the HE and IBS-D Patent Claims, because patients will read and follow the instructions in Norwich's Label (with or without the help of their physician). This alone is sufficient for direct infringement. *Orexigen Therapeutics, Inc. v. Actavis Lab'ys FL, Inc.,* 282 F. Supp. 3d 793, 813-14 (D. Del. 2017) (Andrews, J.); *Pernix*, 323 F. Supp. 3d at 582 ("[P]atients with mild or moderate hepatic impairment taking Alvogen's product in accordance with the directions in Alvogen's proposed label would directly infringe the one-step claims: Physicians would prescribe a non-adjusted dose of Alvogen's product for patients with mild or moderate hepatic impairment, and the patients would self-administer the dosages as prescribed and directed by their physicians.").

Alternatively, it is more likely than not that Norwich will induce physicians and patients to jointly infringe the HE and IBS-D Patent Claims.  Physicians direct and control patients' administration of Norwich's ANDA Product, making the physician a single actor responsible for infringement. *Akamai*, 797 F.3d at 1023 (joint infringement occurs when a party "conditions participation in an activity or receipt of a benefit upon [another's] performance of a step or steps of a patented method and establishes the manner or timing of that performance"). Thus, Norwich's

4

Label induces physicians and patients to jointly infringe for the same reasons it induces patients to infringe (discussed below in sections III.A.3-4).

**Establishing the manner or timing of performance.** Physicians will establish when and how patients take Norwich's ANDA Product. Tr. 542:22-543:3 (Schoenfeld); Tr. 582:1-20, 583:8-19 (Triadafilopoulos); Tr. 77:14-24, 79:20-80:9 (Brown); *see* Tr. 120:25-121:2, 123:16-124:13 (Mahl) (he will instruct patients to take it "as directed" if the patient is taking the drug "incorrectly"); JTX 73, § 17 ("When rifaximin tablets are prescribed to treat a bacterial infection, patients should be told . . . the medication should be taken exactly as directed."); *see Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.,* 845 F.3d 1357, 1367 (Fed. Cir. 2017) (finding that physicians "establish[] the manner or timing of performance" when they decide "how much [of a drug] the patient will take and when the patient takes it"); *Pernix*, 323 F. Supp. 3d at 582.

**Condition receipt of a benefit on performance.** Physicians will require patients to take rifaximin as directed (and claimed) to get a rifaximin prescription and its benefits. Tr. 542:12-21, 543:4-12, 543:22-544:10 ("I'm not going to prescribe it if they're not going to be able to follow the instructions.") (Schoenfeld); Tr. 120:25-121:2 (patients can only get rifaximin through his prescription) (Mahl); Tr. 77:14-24 (Brown). *Eli Lilly*, 845 F.3d at 1365-66 (finding that physicians "condition the receipt of pemetrexed treatment on folic acid administration" because physicians "delineate the step of folic acid administration that patients must perform").

On direct, Norwich's infringement experts seemed indifferent as to how or even whether their patients take rifaximin as prescribed. *See, e.g.*, Tr. 569:24-570:19 (Triadafilopoulos); Tr. 105:4-106:13 (Mahl). But on cross, Norwich's experts testified that their patients have access to rifaximin only because they prescribe it to them, they instruct their patients to take rifaximin as claimed, and they expect their patients will follow their instructions. Tr. 583:8-19

(Triadafilopoulos); Tr. 120:25-121:2, 123:10-124:8 (Mahl). The "conditioning" requirement does *not* require physicians to threaten to deny access to rifaximin, legally obligate patients to take rifaximin as directed, or double-check patient compliance. *Eli Lilly*, 845 F.3d at 1366; *see also Pernix*, 323 F. Supp. 3d at 581, 583.

### 3.    Norwich Will Induce Infringement of the HE Patent Claims[1]

The parties' disputes over inducement of the HE Patent Claims focus on four limitations: (1) administration for 12 months or longer; (2) maintaining remission of HE; (3) subjects having a Conn score of 0 or 1; and (4) co-administering rifaximin and lactulose.

### a)    Administering for 12 Months or Longer (All Claims)

Norwich's Label will encourage administration of its ANDA Product in patients for 12 months or longer. This Court found inducement under similar facts in *Sanofi v. Glenmark Pharms. Inc., USA*, 204 F. Supp. 3d 665 (D. Del. 2016) (Andrews, J.), *aff'd sub. nom. Sanofi v. Watson Labs. Inc.*, 875 F.3d 636 (Fed. Cir. 2017). The label in *Sanofi* was silent on length of administration, but still this Court found the defendants would induce infringement of a method claim requiring that "administration . . . is maintained for at least 12 months":

> I find that [1] the description of the long-term treatment involved in the ATHENA trial in Defendants' labels, [2] additional clues in the labels that suggest long-term treatment, and [3] the experts' testimony that prescribing physicians generally intend to treat patients with dronedarone for longer than 12 months, together demonstrate by a preponderance of the evidence that Defendants' labels encourage administering dronedarone for at least 12 months.

*Sanofi*, 204 F. Supp. 3d at 683-84.

---

[1] The facts proving Norwich will induce infringement of the asserted claims of the HE patents are in Plaintiffs' Proposed Findings of Fact, ¶¶ 54-67 ('195 patent, claim 6), ¶¶ 68-76 ('573 patent, claim 8), and ¶¶ 77-93 of ('397 patent, claims 11 and 12).

Here, first, Norwich's Label describes long-term administration in the HE clinical trials – a 6-month randomized, placebo-controlled trial and a multi-year follow-up trial, in which 202 subjects took rifaximin 550 mg BID for more than 12 months. JTX 73, §§ 6.1, 14.2. There is no dispute that Norwich's Label explains that it is safe to take rifaximin for 12 months or longer. Tr. 118:22-119:1 (Mahl); Tr. 71:18-72:2 (Brown). Second, Norwich's Label encourages administration of rifaximin without end, because while the label restricts the length of administration for travelers' diarrhea and IBS-D, it does not for HE. Tr. 109:25-110:7 (Mahl); Tr. 71:6-11 (Brown). Third, the experts agreed that HE is chronic, and patients must remain on rifaximin until they have a liver transplant or die. Tr. 120:17-24 (agreeing that "some patients in remission of HE would take 550 mg of rifaximin [BID] for 12 months" and that in his practice he has "certainly had HE patients in remission on 550 mg of rifaximin [BID] for 12 months"), 121:3-122:12, 121:25-122:3 (Mahl); Tr. 71:6-72:2 (Brown); Tr. 155:2-20 (Berg).

Based on the totality of the evidence, it is more likely than not that Norwich's ANDA Product will be administered for "12 months or longer," and Norwich knows and specifically intends that its ANDA Product will be used for 12 months or longer. *See Eli Lilly, Inc.*, 845 F.3d at 1369 ("[E]vidence that the product labeling that [the ANDA applicants] seek would inevitably lead some physicians to infringe establishes the requisite intent for inducement.").

### b)      Maintaining Remission of HE ('573 Patent, Claim 8)

Norwich's Label will encourage administration of its ANDA Product in patients to maintain remission of HE. The HE infringement experts agreed that patients will take Norwich's ANDA Product for the "reduction in risk of overt hepatic encephalopathy (HE) recurrence." JTX 73, § 1.2; Tr. 70:15-21 (Brown); Tr. 108:8-12 (Mahl). Norwich asserts that its label will not encourage "maintaining remission of HE" because its label encourages *only* "reducing the risk of HE recurrence." Tr. 110:8-20 (Mahl).

7

Norwich is incorrect because "reducing the risk of overt HE recurrence" and "maintaining remission of HE" are "the same thing." Tr. 249:23-250:18, 252:9-18 (Berg); Tr. 51:21-52:19 (Brown); *see also* PTX 512 at 255 (question to FDA advisory committee—and to which 14 of the 18 members voted "yes"—"In light of the safety and efficacy data presented in the application, does the risk/benefit profile support approval of rifaximin for an indication of *maintenance of remission from [HE]—that is, decreasing the risk for episodes of overt [HE]?*" (emphasis added)). A patient is either in remission of HE or is not. Tr. 52:9-13 (Brown). Overt HE recurrence stops the period of HE remission, and the only way to maintain HE remission is to reduce overt HE recurrence. Tr. 52:13-15 (Brown); Tr. 249:23-250:18 (Berg). Norwich knows this: the clinical trial data in Norwich's Label showed that 80% of patients taking rifaximin 550 mg BID maintained remission of HE, because they did not have overt HE recurrence during the 6-month study period.[2] JTX 73, § 14.2 (Fig. 1). And the HE infringement experts agreed that in clinical practice, at least some patients maintain remission for a year or longer while on rifaximin 550 mg BID. Tr. 72:25-73:7 (Brown); Tr. 120:17-20 (Mahl).

Norwich's argument also is legally flawed because there is no requirement that Norwich's Label use the words "maintaining remission of HE" to show knowledge and intent to induce. *See Sanofi*, 204 F. Supp. 3d at 673-74 ("Even where a proposed label does not explicitly track the language of a claimed method, a package insert containing directives that will 'inevitably lead some consumers to practice the claimed method' provides sufficient evidence for a finding of specific intent.") (quoting *AstraZeneca*, 633 F.3d at 1060).

---

[2] The Court construed "maintaining remission of HE" as "no overt HE episode in a subject with a history of overt HE." D.I. 90 at 9.

Thus, Plaintiffs have proven it is more likely than not that Norwich's ANDA Product will be administered in patients to "maintain[] remission of HE," and Norwich knows and specifically intends that its ANDA Product will be used for that indication.

### c)   Conn Score of 0 or 1 ('397 Patent, Claims 11 and 12)

Norwich's Label will encourage administration of Norwich's ANDA Product in patients having a Conn score of 0 or 1. For a patient to be at "risk of overt [HE] recurrence" and thus using Norwich's ANDA Product as indicated, JTX 73, § 1.2, the patient must be in remission of HE. *See infra* footnote 3. Norwich's Label defines patients as "in remission (Conn score of 0 or 1) from [HE]." JTX 73, § 14.2; Tr. 59:22-60:1 (Brown). Patients are not in remission of HE when they are having an overt HE episode. JTX 73, § 14.2. This dichotomy was the basis of patient enrollment in the double-blind, randomized, placebo-controlled clinical trial in Norwich's Label. JTX 43, § 14.2 (67% of patients enrolled had a Conn score of 0). The FDA based its approval of rifaximin to reduce the risk of overt HE recurrence on the double-blind and follow-up clinical trials enrolling patients with a Conn score of 0 or 1. Tr. 56:16-19, 59:22-60:1, 61:14-23 (Brown). These clinical studies were the first to successfully demonstrate rifaximin's efficacy as an HE therapy despite multiple past Phase II and III rifaximin studies conducted involving different dosing regimens, endpoints, and patient populations including those experiencing overt HE episodes. Tr. 56:20-59:13, 379:11-18, 401:17-402:1 (Brown). Thus, by inducing administration in patients *at risk* of experiencing overt HE recurrence, Norwich's Label will induce administration of rifaximin in patients having a Conn score of 0 or 1 (*i.e.*, those who are in remission of HE). *See Sanofi*, 204 F. Supp. 3d at 679, 680 (finding that defendants' label induced administration of dronedarone to patients with the claimed cardiovascular risk factors because the clinical studies in the label only demonstrated clinical benefits in this population); *Eli Lilly*, 845 F.3d at 1368-69.

Norwich's counter is that no one will calculate a Conn score when using rifaximin for HE. *See* Tr. 114:4-22 (Mahl). That is not correct,[3] but it does not matter because claims 11 and 12 of the '397 patent do not have a Conn score "calculation" step. Like the defendant in *Orexigen*, Norwich "attempts to create an additional step" in the claims "based on the fact that [they] require[] that the drug is to be administered" in a subject having a Conn score of 0 or 1. *See* 282 F. Supp. 3d at 812. But as in *Orexigen*, claims 11 and 12 require a patient *already* having a Conn score of 0 or 1 and "only the single step of administering the drug." *Id.* (finding that defendant's label encouraging patients to administer the drug was sufficient to induce infringement of a method of administering the drug "to an individual who has been diagnosed as suffering from overweight or obesity" because "[a] plain reading of this claim limitation indicates that the individual will already be diagnosed prior to the method being performed").

Thus, Plaintiffs have proven it is more likely than not that Norwich's ANDA Product will be administered in patients having a "Conn score of 0 or 1," and Norwich knows and specifically intends that its ANDA Product will be administered in those patients.

### d)    Rifaximin Plus Lactulose ('397 Patent, Claim 12)

Norwich's Label will encourage co-administration of its ANDA Product with lactulose. Tr. 75:24-76:19 (Brown). The "Indications and Usage" and "Clinical Studies" sections explain that 91% of the patients enrolled in the randomized, double-blind HE clinical trial took rifaximin and lactulose concomitantly. JTX 73, §§ 1.2, 14.2; Tr. 75:24-76:9 (Brown). The primary goal for patients in remission from HE is to keep them in remission to avoid the debilitating consequences of overt HE episodes, and the bulk of the clinical trial enrollees took rifaximin and lactulose to

---

[3] Every other HE expert at trial uses Conn Score in clinical practice. Tr. 45:14-46:15 (Brown); Tr. 154:2-22, 264:6-7 (Berg). Dr. Mahl testified that he does not "calculate" Conn scores, but does record the elements of Conn scores he observes in his patients. Tr. 114:16-20 (Mahl).

achieve that goal. Tr. 121:25-122:1-25 (Mahl); JTX 73, §§ 1.2, 14.2; Tr. 75:24-76:19 (Brown).

Thus, Norwich's Label will encourage co-administration of rifaximin and lactulose in at least some

patients. *See Sanofi*, 204 F. Supp. 3d at 682-83 ("[T]he fact that over half of the [patients in the

clinical trial] [were] taking diuretics, and that the diuretics did not decrease positive outcomes from

dronedarone, would encourage at least some physicians to administer dronedarone concomitantly

with diuretics.").

Norwich argues—solely for claim 12 of the '397 patent—that encouraging administration

of rifaximin "with or without" lactulose is not enough for inducement under *Shire v. Amneal*. Tr.

1019:8-12 (Closing). Norwich is incorrect.  In *Shire*, the defendant's label stated that patients could

take the drug "with or without food." *Shire LLC v. Amneal Pharms., LLC*, Case No. 11-3781, 2014

WL 2861430, at *5 (D.N.J. June 23, 2014). The Court found this was not sufficient evidence of

affirmative intent to induce infringement of a method claim to administering the drug with food.

*Id.* In trying to squeeze itself into the *Shire* situation, Norwich argues its label neither encourages

nor discourages co-administration because rifaximin can be taken "with or without lactulose." Tr.

1019:8-12 (Closing). But unlike in *Shire*, Norwich's Label does not state expressly to administer

rifaximin "with or without lactulose," and even if it did, that would not constitute an automatic

exception to affirmative intent. *See GlaxoSmithKline*, 7 F.4th at 1329-30 ("We also do not agree

with Teva's argument that its partial label's recitation of treating patients 'with or without

symptomatic heart failure' precludes inducement ...."). Rather, for claim 12 of the '397 patent,[4]

like in *Sanofi* and *GlaxoSmithKline*, Norwich's Label encourages both an infringing use (co-

---

[4] This is unique to '397 patent, claim 12. Both administering rifaximin alone and co-administering
rifaximin and lactulose infringe the remaining HE Patent Claims.

administering) and non-infringing use (rifaximin alone), meaning Norwich still encourages infringement. *Id.*; *Sanofi*, 204 F. Supp. 3d at 682-83.

Thus, Plaintiffs have proven it is more likely than not that Norwich's ANDA Product and lactulose will be co-administered, and Norwich knows and specifically intends that its ANDA Product and lactulose will be co-administered.

### 4.   Norwich Will Induce Infringement of the IBS-D Patent Claims

#### a)   Adults 65 Years of Age or Older ('667 Patent, Claim 3)[5]

The main issue for the '667 patent is whether Norwich's Label will induce administration of its ANDA Product in older adults (65 years and older) to treat IBS-D. Norwich's Label "instruct[s] users to perform the patented method," and the most reasonable inference from those instructions is "an affirmative intent to infringe." *AstraZeneca*, 633 F.3d at 1060.  Norwich does not dispute for the other IBS-D patent that its label will induce administration in "a subject," including adults. Since Norwich agrees that older adults are "adults," the "Indications and Usage" and "Dosage and Administration" sections instruct administering its ANDA Product TID for 14 days in older adults to treat IBS-D. Uncontested Facts, ¶ 109; JTX 73, §§ 1.3, 2.3; Tr. 533:24-534:15 (Schoenfeld). Norwich's own expert prescribes rifaximin to treat IBS-D because it "is effective in adults, period, including patients who are 65 years of age or older[.]" Tr. 582:21-583:7 (Triadafilopoulos).

Other parts of Norwich's Label add to the evidence of specific intent. The label's "Use in Special Populations" section addresses "Geriatric Use" (*i.e.*, patients 65 and over). JTX 73, § 8.5; Tr. 534:1-15 (Schoenfeld). Also, the label's IBS-D clinical studies section states that "[t]he IBS-D population from the three studies had a mean age of 47 (range: 18 to 88) years of which

---

[5] The facts proving Norwich will induce infringement of claim 3 the '667 patent are in Plaintiffs' Proposed Findings of Fact, ¶¶ 94-102.

approximately 11% of patients were ≥ 65 years old," and Norwich's expert was mistaken that the "Clinical Studies" section says nothing about older adults. JTX 73, § 14.3; *see* Tr. 577:17-20 (Triadafilopoulos). *See Vanda*, 887 F.3d at 1130-32 (affirming that the label induced a claim requiring "performing … a genotyping assay … to determine if the patient has a CYP2D6 poor metabolizer genotype," based on the label's "Dosage in Special Populations" and "Pharmacokinetics" sections, even though the label did not use those words).

Finally, the Federal Circuit has rejected Norwich's counter-position that because its label references "adults," it neither encourages nor discourages use in older adults specifically. *See GlaxoSmithKline*, 7 F.4th at 1329-30; *contra* Tr. 577:21-25 (Triadafilopoulos). Even if a substantial portion of "adults" do not read on claim 3's "65 years of age or older" limitation, Norwich "can be liable for inducing an infringing use of a product even if the product has substantial noninfringing uses." *See Vanda*, 887 F.3d at 1133, 1132 ("Even if not every practitioner will prescribe an infringing dose, that the target dose range 'instructs users to perform the patented method' is sufficient to 'provide evidence of [the defendant's] affirmative intent to induce infringement.'") (citations omitted); *see also GlaxoSmithKline*, 7 F.4th at 1329-30 ("According to Teva, when its generic carvedilol is used to treat patients without symptomatic heart failure, there is no infringement, and thus, the label's recommended use on both types of patients somehow obviates infringement. We do not find this argument persuasive[.]").

Thus, Plaintiffs have proven it is more likely than not that Norwich's ANDA Product will be administered in patients "65 years of age or older," and Norwich knows and specifically intends that its ANDA Product will be used in those patients.

### b)      12-Week Durability of Response ('569 Patent, Claim 2)[6]

The main issue for the '569 patent is whether Norwich will induce a "durability of response [that] comprises about 12 weeks of adequate relief" after rifaximin administration. "[E]vidence that the product labeling that [the ANDA applicants] seek would inevitably lead some physicians to infringe establishes the requisite intent for inducement." *Eli Lilly*, 845 F.3d at 1369. Here, Norwich's Label will encourage administration of rifaximin 550 mg TID for 14 days for the "treatment of irritable bowel syndrome with diarrhea." JTX 73, §§ 1.3, 2.3. By following those instructions, some patients will inevitably have a durability of response comprising about 12 weeks of adequate relief. Tr. 537:12-540:4 (Schoenfeld); *Eli Lilly*, 845 F.3d at 1369. During his direct examination, Norwich's expert never addressed this aspect of Plaintiffs' affirmative evidence.  In fact, he was not even present for the testimony Norwich asked him to rebut. Tr. 579:8-12 (Triadafilopoulos). In any event, when asked on cross, he agreed that by taking rifaximin 550 mg TID for 14 days, some patients will have the claimed durability of response. Tr. 581:16-22 (Triadafilopoulos).

Plaintiffs' inducement claim is not legally deficient simply because Norwich's Label will not use the exact words "durability of response," "12 weeks," and "adequate relief." *Contra* Tr. 573:14-23, Tr. 574:1-576:13 (Triadafilopoulos). Norwich's Label "provides sufficient evidence for a finding of specific intent" even though it "does not explicitly track the language of a claimed method." *See Sanofi*, 204 F. Supp. 3d at 673-74 (citing *AstraZeneca*, 633 F.3d at 1060). With knowledge of the '569 patent and the clinical trial data, Norwich continues to seek FDA approval despite its own expert agreeing that following the label's instructions will result in some patients

---

[6] The facts proving Norwich will induce infringement of claim 2 the '569 patent are in Plaintiffs' Proposed Findings of Fact, ¶¶ 103-112.

14

infringing. *Sanofi*, 875 F.3d at 646 ("[D]epending on the clarity of the [drug label's] instructions, the decision to continue seeking FDA approval of those instructions may be sufficient evidence of specific intent to induce infringement."); Tr. 581:16-22 (Triadafilopoulos).

The clinical data in Norwich's Label from TARGET 3 ("Trial 3") shows that Norwich knows and intends administration of its ANDA Product will result in at least some patients having a durability of response comprising about 12 weeks of adequate relief. *See* JTX 73, § 14.3 ("… 382 [patients] experienced a period of symptom inactivity or decrease that did not require repeat treatment by the time they discontinued, including patients who completed the 22 weeks after initial treatment with rifaximin.") ("The median time to recurrence for patients who experienced initial response during the open-label phase with rifaximin tablets was 10 weeks (range 6 to 24 weeks)."). It does not matter, as Norwich argued, that no *patient* would ever understand Trial 3 and if he or she is infringing; it matters whether *Norwich* knows. *See Orexigen*, 282 F. Supp. 3d at 816 ("Whether the patient who performs the method by administering the tablets knows that the tablets meet the dissolution profile is irrelevant for the purposes of infringement. Defendant knows that the tablets meet all of the claim limitations and, through its proposed label, encourages patients to administer the tablets in a manner that infringes the claimed method.").

Thus, Plaintiffs have proven it is more likely than not that administration of Norwich's ANDA Product TID for 14 days will result in at least some patients having a "durability of response [that] comprises about 12 weeks of adequate relief of symptoms," and Norwich knows and specifically intends for its ANDA Product to achieve that response.

### B.    Secondary Considerations of Nonobviousness

Objective evidence of nonobviousness "is to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1052-53 (Fed. Cir. 2016) (en banc) (citation omitted). To be probative

of nonobviousness, the evidence must have a nexus to the claimed invention. *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1067 (Fed. Cir. 2021) ("[T]here is a presumption of nexus for objective considerations when the patentee shows that the asserted objective evidence is tied to a specific product and that product is the invention disclosed and claimed in the patent.") (citation omitted).

### 1.    HE Patent Claims

**Long-Felt, But Unmet Need.** Xifaxan® (rifaximin) 550 mg taken BID for 12 months or more (the claimed regimen) met a long-felt but unmet medical need for a way to prevent HE recurrence and maintain remission, which supports a finding of nonobviousness. Tr. 348:8-11, 348:20-349:9, 369:4-13, 401:17-403:16 (Brown); JTX 104 at 71; PTX 414 at 81. *See Procter & Gamble Co.*, 566 F.3d 989, 998 (Fed. Cir. 2009) (upholding the district court's finding that the claimed compound satisfied a long-felt unmet need for treating osteoporosis, which supported a finding of nonobviousness); *Immunex*, 964 F.3d at 1067. Norwich's expert did not dispute that Xifaxan® 550 mg met a need, but instead concluded that there was no *unmet* need because "we were already utilizing this therapy . . . for the treatment of [HE]." Tr. 222:7-20 (Berg). To the contrary, as of October 2008, management of HE was largely an experimental endeavor. Tr. 348:20-349:9, 351:24-353:12 (Brown). Bass 2004 proved in a phase 3 randomized, placebo-controlled clinical trial that Dr. Berg's approach to treating HE with rifaximin was no better than placebo. Tr. 359:21-360:3, 364:9-22; 400:18-23 (Brown); PTX 588. And even though rifaximin *200 mg* tablets were available outside the U.S. since the mid-1980s, in 2002 the World Congress of Gastroenterology stated that "[t]he current decade has not witnessed major therapeutic breakthroughs in" managing HE. PTX 465 at 716; Tr. 348:25-349:9 (Brown). *See Sanofi*, 204 F. Supp. 3d at 695 (finding that there was a long-felt need, even with other drugs of the same class on the market because "[i]t ha[d] been notoriously difficult to develop a drug with high efficacy .

. . with a favorable side effect profile") (citation omitted). As of October 2008, no drug had been approved for HE in over 30 years, and no drug had ever been approved to *prevent* HE recurrence. Tr. 242:2-25 (Berg); Tr. 69:1-4, 348:8-11, 399:25-400:17, 403:8-16 (Brown). *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 876 F. Supp. 2d 295, 417 (S.D.N.Y. 2012) ("Recognition of need, and difficulties encountered by those skilled in the field, are classical indicia of unobviousness.") (citation omitted). Thus, the medical need that the claimed methods met was long-felt and unmet.

**Skepticism.** Before and even after October 2008, there was skepticism that rifaximin 550 mg BID for 12 months or longer (the claimed regimen) could safely and effectively prevent HE recurrence, which supports nonobviousness. Tr. 377:14-20 (Brown); Tr. 470:10-21 (DuPont); *see Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1378 (Fed. Cir. 2019) (upholding the Board's finding that "evidence of skepticism of others, particularly the FDA, supported a conclusion of nonobviousness."); *Immunex*, 964 F.3d at 1067. In 2010 when deciding whether to recommend approving rifaximin 550 mg BID to prevent HE recurrence, experts on the FDA's advisory committee were concerned that indefinite use of rifaximin could change the gut flora and cause antibiotic resistance. PTX 512 at 153, 231, 233-234; Tr. 405:21-406:14 (Brown); Tr. 482:5-21 (DuPont).

### 2.    IBS-D Patents

**Skepticism.** Before and after February 2008, there was skepticism that rifaximin 550 mg TID for 14 days (the claimed regimen) would safely and effectively treat IBS-D. As of February 2008, "[a] sound rationale for antibiotic therapy ha[d] not been established . . . ." and "[t]here was insufficient evidence to recommend antibiotics for the treatment of [IBS] at present." PTX 692 at 1142; PTX 693 at 1319; PTX 457 at 627; *see* Tr. 809:11-19 (Schoenfeld). *Envtl. Designs, Ltd. v. Union Oil Co. of Cal.*, 713 F.2d 693, 697-98 (Fed. Cir. 1983) (stating that expressions of disbelief or skepticism from the time of invention by experts in the field "constitute strong evidence of

nonobviousness"); *Immunex*, 964 F.3d at 1067. In 2011, when considering the clinical trial data Salix submitted for FDA approval, experts on the FDA's advisory committee stated that using rifaximin 550 mg TID for 14 days was "a completely different paradigm and a different treatment structure" and that Salix has proposed to "treat[] a disease which we know nothing or very little about with a drug that we know little or nothing about." PTX 535 at 302, 307; Tr. 809:20-810:23 (Schoenfeld). The experts were also skeptical that repeated use of rifaximin in such a large patient population would be safe. PTX 535 at 137, 162 ("[W]e're seeding the population, tens of thousands of young people, with an antibiotic that could lead to resistant strains on their body."); Tr. 810:24-811:11 (Schoenfeld).

## IV.   CONCLUSION

Norwich will infringe the HE, IBS-D, and Polymorph Patent Claims, and Plaintiffs have met their burden of production on secondary considerations for the HE and IBS-D Patent Claims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Karen Jacobs*

Scott K. Reed
Steven C. Kline
Shannon K. Clark
Daniel A. Apgar
Alexis M. McJoynt
Damien N. Dombrowski
VENABLE LLP
1290 Avenue of the Americas
New York, NY  10104
(212) 218-2100

Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
kjacobs@morrisnichols.com
cclark@morrisnichols.com
*Attorneys for Plaintiffs*

Becky E. Steephenson
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
(212) 307-5598

April 28, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 28, 2022, upon the following in the manner indicated:

Karen E. Keller                                                     *VIA ELECTRONIC MAIL*
Nathan R. Hoeschen
SHAW KELLER LLP
I.M. Pei Building
1105 N. Market St., 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant*

Matthew J. Becker                                             *VIA ELECTRONIC MAIL*
Stacie L. Ropka
Matthew S. Murphy
Chad A. Landmon
Rebecca L. Clegg
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT  06103
*Attorneys for Defendant*

Aziz Burgy                                                          *VIA ELECTRONIC MAIL*
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC  20036
*Attorneys for Defendant*

Richardo S. Camposanto                                   *VIA ELECTRONIC MAIL*
AXINN, VELTROP & HARKRIDER LLP
560 Mission Street
San Francisco, CA  94105
*Attorneys for Defendant*

*/s/ Karen Jacobs*
Karen Jacobs (#2881)