IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SALIX PHARMACEUTICALS, LTD.; SALIX           )
PHARMACEUTICALS, INC.; BAUSCH                )
HEALTH IRELAND LTD.; ALFASIGMA               )
S.P.A.,                                       )
                                              )
                    Plaintiffs,               )
                                              )
        v.                                    )    C.A. No. 20-430 (RGA)
                                              )
NORWICH PHARMACEUTICALS, INC.,                )
                                              )
                    Defendant.                )

**PLAINTIFFS' PROPOSED FINDINGS OF FACT ON VALIDITY**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
kjacobs@morrisnichols.com
cclark@morrisnichols.com
*Attorneys for Plaintiffs*

OF COUNSEL:

Scott K. Reed
Steven C. Kline
Shannon K. Clark
Daniel A. Apgar
Alexis M. McJoynt
Damien N. Dombrowski
VENABLE LLP
1290 Avenue of the Americas
New York, NY  10104
(212) 218-2100

Becky E. Steephenson
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
(212) 307-5598

# TABLE OF CONTENTS

I.    HE PATENT VALIDITY ............................................................................................ 1

    A.    Nonobviousness (All Claims) ...................................................................... 1

        1.    Scope and Content of the Prior Art ................................................. 1

        2.    No Motivation to Combine the Prior Art ........................................ 9

        3.    No Reasonable Expectation of Success ......................................... 10

    B.    Adequate Written Description (All Claims, Except '397 Patent, Claim 12) ................................................................................................... 11

II.    IBS-D PATENT VALIDITY ................................................................................... 12

    A.    Nonobviousness (All Claims) .................................................................... 12

        1.    Scope and Content of the Prior Art ............................................... 12

        2.    No Motivation to Combine the Prior Art ...................................... 18

        3.    No Reasonable Expectation of Success ......................................... 21

    B.    Adequate Written Description ('569 Patent, Claim 2) ................................ 22

    C.    Definiteness ('569 Patent, Claim 2) ........................................................... 23

III.    POLYMORPH PATENT VALIDITY ...................................................................... 24

    A.    No Anticipation ('199 Patent, Claim 4) ..................................................... 24

    B.    Nonobviousness (All Claims) .................................................................... 28

    C.    Adequate Written Description (All Claims) ............................................... 29

**TABLE OF ASSERTED CLAIMS**

| Patent Family | U.S. Patent No. | Asserted Claim |
|---------------|-----------------|----------------|
| HE | 8,642,573 | 8 |
| | 9,421,195 | 6 |
| | 10,335,397 | 11, 12 |
| IBS-D | 10,765,667 | 3 |
| | 8,309,569 | 2 |
| Polymorphs | 7,612,199 | 4 |
| | 7,902,206 | 36 |

**TABLE OF CITED TESTIMONY**

| Transcript Citations | Witness |
|---|---|
| Pages 40 – 81 (direct)<br>Pages 82 – 97 (cross)<br>Pages 332 – 408 (direct)<br>Pages 408 – 433 (cross)<br>Pages 433 – 436 (redirect) | Robert S. Brown, M.D., M.P.H. Expert witness called by Plaintiffs on infringement and validity of the HE Patents. |
| Pages 144 – 234 (direct)<br>Pages 234 – 277 (cross)<br>Pages 277 – 279 (redirect) | Carl L. Berg, M.D. Expert witness called by Norwich on invalidity of the HE Patents. |
| Pages 280 – 308 (direct)<br>Pages 309 – 328 (cross) | Gary K. Schoolnik, M.D. (by video). Expert witness called by Norwich on invalidity of the HE and IBS-D Patents. |
| Pages 437 – 490 (direct)<br>Pages 490 – 498 (cross) | Herbert L. DuPont, M.D. Expert witness called by Plaintiffs on validity of the HE and IBS-D Patents. |
| Pages 499 – 545 (direct)<br>Pages 546 – 562 (cross)<br>Pages 731 – 824 (direct)<br>Pages 825 – 850 (cross) | Philip S. Schoenfeld, M.D., MSED, MSc. Expert witness called by Plaintiffs on infringement and validity of the IBS-D Patents. |
| Pages 594 – 607 | Mark Pimentel, M.D. (by deposition). Fact witness called by Norwich |
| Pages 563 – 578 (direct)<br>Pages 578 – 585 (cross) | George Triadafilopoulos, M.D. (by video). Expert witness called by Norwich on non-infringement of the IBS-D Patents. |
| Pages 608 – 692 (direct)<br>Pages 692 – 731 (cross) | Albert M. Harary, M.D. Expert witness called by Norwich on invalidity of the IBS-D Patents. |
| Pages 855 – 911 (direct)<br>Pages 911 – 920 (cross)<br>Pages 920 – 922 (redirect) | Michael J. Zaworotko, Ph.D. Expert witness called by Norwich on invalidity of the Polymorph Patents. |
| Pages 932 – 967 (direct)<br>Pages 967 – 973 (cross) | Allan S. Myerson, Ph.D. Expert witness called by Plaintiffs on validity of the Polymorph Patents. |

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| '195 patent | U.S. Patent No. 9,421,195 |
| '199 patent | U.S. Patent No. 7,612,199 |
| '206 patent | U.S. Patent No. 7,902,206 |
| '397 patent | U.S. Patent No. 10,335,397 |
| '569 patent | U.S. Patent No. 8,309,569 |
| '573 patent | U.S. Patent No. 8,642,573 |
| '667 patent | U.S. Patent No. 10,765,667 |
| BID | two times a day |
| GI | gastrointestinal |
| FDA | Food and Drug Administration |
| HE | hepatic encephalopathy |
| IBS | irritable bowel syndrome |
| IBS-D | irritable bowel syndrome with diarrhea |
| POSA | person of ordinary skill in the art |
| SIBO | small intestinal bacterial overgrowth |
| TID | three times a day |
| XRPD | X-ray powder diffraction |

## I.    HE PATENT VALIDITY

120.    The priority date for the HE patents is October 2, 2008. Uncontested Facts, ¶¶ 46, 58, 69; *see also* Tr. 152:12-18 (Berg).

121.    A POSA would have had a Ph.D. in pharmacology, biology, biomedical sciences, microbiology and/or an M.D. with board certification in gastroenterology. Tr. 335:12-22 (Brown). He or she would have had training in or experience with liver and GI disorder research. Tr. 335:12-336:3 (Brown). If needed, a POSA would have collaborated with others having ordinary skill in areas relevant to the claimed subject matter, including infectious diseases and microbiology. Tr. 335:12-336:3 (Brown); Tr. 447:3-12 (DuPont). The definition of a POSA is not outcome determinative, even though the parties disagree on the definition. Tr. 152:9-11 (Berg); Tr. 337:14-19 (Brown).

### A.    Nonobviousness (All Claims)

#### 1.    Scope and Content of the Prior Art

122.    In October 2008 (even today), the pathogenesis of HE was unknown. Tr. 43:6-12 (Brown); Tr. 444:20-24 (DuPont). It was postulated that HE was caused by gut-derived toxins that normally are metabolized by the liver, but the specific causative toxins were unknown. Tr. 287:24-288:4 (Schoolnik); Tr. 238:2-239:1 (Berg); Tr. 43:6-44:5 (Brown).

123.    Ammonia was one of the many toxins implicated in HE. PTX 1108 at 571-574; Tr. 153:18-21, 238:2-239:1 (Berg); Tr. 318:23-319:16, 320:10-13 (Schoolnik); *see also* Tr. 343:12-24 (Brown). Ammonia levels do not correlate to HE symptom severity. PTX 1108 at 582; Tr. 344:6-15; 398:2-3 (Brown); Tr. 319:19-23 (Schoolnik); Tr. 239:2-10 (Berg); *see also* PTX 465 at 719. A POSA would have recognized that hyperammonemia (increased ammonia levels) and HE are two distinct diseases. Tr. 357:4-10 (Brown); *see* Tr. 239:2-7 (Berg).

124.    HE can be either episodic or persistent. Tr. 44:13-25 (Brown); *see* Tr. 258:13-16 (Berg). Patients with episodic HE have periods between episodes when they exhibit no distinctive symptoms (remission) or severe and readily apparent symptoms (overt HE). Tr. 44:13-25; 45:14-46:15 (Brown); Tr. 154:5-22 (Berg). Patients with persistent HE have continuously apparent symptoms and are not in remission. Tr. 44:23-25 (Brown).

125.    Treating an HE episode and preventing recurrence of an HE episode are different goals. JTX 136 at 16-17; PTX 465 at 720; Tr. 212:18-19 (Berg); Tr. 347:2-348:3, 425:17-21 (Brown). A POSA would not assume that a drug that treats HE would effectively maintain remission of HE. Tr. 348:4-5 (Brown). But a POSA would assume that a drug that does not treat HE would not effectively maintain remission. Tr. 348:6-7 (Brown).

126.    As of October 2008, there were no satisfactory drugs to treat or prevent HE. PTX 465 at 716; PTX 491 at 1968; Tr. 348:12-19, 348:25-349:4 (Brown). Management of HE was largely an experimental endeavor. Tr. 374:2-21 (Brown). The only approved drugs were lactulose and neomycin, both approved to treat HE episodes. Tr. 350:19-22, 353:13-25 (Brown). Neither had been shown to be effective to treat HE. PTX 1108 at 587; PTX 491 at 1970; PTX 472 at 57; Tr. 349:6-9, 350:23-351:4, 353:13-354:3 (Brown). Long-term antibiotics were not recommended due to the risk of resistance. PTX 1108 at 588; PTX 734 at 2S; PTX 386 at 103; Tr. 354:17-355:2, 425:1-7, 434:10-23 (Brown); Tr. 464:9-21 (DuPont).

127.    Even if patients entered remission while on a drug, a POSA would not be able to attribute the improvement to the drug because symptoms naturally come and go in episodic HE, there was no reliable biomarker. Tr. 374:22-375:6, 348:12-24 (Brown); PTX 491 at 1968. Once in remission, a patient would be weaned off the drug, particularly if using an antibiotic due to concerns of resistance. Tr. 375:4-6, 376:6-13, 377:14-20, 434:8-9 (Brown). A POSA would not

have been aware of physicians using antibiotics such as rifaximin to prevent HE episodes. Tr. 396:17-25, 388:13-20, 354:4-10 (Brown).

128.    As of 2008, rifaximin was not approved for long-term use. Tr. 357:23-25 (Brown). Normix® labels emphasized that rifaximin therapy should not exceed 7 days. Tr. 357:23-358:9 (Brown); Tr. 461:16-462:4 (DuPont). The Xifaxan® label warned of superinfections. JTX 70 at Warnings; Tr. 357:16-358:1, 358:16-359:10 (Brown); Tr. 462:5-7 (DuPont). A 550 mg rifaximin tablet was not commercially available as of 2008. Tr. 244:19-21 (Schoolnik).

129.    It would have been important for a POSA to base his "treatment decisions on the best available research evidence." PTX 1101 at 1; Tr. 338:1-4 (Brown); Tr. 476:11-18 (DuPont); *see* Tr. 249:14-18 (Berg). A POSA would have given the most weight to large, randomized, controlled trials. PTX 1101 at 1-2; Tr. 337:23-338:21, 339:14-341:3 (Brown). Retrospective studies have limitations that render much less reliable. *See* Tr. 341:24-342:12 (Brown); PTX 663 at 307-08. Physician experience is the least reliable. PTX 1101 at 1-2; Tr. 339:6-9 (Brown).

130.    The most reliable studies as of October 2008 suggested that rifaximin was not effective to treat HE. Tr. 359:21-360:3 (Brown). Bass summarizes a randomized, double-blind, placebo-controlled study of rifaximin 400 mg TID for 14 days in 93 patients with HE episodes that failed to show a statistical difference between rifaximin and placebo at improving mental state. PTX 588; Tr. 359:21-360:3, 363:21-364:22, 366:3-7; 398:2-6 (Brown).

131.    Mas reports a randomized, double-blind, controlled trial in which there was no statistical difference between rifaximin 1200 mg daily for 5 to 10 days and lactitol to treat overt HE episodes. DTX 425 at 52, 55; Tr. 224:17-225:14-21, 274:6-25 (Berg); Tr. 359:21-360:3, 362:6-23 (Brown). The authors concluded that "the real efficacy of non-absorbable disaccharides or poor

or non-absorbable antibiotics in HE remains doubtful." DTX 425 at 57; Tr. 362:18-23, 363:9-17 (Brown); Tr. 276:19-277:6 (Berg).

132.   **Bausch HE Study.** A POSA would have viewed the Bausch HE Study as a new hypothesis Salix was testing after two negative phase 3 studies. Tr. 379:11-380:7, 341:11-23 (Brown). The goal was to determine "if rifaximin is safe and effective in preventing the recurrence of [HE]"—an endpoint that had never been studied. DTX 52 at 4; Tr. 198:14-20 (Berg); Tr. 378:23-379:5, 379:11-18, 341:11-23 (Brown). It contains no results. Tr. 200:19-21, 239:16-21 (Berg).

133.   **Leevy 2007**. Leevy 2007 reports a retrospective chart review of HE patients switched from lactulose to rifaximin. Tr. 260:9-13, 260:23-261:7 (Berg); Tr. 390:3-12 (Brown). A POSA would have interpreted the results cautiously. DTX 390 at 740, 741; Tr. 393:11-394:4 (Brown); Tr. 477:15-478:4 (DuPont). A POSA would assume patients were switched from lactulose to rifaximin because patients had failed lactulose, creating a bias in favor of rifaximin. Tr. 390:13-21, 393:11-394:4 (Brown). The study excluded patients who did not survive for longer than a year or who failed rifaximin before 6 months. Tr. 262:20-22 (Berg); Tr. 328:5-20 (Schoolnik); Tr. 391:20-392:12 (Brown). It concluded only that the "results [were] consistent with the possibility" that rifaximin was beneficial. DTX 390 at 740.

134.   Leevy 2007 is missing information that would have been important to evaluate rifaximin's efficacy: whether subjects had persistent or episodic HE, concomitant medications, and if steps were taken to correct precipitating factors. Tr. 390:22-391:19, 393:1-6, 395:7-9 (Brown). It does not mention resistance or the incidence of bacterial infections. Tr. 264:18-265:4 (Berg); Tr. 395:23-24 (Brown); Tr. 477:9-14 (DuPont). It provides Conn scores and asterixis for the last day of each 6-month period, but no data during each period. Tr. 392:13-393:1 (Brown). Thus, a POSA could not have determined if subjects starting rifaximin with a Conn score of 1

maintained that Conn score or experienced breakthrough episodes. Tr. 392:13-393:6, 395:7-9 (Brown); Tr. 262:23-25 (Berg).

135.    A POSA would have recognized that most of the patients switched from lactulose to rifaximin were experiencing overt HE, indicated by a Conn score greater than 1. DTX 390 at 739; Tr. 392:13-393:1 (Brown). While 6% of subjects had a Conn score of 1 at the time of the switch, 93% of the subjects had asterixis, and thus, a POSA would assume these patients were experiencing overt HE at the switch.  *See* DTX 390 at 739; Tr. 392:13-23 (Brown).

136.    The Leevy Abstract is an earlier abstract presentation of the Leevy 2007 reference and does not contain additional information. JTX 47; Tr. 389:7-10, 389:15-22 (Brown).

137.    **Salix Presentation.** The Salix Presentation is a transcript of an investors' conference. DTX 660 at 1; Tr. 381:13-382:16, 385:12-20 (Brown). It was not subject to peer-review or the same scientific rigor of scientific conferences. Tr. 385:2-11 (Brown). A POSA would not have given much weight to Dr. Leevy's "feeling" that rifaximin would become the standard of care. DTX 660 at 11; Tr. 384:16-385:1, 386:13-22 (Brown).

138.    The Salix Presentation does not disclose whether (1) whether Dr. Leevy's patients were experiencing persistent or episodic HE (Tr. 258:13-16 (Berg); Tr. 326:14-18 (Schoolnik); Tr. 474:15-19 (DuPont)); (2) whether he was trying to treat or prevent HE (Tr. 326:10-13, 326:19-22 (Schoolnik); Tr. 383:1-3, 383:10-11 (Brown); Tr. 474:15-19 (DuPont)); (3) how many patients he had on rifaximin for 12.5 months (Tr. 258:20-259:3 (Berg); Tr. 325:15-19 (Schoolnik); Tr. 383:6-8, 410:17-22 (Brown)); (4) clinical outcomes (Tr. 258:17-19 (Berg); Tr. 383:6-10 (Brown); Tr. 474:6-21 (DuPont)); (5) the number of breakthrough HE episodes (Tr. 383:9-10 (Brown); Tr. 474:9-13 (DuPont)); (6) whether patients were on other medications, (Tr. 259:8-12 (Berg); Tr.

5

325:20-326:3 (Schoolnik); Tr. 383:11 (Brown)); or (7) methods or data to support his assertions (Tr. 383:20-384:15 (Brown); 474:6-21, 475:3-19 (DuPont); Tr. 259:20-260:5 (Berg)).

139.    A POSA would have recognized that the study Dr. Leevy stated he would publish based on his patients' experience with rifaximin was Leevy 2007, which excluded two-thirds of the 450 patients Dr. Leevy said he had on rifaximin. DTX 660 at 11; Tr. 383:12-384:2 (Brown); Tr. 181:1-8 (Berg).

140.    A POSA would have recognized that Dr. Leevy likely did not conduct resistance studies when he stated that he had "see[n] no resistance."  Tr. 475:3-15 (DuPont). And a POSA would have known that all HE patients would have side effects, contrary to Dr. Leevy's statement that he had seen none. Tr. 474:22-475:2 (DuPont). Indeed, Leevy 2007 identified multiple side-effects. DTX 390 at 739; Tr. 384:3-15 (Brown); Tr. 477:9-14 (DuPont).

141.    The Salix Presentation is not prior art, because Norwich has not shown that it was technically accessible or that a POSA exercising reasonable diligence could have located it.

142.    **Festi**. Festi discloses three sub studies of a 21-day course of "rifaximin in the treatment of HE." JTX 42 at 600 (subjects had a Conn score of 1 plus asterixis, *i.e.*, symptoms of overt HE), 607; *see* Tr. 268:25-269:2 (Berg). Without a placebo, a POSA would not have been able attribute any effect to rifaximin. Tr. 367:7-368:8 (Brown).

143.    **Puxeddu**. Puxeddu reports a 15-day treatment study in which rifaximin and lactulose had a "synergetic effect" in reducing ammonia. *See* JTX 95 at 279-80; Tr. 265:15-266:2 (Berg). Tr. 368:11-369:3 (Brown). But a POSA would have known that ammonia levels do not correlate HE symptom severity. Tr. 368:21-369:3 (Brown).

144. **Williams**. This 7-day dose-finding study of rifaximin for the treatment of HE found no statistically significant difference among the 600, 1200, and 2400 mg doses. *See* JTX 66 at 204; Tr. 361:2-15 (Brown).

145. **Neff**. Neff is a retrospective study of subjects with Conn scores of 2 or 3 (i.e., overt HE), but it does not disclose whether subjects had persistent or episodic HE or whether rifaximin was effective to treat or prevent HE. JTX 109; Tr. 271:9-272:2 (Berg); Tr. 373:1-5 (Brown).

146. **Mantry**. Mantry is a retrospective study published in 2010. JTX 111 at 4543; Tr. 373:6-9 (Brown). A POSA would not have been aware of the author's prescribing practices or have known patients' outcomes until Mantry was published. Tr. 373:10-21 (Brown). Mantry has the same biases as Leevy 2007 and was conducted after the author knew Xifaxan® was approved by the FDA to prevent HE recurrence. *See* Tr. 373:1-13 (Brown).

147. **Perspectives in Hepatology.** None of the three physicians at this conference stated they used rifaximin for 12 months or longer to prevent HE episodes. Instead, their experiences reflect the regimens they tried to use to treat HE. DTX 583 at 3; *see e.g.*, 382:24-383:6 (Brown). They provided no data, and a POSA would have considered it to be the least reliable kind of evidence. Tr. 476:5-15 (DuPont).

148. **Salix Earnings Calls.** Neither the Salix Q3 2005 Earnings Call nor Salix Q2 2007 Earnings Call discloses using rifaximin long-term to prevent HE episodes. *See* DTX 540 at 3 (the average prescription size was 47 pills, which was less than an *8-day* supply of 200 mg tablets if prescribing 1200 mg a day); DTX 535 at 6 (rifaximin's off-label use for HE made up "a very very low share"); Tr. 184:23-185:10, 186:3-10 (Berg).

149. **Gerard.** Gerard reviewed data from other rifaximin studies; it had no new data. Tr. 369:21-24 (Brown). It emphasized that "[m]ore studies are needed to better understand the role of

rifaximin in the treatment of" HE. JTX 90 at 209; Tr. 369:21-370:3 (Brown). A POSA would have understood that Gerard's statement that rifaximin could be used "for as long as needed" reflected use for a few weeks (21 days) or cyclically (14 days on, 14 days off for 6-months). Tr. 370:4-371:5 (Brown); Tr. 479:15-480:7, 481:7-12 (DuPont); Tr. 266:19-21 (Berg); JTX 90 at 203, 204. Gerard did not mention using rifaximin to prevent recurrence of HE. Tr. 371:12-16 (Brown).

150.   **Shah**. Shah notes that rifaximin had been used to treat refractory HE. JTX 136 at 17; Tr. 214:5-7 (Berg); Tr. 371:17-372:20 (Brown); *see* Tr. 398:14-399:10 (Brown). It discloses rifaximin as an alternative to lactulose. JTX 136 at 17; Tr. 372:13-19 (Brown).

151.   A POSA would be concerned that administering 1000-1200 mg of rifaximin for 12 months or longer to prevent recurrence of HE episodes would lead to antibiotic resistance. Tr. 489:13-490:8 (DuPont); Tr. 377:14-20, 387:13-388:12 (Brown). The widespread use of antibiotics had created an epidemic of resistant bacteria and a POSA would have wanted to use antibiotics judiciously. Tr. 336:4-11 (Brown); Tr. 446:2-447:2 (DuPont); PTX 732 at 676; PTX 733 at 162; PTX 745 at 159; PTX 729 at 739, 741. A POSA would have known that using antibiotics long-term increases the likelihood of resistance. PTX 734 at 2S; PTX 386 at 103; Tr. 464:9-21 (DuPont); Tr. 434:10-23 (Brown).

152.   Antibiotic use can result in clinical resistance (loss of efficacy). Tr. 290:25-291:6 (Schoolnik); Tr. 448:5-11 (DuPont). If a patient developed clinical resistance during rifaximin treatment, a POSA would have known that rifaximin could not be used the next time the patient experienced an HE episode. Tr. 388:3-12, 434:10-23 (Brown); *see* Tr. 178:13-18 (Berg). A POSA would have understood that disease-causing bacteria are often resistant to antibiotics, resulting in potentially fatal superinfections (*e.g.*, peritonitis, sepsis, ascites, and *C. difficile*). Tr. 448:12-17, 468:7-470:9 (DuPont); Tr. 291:9-16, 317:8-318:1 (Schoolnik); Tr. 388:3-8 (Brown). A POSA

would have recognized that rifaximin "should be used with caution" because the bacteria in the colon could be exposed to sub-inhibitory rifaximin concentrations, increasing the likelihood of resistance. Tr. 458:24-460:9 (DuPont); PTX 950 at 1018.

153.    Antibiotic resistance would have been important to a POSA, because he would have understood infections commonly cause death in HE patients. PTX 670 at 140; PTX 654 at 422-23; Tr. 471:9-472:7 (DuPont); *see* Tr. 355:13-356:4 (Brown). HE patients already harbor multi-drug resistant bacteria. PTX 670 at 145; Tr. 461:2-3, 472:22-473:20, 490:2-8 (DuPont); *see* Tr. 355:5-12 (Brown); *see also* PTX 731 at 25; PTX 742 at 114. Thus, if an HE patient developed a superinfection, the patient would likely die before an effective antibiotic was found. Tr. 471:22-472:21 (DuPont).

## 2.    No Motivation to Combine the Prior Art

154.    A POSA would not have been motivated to keep giving rifaximin just because HE is a chronic condition, since a POSA would have understood short-term rifaximin was not effective to treat HE, and thus it was unlikely that long-term rifaximin would be effective to prevent HE recurrence as claimed. *Supra* ¶¶ 125-132. Norwich's "common knowledge" references do no suggest using rifaximin every day for 12 months to prevent HE recurrence. *Supra* ¶¶ 142-150.

155.    A POSA would not have been motivated to administer rifaximin and lactulose, as no studies established using this combination to prevent HE recurrence. *Supra* ¶¶ 143, 150. Puxeddu's that the combination was synergistic was based on a reduction of ammonia, which is not a reliable indicator of HE symptom improvement. *Supra* ¶¶ 123, 143.

156.    A POSA would not have been able to combine familiar elements according to known methods, because there was no "known" method of using rifaximin to prevent HE recurrence; it was only a hypothesis or possibility. *Supra* ¶¶ 125-150.

157.    A POSA would not have been able to use simple substitution to replace the Bausch HE Study duration with the one in the Salix Presentation, or the Leevy 2007 duration with one from "common knowledge," because HE is complex and unpredictable, and there was no data suggesting such substitution would result in preventing HE recurrence. *Supra* ¶¶ 122-126, 132-135, 137, 140-150.

158.    A POSA would not have been motivated to increase patient compliance and arrive at the claimed dosage regimens, because there is no evidence that compliance was an issue. A POSA would not be motivated to use "routine optimization" to arrive at the claimed regimens, when the only dose-finding study of rifaximin for HE was a treatment study that found no significant difference between 600, 1200, and 2400 mg or rifaximin. *Supra* ¶ 144.

159.    A POSA would have been concerned that daily, long-term rifaximin could lead to a loss of efficacy and fatal superinfections. *Supra* ¶¶ 151-153. A POSA would have been concerned that colonic bacteria would exposed to sub-inhibitory rifaximin concentrations, increasing the likelihood of resistance. *Supra* ¶¶ 152, 153. Even if there could be a short-term benefit, a POSA would stop rifaximin shortly after a patient's episode resolved to avoid resistance. *Supra* ¶ 151.

### 3.    No Reasonable Expectation of Success

160.    A POSA would not have reasonably expected that 1000-1200 mg of rifaximin every day for 12 months would work as claimed. Tr. 387:13-388:12 (Brown). Rifaximin was no better than placebo in improving mental state in patients with HE episodes. *Supra* ¶¶ 130, 131. There was no data for rifaximin in preventing HE recurrence. *Supra* ¶¶ 125-128, 132-140, 145-149.

161.    The Bausch HE Study was Salix's third attempt to establish rifaximin's role in HE, and there's no reason that a POSA would expect its outcome to be different than its first two attempts. *Supra* ¶ 132. The success rate of phase 3 HE clinical trials was low, and thus a POSA would not expect the Bausch HE Study to be successful. Tr. 379:11-381:12 (Brown).

162.    A POSA would not have relied on Dr. Leevy's "feeling" that rifaximin would be the standard of care in HE in determining whether rifaximin would prevent HE recurrence. *Supra* ¶¶ 137-140; Tr. 383:16-385:1 (Brown). Dr. Leevy's retrospective chart review concluded only that it was "possible" that rifaximin had a benefit, and it did not show rifaximin maintained remission. *Supra* ¶¶ 133-135.

163.    A POSA would not have reasonably expected rifaximin and lactulose to have a synergistic effect in preventing HE recurrence. *Supra* ¶¶ 143, 150. The Bausch HE Study was investigating the combination, but there were no results. *Supra* ¶ 132.

164.    Prior to October 2008, physicians used rifaximin off-label out of desperation, not because they reasonably expected it to work. *Supra* ¶ 126; Tr. 374:2-12 (Brown).

165.    Although the 12-month, 1100 mg daily rifaximin dosage regimen (550 mg BID) was under investigation, it was not "known" if it worked. *Supra* ¶ 132. Rifaximin in a daily dose of 1200 mg failed to treat HE. *Supra* ¶ 130-131. There was no known dosage range or dose-response for rifaximin in the treatment of HE. *Supra* ¶ 144.

**B.      Adequate Written Description (All Claims, Except '397 Patent, Claim 12)**

166.    A POSA would have recognized that the inventors possessed the claimed methods of using rifaximin alone. JTX 19 at 17:4-9; JTX 11 at 17:4-9; JTX 22 at 10:58-64; Tr. 407:14-18 (Brown). The '195, '573, and 397 patent specifications state that GI specific antibiotics, such as rifaximin, can be administered alone. JTX 19 at 17:26-29; JTX 11 at 17:26-29; JTX 22 at 11:15-18; Tr. 407:14-20 (Brown). The specifications also disclose an embodiment of administering rifaximin when the patient is not on lactulose. JTX 19 at 16:62-17:3; JTX 11 at 16:62-17:3; JTX 22 at 10:49-57; Tr. 407:14-22 (Brown).

167.    The patent specifications disclose a clinical study in which lactulose use was optional. Tr. 407:23-408:10 (Brown); *see* Tr. 231:21-232:6 (Berg). The '573 and '195 patent

specifications disclose that that rifaximin was effective regardless of whether patients took rifaximin and lactulose or rifaximin alone. Tr. 407:23-408:10 (Brown); *see* Tr. 231:21-232:6 (Berg).

## II.    IBS-D PATENT VALIDITY

168.    The priority date for the '569 and '667 patents is February 26, 2008. Uncontested Facts ¶¶ 27, 36, 130, 131; *see also* Tr. 612:10-14 (Harary).

169.    A POSA would have had a Ph.D. in pharmacology, microbiology, or a biological science or an M.D. with board certification in internal medicine or gastroenterology. A POSA would have had training in, experience with, or an ability to interpret GI disease research. Tr. 501:5-15 (Schoenfeld). If needed, a POSA could have collaborated with others having ordinary skill in related fields. Tr. 732:20-733:1 (Schoenfeld). The differences in the parties' POSA definitions are not outcome determinative. Tr. 613:15-614:1 (Harary); Tr. 733:2-19 (Schoenfeld).

### A.    Nonobviousness (All Claims)

#### 1.    Scope and Content of the Prior Art

170.    In weighing the risks and benefits of an IBS-D treatment, a POSA would consider all information before him. Tr. 733:19-734:3, 734:6-13, 734:19-735:5, 735:20-736:2 (Schoenfeld). There were many options to try, some with strong evidence of efficacy (e.g., Imodium®, serotonin receptor antagonists) and some with low evidence of efficacy (special diets, antispasmodics, antibiotics). PTX 664 at 1783-90; Tr. 511:8-512:16 (Schoenfeld). The options were so varied because the causes of IBS-D were a "black box." Tr. 738:19-21 (Schoenfeld).

171.    A POSA would have been aware of many theories for what causes IBS-D. PTX 696 at 2636-41; Tr. 505:13-506:23, 738:19-739:12, 744:12-745:1, 746:2-14 (Schoenfeld). But without knowing the underlying cause(s), it would have been difficult to reasonably predict which drugs might work. Tr. 738:19-22, 746:15-23, 750:8-17 (Schoenfeld); PTX 696 at 2636.

172.    In wading through "the quagmire of opinions and research findings," PTX 752 at 5, a POSA would have recognized that not all data is created equal, Tr. 733:19-734:3, 734:6-13, 734:19-735:5, 735:20-736:2 (Schoenfeld). For IBS-D specifically, placebo-controlled clinical trials are the most reliable data because they permit a POSA to determine if improvement is due to the treatment, as opposed to the large placebo effect or the natural fluctuations in symptoms. *See* Tr. 735:1-6, 735:10-16, 775:2-776:5 (Schoenfeld); PTX 1028 at 1540. Case series (e.g., retrospective chart reviews) are at the low end of reliability due to their multiple types and sources of bias. PTX 1028 at 1540; Tr. 735:6-9, 735:16-19, 774:8-775:1 (Schoenfeld).

173.    Drs. Pimentel and Lin at Cedars-Sinai proposed that SIBO contributed to IBS, and so antibiotics could treat IBS by eradicating SIBO. Tr. 755:12-18 (Schoenfeld). But a POSA would have been skeptical. Tr. 743:5-11 (Schoenfeld); PTX 692 at 1142.

174.    First, a POSA would have understood that SIBO and IBS are different conditions, Tr. 739:13-24 (Schoenfeld), even though SIBO symptoms can mimic IBS symptoms, Tr. 585:14-17 (Triadafilopoulos); Tr. 740:2-9, 741:1-2 (Schoenfeld). A positive SIBO test *ruled out* an IBS-D diagnosis. PTX 664 at 1781; Tr. 510:1-5, 740:2-741:2 (Schoenfeld). Therefore, a POSA would not have reasonably relied on SIBO research in treating IBS-D. Tr. 785:1-16 (Schoenfeld).

175.    Second, a POSA would have known that the breath test used to detect the prevalence of SIBO in IBS patients was unreliable. Tr. 754:1-755:6 (Schoenfeld); PTX 696 at 2250. Thus, a POSA would have been skeptical that SIBO was common in IBS if that assertion was based on a high percentage of patients with GI symptoms having a positive breath test. Tr. 754:24-755:7 (Schoenfeld); PTX 1029. It was understood that breath tests "cannot reliably be used to assess for eradication of SIBO after treatment with antibiotics."  PTX 1064 at 2507.

176.    Third, the theory that SIBO was common in IBS was controversial because others were unable to replicate Dr. Pimentel's results. PTX 457 at 627; PTX 675 at 2572; PTX 684 at S271; PTX 694; Tr. 760:13-16 (Schoenfeld). So, a POSA would have been "strongly caution[ed] against" applying the hypothesis to patient care. *See* PTX 675 at 2572; Tr. 760:6-12 (Schoenfeld).

177.    In sum, "[a] sound rationale for antibiotic therapy ha[d] not been established because the issue of SIBO in IBS ha[d] not been resolved." PTX 692 at 1142; Tr. 802:16-21 (Schoenfeld). Thus, while the antibiotic rifaximin was under investigation to treat IBS-D, the quality of evidence supporting it was "low" and "controversial." PTX 664 at 1790. A POSA would have understood that "[t]here was insufficient evidence to recommend antibiotics for the treatment of irritable bowel syndrome." PTX 693 at 1319; Tr. 778:18-779:8, 794:21-795:24 (Schoenfeld).

178.    Drs. Pimentel and Lin filed three patent applications based on their hypothesis that antibiotics could treat IBS-D by eradicating SIBO: the '608 patent, '053 patent, and Lin 2006. These patent applications would not have encouraged a POSA to go against the conventional wisdom. Tr. 757:6-758:4 (Schoenfeld). "No other group ha[d] adopted this treatment, which cannot be recommended until replicated in well designed studies by others." PTX 664 at 1788.

179.    Further, the Counsel for Appropriate and Rationale Antibiotic Therapy taught that "[i]n choosing an antibiotic, clinicians should consider the clinical evidence demonstrating that the drug is clinically and microbiologically appropriate," but a POSA would have appreciated that there was no evidence in that regard to support rifaximin for IBS-D. PTX 734 at 2S; Tr. 485:24-486:15 (DuPont); *see also* PTX 692 at 1142.

180.    Antibiotic use was a risk factor for developing or worsening IBS and associated with a serious condition called *C. difficile* colitis. PTX 1034 at 1484; PTX 664 at 1774, 1775, 1780; Tr. 750:21-24, 752:15-753:8 (Schoenfeld).

181.    **RFIB 2001 Protocol.** Plaintiffs' RFIB2001 Protocol discloses the design of a phase 2 clinical trial in patients 18 and older. DTX 340; Tr. 698:13-17 (Harary); Tr. 792:6-11 (Schoenfeld). It aimed to investigate the use of various rifaximin dosage regimens for IBS-D. Tr. 652:20-23 (Harary). The RFIB2001 Study Protocol does not disclose results. Tr. 698:13-17 (Harary). A POSA would not have reasonably expected that RFIB2001 would be successful simply because the trial had been initiated. Tr. 792:23-793:6 (Schoenfeld).

182.    The RFIB2001 dosage regimens are different than the claimed dosage regimen. Tr. Tr. 654:23-8 (Harary); 792:6-22 (Schoenfeld). RFIB2001 did not include a 1650 mg daily dose or a TID regimen. Tr. 698:20-699:6 (Harary).

183.    In September 2007, the Salix inventors discussed their RFIB2001 study. DTX 657; Tr. 656:12-657:20 (Harary). Norwich has not proven that the RFIB2001 Press Release is prior art, because it is dated within 1 year of the priority date and is derived from the inventors' own work.

184.    The RFIB2001 Press Release reported that 1100 mg daily (550 mg BID) of rifaximin for 14 days provided adequate relief of symptoms. DTX 657 at 4; Tr. 793:10-16 (Schoenfeld). But it did not report results for the other dosage regimens, which a POSA would have inferred meant those other regimens did not provide adequate relief. Tr. 793:17-24 (Schoenfeld). The other dosage regimens investigated lower doses and higher doses of rifaximin (550 mg daily, 2200 mg daily) compared to the claimed daily dose (1650 mg), and for longer (28 days) compared to the claimed length of administration (14 days). *Supra* ¶ 182.

185.    The RFIB2001 Press Release disclosed that a phase 3 clinical trial was planned. DTX 657 at 4; Tr. 658:6-10 (Harary). But a POSA would not have reasonably expected a planned phase 3 trial would be successful since many IBS-D drugs that looked successful in phase 2 had failed in phase 3. Tr. 793:25-794:20 (Schoenfeld).

186.    **Pimentel 2006.** In 2006, Dr. Pimentel's group published the results of a randomized, double-blind clinical trial comparing rifaximin 400 mg TID for 10 days to placebo. JTX 53 at 557-58.  It enrolled 87 patients 18 to 65 years old diagnosed with IBS (of any subtype). JTX 53 at 558; Tr. at 761:23-762:4 (Schoenfeld). Rifaximin significantly improved global IBS symptom scores averaged over the 10 weeks after treatment compared to placebo. JTX 53 at 560-61; Tr. 763:25-764:4, 764:16-18 (Schoenfeld). But rifaximin failed to improve abdominal pain, diarrhea, or constipation scores compared to placebo. JTX 53 at 561; Tr. 764:10-16 (Schoenfeld).

187.    Puzzled by the data, a POSA would have looked for guidance on how to interpret Pimentel 2006. Tr. 762:9-763:22, 764:22-765:4 (Schoenfeld). An "Editors' Notes" box appears in Pimentel 2006, cautioning that "[t]he duration of therapy and follow-up was short," and a qualified statement that "[r]ifaximin may improve some symptoms in some patients with IBS." JTX 53 at 558; Tr. 765:25-766:10 (Schoenfeld).

188.    Dr. Drossman, a (if not, *the*) leading expert in IBS, wrote an editorial that immediately followed Pimentel 2006. Tr. 766:11-25 (Schoenfeld). Drossman explained that Pimentel 2006's limitations made its "findings inconclusive and raise[d] questions about the clinical significance of the results." PTX 457 at 627; Tr. 767:11-18, 770:10-19 (Schoenfeld). The trial's statistical methods allowed the investigators to minimize the impact of treatment failures on the overall outcome, and rifaximin failed to improve the symptoms "integral in defining IBS (namely, pain, diarrhea, and constipation)." PTX 457 at 626-27; Tr. 767:19-768:7 (Schoenfeld).

189.    **Cuoco.** Cuoco disclosed a retrospective chart review of 1200 mg daily of rifaximin in SIBO in IBS. JTX 38 at 89; Tr. 658:24-659:2 (Harary); Tr. 787:4-12 (Schoenfeld). A POSA would have considered the study to have a poor methodology. Tr. 788:8-15 (Schoenfeld). The authors reviewed medical charts of 96 patients with a prior IBS diagnosis and a breath test. JTX

38 at 90-91; Tr. 788:16-19 (Schoenfeld). Only 44 had a positive breath test. JTX 38 at 91; Tr. 789:1-3 (Schoenfeld). And only 23 of those 44 patients returned to the clinic for a follow-up breath test.  JTX 38 at 92; Tr. 789:3-5 (Schoenfeld); Tr. 701:16-18 (Harary).

190.    For the remaining 23 patients, a POSA would have recognized the results were extremely biased because the investigators analyzed efficacy by retrospectively superimposing their interpretation of symptom improvement. Tr. 787:20-788:7, 789:11-17 (Schoenfeld); JTX 38 at 91-92. Even then, a POSA also would have had trouble interpreting the results disclosed in Table II. Tr. 789:17-790:3 (Schoenfeld). For example, it appeared that 7 patients may have developed symptoms after taking rifaximin. Tr. 701:19-702:21 (Harary); Tr. 789:19-23 (Schoenfeld); JTX 38 at 92. And Cuoco does not report how many of the 19 patients *with* symptoms before treatment were among the 12 *with* symptoms or 11 *without* symptoms after treatment. Tr. 789:24-790:3 (Schoenfeld); JTX 38 at 92. Thus, a POSA would not have been able to reasonably conclude from Cuoco that rifaximin could treat IBS-D. Tr. 790:4-7 (Schoenfeld).

191.    **Barrett.** Barrett reports a retrospective chart review of only 8 patients administered a probiotic and rifaximin 400 mg TID for one to five months. JTX 71; Tr. 639:3-8, 703:1-14 (Harary); Tr. 772:16-25 (Schoenfeld). Barrett taught that "further studies on the potential benefits of this nonsystemic antibiotic for IBS [were] warranted." JTX 71 at S480. Thus, to a POSA, Barrett offered a hypothesis that rifaximin may have benefit for IBS. Tr. 773:1-16 (Schoenfeld).

192.    Norwich also relies on "prior clinical uses" of the 200 mg rifaximin tablet. For the reasons discussed above in ¶¶ 171-191, a POSA would not have concluded that physicians used rifaximin off-label because they reasonably expected it to work. Tr. 797:11-21 (Schoenfeld). Plaintiffs' expert prescribed rifaximin to about 10 IBS-D patients in all of 2007, because his patients had severe symptoms, had failed multiple therapies, and were miserable. Tr. 797:18-

798:15 (Schoenfeld). So, while a POSA may have hoped rifaximin 200 mg tablets might be helpful, the use was "like an experiment." Tr. 797:18-798:15, 799:13-22 (Schoenfeld).

193.    Based on a 2005 conference call transcript, Norwich asserts that Dr. Pimentel's group had used rifaximin to treat 900 IBS patients in the less than 16 months that rifaximin had been available (July 2004 to November 2005). *See* Norwich FoF ¶ 96; Tr. 628:12-629:5 (Harary). Either Norwich misinterpreted the transcript, or the transcription was inaccurate, because Yang disclosed that only 84 Cedars-Sinai IBS patients had received rifaximin over that time period. DTX 892 at 169, 171; Tr. 630:3-4, 711:6-9 (Harary). Yang would not have provided a POSA with an accurate and unbiased view of rifaximin's potential to treat IBS-D. Tr. 773:25-775:1 (Schoenfeld).

194.    The Pimentel 2011, Weinstock, and Jolley retrospective chart reviews were published in 2011 and thus not prior art. Def.'s Br. at 18; Tr. 703:21-704:6, 707:6-8, 708:25-709:3 (Harary). The medical charts used for Pimentel 2011, Weinstock, and Jolley are not prior art. Tr. 705:10-706:1, 707:23-708:4, 710:2-8 (Harary). And Norwich offered no evidence that the physicians, patients, pharmacists made off-label uses public. Tr. at 706:2-707:5, 708:5-24, 710:9-24 (Harary); *see also* Tr. 598:14-599:4 (Pimentel).

195.    Salix's internal prescription and physician survey data (DTX 349) are not prior art. *See* Tr. 435:4-9 (Brown).

## 2.    No Motivation to Combine the Prior Art

196.    A POSA would not have been motivated to use rifaximin to improve IBS-D treatment because it had not been shown to treat IBS-D in the first place: (i) the RFIB2001 Protocol did not disclose results, *supra* ¶ 181; (ii) Pimentel 2006 taught that rifaximin 400 mg TID for 10 days did not improve abdominal pain and diarrhea in IBS patients, *supra* ¶¶ 186-188; (iii) Cuoco was based on the SIBO/IBS hypothesis, and its results were biased and confusing, *supra* ¶ 190; and (iv) Barrett concluded that more research was needed, *supra* ¶ 191. A POSA would have had

18

reasons *not* to treat IBS-D with rifaximin: it could contribute to or worsen IBS; it could cause *C. difficile* colitis; and its wide-spread use could cause superinfections. *Supra* ¶¶ 178-180.

197.   A POSA would not have been motivated to improve IBS-D treatment by adjusting the rifaximin dose within a known range, because there was no known range. Tr. 804:1-23 (Schoenfeld). "Antibiotic dose and duration of therapy ha[d] not been established." PTX 692 at 1142; Tr. 804:1-7 (Schoenfeld). Viscomi's dose range of 100 to 1800 mg is not specific for IBS. Tr. 715:5-7 (Harary); JTX 64 at ¶¶ 198, 246. Viscomi does not even mention IBS-D. Tr. 714:22-25 (Harary). Jolley's dose range of 1200 mg to 2400 mg is not prior art. *Supra* ¶ 194. Lin 2006 discloses the rifaximin regimen (1200 mg daily) that Pimentel 2006 found was *ineffective* to treat abdominal pain and diarrhea in IBS patients. *See* JTX 69 at 21. And Lin 2006's range of 1200 mg to 1800 mg was for chronic fatigue syndrome. JTX 69 at 29-30; Tr. 671:17-672:3 (Harary).

198.   A POSA would not have been motivated to improve IBS-D treatment by increasing the rifaximin dose because there was no sign that increasing the dose would improve IBS-D symptoms. Tr. 802:24-803:25 (Schoenfeld). Pimentel 2006, Barrett, and Cuoco disclose a 1200 mg daily dose. If a POSA were motivated to increase that dose using the RFIB2001 Protocol, he would not have been led to the claimed 1650 mg daily dose as (i) that dose was not even tested in RFIB2001, and (ii) the only dose higher than 1200 mg in RFIB2001 was 2200 mg. The RFIB2001 Press Release would have led a POSA to *lower* the daily dose, not increase it. Tr. 803:8-25 (Schoenfeld), because it reported that 1100 mg daily adequately relieved IBS-D symptoms (100 mg lower than the daily dose in Pimentel 2006, Barrett, and Cuoco). *Supra* ¶¶ 184, 186, 189, 191.

199.   While Pimentel 2006 states that "[r]ecent data suggest that the optimal dosage of rifaximin [for IBS] may, in fact, be higher than that used in our study," its only support for that statement is Lauritano. JTX 53 at 562; Tr. 780:25-781:11 (Schoenfeld). Lauritano did not study

rifaximin's effects on GI symptoms (much less IBS symptoms) or a higher dose than that used in Pimentel 2006. DTX 384 at 31; Tr. 664:15-15, 712:3-11 (Harary); Tr. 781:12-23 (Schoenfeld).

200.    Scarpellini did not enroll IBS patients or collect data on symptoms. Tr. 713:18-24, 714:6-8 (Harary). It was an uncontrolled study of 1200 or 1600 mg daily for 7 days on breath test normalization in SIBO patients. Tr. 713:25-714:5 (Harary); Tr. 790:11-18 (Schoenfeld). Di Stefano also did not study IBS, but rather breath test normalization in SIBO with rifaximin versus an antibiotic known to be suboptimal in treating SIBO. JTX 40 at 551, 555; Tr. 785:17-786:4 (Schoenfeld); Tr. 614:25-615:5, 615:25-616:12 (Harary); Tr. 786:5-19 (Schoenfeld). Thus, Lauritano, Scarpellini, and Di Stefano would not have provided a POSA with guidance on whether rifaximin would treat IBS-D, much less what dosage regimen to use. Tr. 783:2-784:4, 786:13-19, 790:23-791:3 (Schoenfeld); *see also supra* ¶¶ 174-176.

201.    A POSA would not have been motivated to maintain an effective concentration of rifaximin in the small intestine to control bacteria levels because he would not have reasonably believed that controlling bacterial levels in the small intestine would treat IBS-D. Tr. 801:24-802:23 (Schoenfeld); *supra* ¶¶ 173-177.

202.    A POSA would not have been motivated to improve the use of rifaximin to treat IBS by using a larger tablet to reduce patients' pill burden and improve compliance because there is no evidence such an issue existed. *See* Tr. 674:10-16, 728:14-20 (Harary). Even if pill burden or compliance were an issue, a POSA would not have been motivated to use TID dosing, because he would have understood it is more difficult to remember to take a drug three times versus twice a day. Tr. 803:17-21, 804:24-805:9 (Schoenfeld). Even if a POSA were motivated to use a larger tablet (e.g., larger than 200 mg), Norwich offered no reason to choose 550 mg (the claimed size), when the POSA could have chosen any size he wanted to. *See* Tr. 730:4-18 (Harary).

### 3.    No Reasonable Expectation of Success

203.    A POSA would not have reasonably expected that rifaximin 1650 mg daily (550 mg TID) for 14 days would work as claimed.

204.    A POSA would have had a poor understanding of the causes of IBS, making it difficult to reasonably predict whether the claimed rifaximin dosage regimen would work as claimed. PTX 696 at 2636; PTX 752 at 1-2, 5; Tr. 746:15-23, 750:8-21, 807:5-808:8 (Schoenfeld).

205.    A POSA would have understood that the conventional wisdom as of the priority date was that he should *not* use an antibiotic like rifaximin to treat IBS-D. PTX 693 at 1319, 1320; PTX 692 at 1142; PTX 664 at 1780; Tr. 808:9-21 (Schoenfeld).

206.    A POSA would not have relied on SIBO studies to make reasonable predictions about whether rifaximin would work as claimed or what an optimal dosage regimen would be. Tr. 785:1-16, 791:4-13 (Schoenfeld). A POSA would have been skeptical that SIBO contributes to IBS, and so he would not have reasonably expected that rifaximin 550 mg TID for 14 days would relieve IBS-D symptoms by reducing gut bacteria. *Supra* ¶¶ 173-177.

207.    Off-label use of the 200 mg rifaximin tablet would not have provided a POSA with a reasonable expectation that 1650 mg daily of rifaximin (administered 550 mg TID) for 14 days would worked as claimed; at most, those off-label uses represented a hope that rifaximin might treat IBS in miserable patients who had failed other therapies. *Supra* ¶ 192.

208.    Even if a POSA were motivated to adjust the rifaximin dosage regimen to improve IBS-D treatment, there was no reasonable expectation he could do so successfully. Tr. 808:22-809:4 (Schoenfeld). There was no known therapeutic range or dose-response relationship between rifaximin and IBS-D symptom relief. Tr. 809:1-2 (Schoenfeld); PTX 692 at 1142. Thus, a POSA could not have used "routine optimization" to conclude that rifaximin 1650 mg daily (administered as 550 mg TID) for 14 days would work as claimed. Tr. 808:22-809:10 (Schoenfeld).

### B.     Adequate Written Description ('569 Patent, Claim 2)

209.     The specification discloses methods for "acute treatment for symptomatic diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response. In one embodiment, the 1650 mg is administered 550 mg three times a day." JTX 9 at 5:49-56; Tr. 813:9-17 (Schoenfeld); *see also* Tr. 685:23-686:1 (Harary). Thus, the specification ties "durability of response" to the treatment of IBS-D with a 14-day 550 mg TID rifaximin dosage regimen. *See* Tr. 812:14-814:20 (Schoenfeld); *contra* Norwich's FoF ¶ 176.

210.     The specification discloses that the "response" in "durability of response" is "adequate relief of symptoms." JTX 9 at 11:44-46; Tr. at 814:11-20 (Schoenfeld). It discloses that a "durability of response" happens if there is "adequate relief of symptoms after removal of treatment" (i.e., the response recited in claim 2). JTX 9 at 11:44-48; Tr. at 519:5-14, 819:9-21 (Schoenfeld). "The duration of response may be, for example, 2 days, 7 days, two weeks, 3 weeks, 4 weeks, 12 weeks, between about 1 week and about 24 weeks or longer." JTX 9 at 11:48-53; *see* Tr. 688:2-7 (Harary). Thus, the specification describes a "duration of response" of about 12 weeks. Tr. 820:7-13 (Schoenfeld); *see* Tr. 688:2-7 (Harary); *contra* Def.'s FoF ¶ 177.

211.     The specification discloses that "[a] study (FIG. 3) is designed to evaluate the efficacy of a 14-day course of oral rifaximin at 550 mg TID in providing adequate relief from diarrhea-associated IBS (dIBS) symptoms over four weeks." JTX 9 at 25:56-59; Tr. 816:6-817:9 (Schoenfeld). "FIG. 3 shows a proposed study design for treatment with rifaximin to show durability of response." JTX 9 at 6:10-12. It discloses a "4 Week Treatment Period" followed by a "Post-Treatment Phase" that is "12 W[ee]ks." JTX 9 at Fig. 3, 25:55-59; Tr. 816:17-818:14 (Schoenfeld).

212.    Thus, the specification discloses a clinical trial protocol for a specific rifaximin dose (550 mg), frequency (TID), and length of administration (14 days); a result for the treatment phase (adequate relief) compared to placebo; and a 12-week post-treatment phase to study durable adequate relief. JTX 9 25:55-26:60; Tr. 816:6-818:14 (Schoenfeld).

### C.    Definiteness ('569 Patent, Claim 2)

213.    "Adequate relief" of IBS-D symptoms in claim 2 of the '569 patent is a term of art that reflects the patient's subjective assessment of his symptoms. Tr. 514:5-12, 515:7-11, 515:14-25, 821:9-822:1 (Schoenfeld); JTX 9 at 11:53-57.  The specification teaches objective methods for determining "adequate relief:" a "yes" response from a patient when asked whether they have had adequate relief. JTX 9 at 2:42-45; Tr. 514:13-19, 820:18-821:2 (Schoenfeld). Physicians can help by offering pain scale or stool form scales to analyze "reduction of [IBS-D] symptoms." JTX 9 at 2:50-51;  Tr.  514:19-21,  515:7-516:5,  815:15-816:5  (Schoenfeld).  These  assessments  were sufficiently definite to be used as measurements in Salix's TARGET clinical trials. *See* Tr. 516:1-517:21 (Schoenfeld).

214.    "Durability of response" in claim 2 of the '569 patent is also a term of art. Tr. 514:5-12, 519:15-22 (Schoenfeld). The specification provides examples of "durability of response," JTX 9 at 11:44-48, and the "durability of response" recited in claim 2 is "adequate relief of symptoms after removal of treatment." *Compare* JTX 9, claim 2, *with* 11:44-46; Tr. 819:9-18 (Schoenfeld). The specification teaches objective methods for determining a "durability of response:" "The duration of response, may be, for example … 12 weeks … The response may be measured, for example using one or more of the methods outlined below, including, for example, a subject's subjective assessment of their symptoms or a healthcare provider's or caretaker's assessment of a subject's symptoms." JTX 9 at 11:50-57. A POSA would understand this refers to asking the

patient whether he has had adequate relief 12 weeks after stopping rifaximin. Tr. 820:18-821:8 (Schoenfeld).

215.    Thus, a POSA would understand that if 12 weeks after stopping rifaximin, the patient reports he has had adequate relief, that is within the scope of claim 2 of the '569 patent; if 12 weeks after stopping rifaximin (or at any point before), the patient reports he has not had adequate relief, that is not within the scope of claim 2. Tr. 519:15-22, 821:9-822:1 (Schoenfeld). That patients will have different opinions on what is adequate to them does not change this objective analysis. Tr. 822:2-15 (Schoenfeld).

## III.    POLYMORPH PATENT VALIDITY

216.    The priority date of the '199 and '206 patents is November 7, 2003. Tr. 861:9-16 (Zaworotko); 937:14-938:2 (Myerson); *see also* Uncontested Facts ¶¶ 91, 99, 134; JTX 96.

217.    A POSA would have had a B.S. in chemistry, chemical engineering, or a related discipline with at least 3 years' experience in the pharmaceutical industry related to API manufacturing, crystallization, characterization, or evaluation of solid state forms. Or a POSA would have had an advanced degree with less or no experience. Tr. 936:21-937:6 (Myerson). The differences in the parties' POSA definitions are not outcome determinative. Tr. 861:5-8 (Zaworotko); Tr. 937:7-13 (Meyerson).

### A.    No Anticipation ('199 Patent, Claim 4)

218.    Cannata discloses examples for preparing the compound rifaximin, including Examples 1, 6, 7, and 9.  Tr. 948:15-21 (Myerson); JTX 37 at Examples 1, 6, 7, and 9. But it does not identify the crystalline forms (if any) prepared by the examples. Tr. 948:15-949:2 (Myerson). It does not disclose that rifaximin is polymorphic. Tr. 948:2-5 (Myerson). Prior to November 2003, the polymorphism of rifaximin was not publicly known. Tr. 912:11-913:18 (Zaworotko); Tr. 946:24-947:1 (Myerson).

219.     Cannata does not disclose (1) rifaximin in polymorphic form β; Tr. 870:18-22 (Zaworotko); Tr. 948:6-7 (Myerson); (2) the XRPD profile of any crystalline rifaximin; Tr. 884:6-10 (Zaworotko); Tr. 948:8-10 (Myerson); or (3) the water content of any crystalline rifaximin; Tr. 871:14-17 (Zaworotko); Tr. 948:11-14 (Myerson).

220.     Norwich did not present experimental evidence that Cannata inherently produces rifaximin β. Dr. Zaworotko admitted that he did not try to recreate any example in Cannata. Tr. 918:8-11 (Zaworotko). It is therefore not possible to know what polymorphic forms, if any, were produced by following Cannata and whether the water content of any crystalline rifaximin was at least 5%. *See* Tr. 949:3-7, 952:3-18 (Myerson).

221.     The four post-filing references Dr. Zaworotko relies on are not prior art, Tr. 950:6-13 (Myerson); *see also* Tr. 872:6-15 (Zaworotko); JTX 80 page 4 (Viscomi Declaration dated January 10, 2006), and cannot prove that Cannata inherently anticipates claim 4 of the '199 patent. Tr. 935:23-936:5, 947:2-10, 954:4-8 (Myerson).

222.     **Viscomi Declaration.** The inventors filed the Viscomi Declaration to overcome a rejection of a related patent application rejected as anticipated by Cannata and Marchi. Tr. 879:5-11 (Zaworotko); 947:13-948:1 (Myerson); JTX 80, ¶ 4. The Viscomi Declaration rifaximin batches were not rifaximin β form each and every time. Tr. 919:6-19, 879:22-880:8 (Zaworotko); Tr. 949:8-12, 972:24-973:19 (Myerson); *see* JTX 80, ¶¶ 7, 8 (listing batches containing no rifaximin β). Some batches contained a single polymorph, and some contained a mixture of different polymorphs. Tr. 947:17-948:1 (Myerson); Tr. 879:22-880:19 (Zaworotko); JTX 80, ¶¶ 7, 8, 11.

223.     **Viscomi 2008 & Braga 2012.** Viscomi 2008 and Braga 2012 disclose rifaximin polymorphs α, β, γ, δ, and ε. Tr. 875:1-11 (Zaworotko). The processes for preparing the polymorphs of rifaximin in Viscomi 2008 and Braga 2012 are very similar to the processes for

preparing rifaximin described in the '199 patent, but have "very significant differences" compared to the examples for preparing rifaximin in Cannata. Tr. 950:14-23 (Myerson).

224.    The Viscomi 2008 processes provide more specificity and precision than Cannata, particularly with respect to amounts of components and timing in which steps were performed in the reaction, washing/filtering, and crystallization steps. Tr. 950:20-952:2 (Myerson).

225.    The reaction step for preparing wet rifaximin in Viscomi 2008 describes (1) heating the reaction mixture to 50°C for 5 hours, then cooling it to 20°C; (2) adding a mixture of 0.1 moles of ascorbic acid and 2.5 moles of concentrated hydrochloric acid in 220 mL of 58% ethyl alcohol in water over 30 minutes; and (3) adding concentrated hydrochloric acid dropwise until pH 2.0 is reached. Tr. 951:8-13 (Myerson); JTX 65 at 1074. Then the precipitate is filtered and washed after 30 minutes with a 44% (v/v) ethyl alcohol solution before drying. JTX 65 at 1074; Tr. 951:15-17 (Myerson). Cannata has none of these details. Tr. 951:13-17 (Myerson).

226.    The crystallization step for preparing wet rifaximin in Viscomi 2008 describes (1) suspending the filtered precipitate in 1.6 L of ethyl alcohol; (2) heating the suspension at about 57°C until dissolution; (3) adding 700 mL of demineralized water; (4) lowering the temperature of the mixture to about 30°C over 40 minutes; (5) increasing it to about 40°C; (6) maintaining the temperature for 20 hours; and; (7) lowering the temperature to 0°C over 30 minutes. Tr. 951:18-25 (Myerson); JTX 65 at 1074. Cannata has none of these details. Tr. 952:1-2 (Myerson).

227.    If Cannata's examples provide any information about how the crystallization was done, it is vague. Tr. 948:15-949:2, *see id.* 952:19-953:1 (Myerson). A POSA could not predict the reaction's outcome without the details because varying the conditions (e.g., solvent, solvent composition, temperature, cooling rates, evaporation rates) will affect the resulting form (if any is produced). Tr. 941:23-942:14, 949:3-7, 943:10-944:15, 972:24-973:19 (Myerson).

228.    Purity is most influential determining the outcome of crystallization. Tr. 942:15-23 (Myerson). Impurities can inhibit crystallization and can influence what polymorphs will be obtained. Tr. 942:15-23 (Myerson). Impurities can be introduced in the chemical reactions preceding the crystallization, e.g., by the solvent and starting materials, as well as during the crystallization. Tr. 939:20-5, 942:15-943:9, 943:15-944:1 (Myerson).

229.    The inventors discovered the temperature of the crystallization, the length of time of crystallization, and the drying parameters are key to getting a specific crystalline form each and every time. JTX 2 at 1:41-44, 2:37-41; Tr. 946:8-23 (Myerson). Some or all of these details are missing from each of Cannata's Examples 1, 6, 7 and 9. *See* Tr. 948:15-952:2 (Myerson).

230.    **Bacchi 2008.** Bacchi 2008 discloses a rifaximin β crystal structure called rifaximin tetrahydrate ("RX4"). Tr. 882:14-24 (Zaworotko); DTX 43 at 1731. It does not prove that Examples 1 and 7 of Cannata necessarily results in rifaximin β. *See* Tr. 953:2-24 (Myerson).

231.    RX4 was obtained "by slow evaporation of a water-ethanol solution of commercial rifaximin at room temperature." DTX 43 at 1734; Tr. 882:25-883:3 (Zaworotko). That process is significantly different from Cannata's Examples 1 and 7. Tr. 953:2-24 (Myerson). First, Cannata says nothing about using evaporation (or slow evaporation). Tr. 949:20-22 (Myerson); Tr. 918:12-919:5 (Zaworotko). Second, Examples 1 and 7 crystallize rifaximin from a 7:3 ethanol to water mixture, Tr. 949:15-23 (Myerson), whereas Bacchi 2008 does not disclose a ratio of ethanol to water for its crystallization. Tr. 953:2-954:3 (Myerson).

232.    The solvent and solvent composition influence what polymorphs can form. *Supra* ¶¶ 227-228. Crystallizing at 7:3 ethanol to water eliminates the possibility of using evaporation because doing so would change the ratio and, therefore, change the solvent composition. Tr.

949:15-950:2, 953:2-24 (Myerson). Thus, Examples 1 and 7 likely used a combination of cooling and antisolvent techniques to maintain the ratio. Tr. 949:15-950:5 (Myerson).

###   B.    Nonobviousness (All Claims)

233.    The prior art does not teach or suggest (1) rifaximin β (or how to synthesize it or a composition comprising it); (2) the XRPD peaks recited in the Polymorph Claims; or (3) the water content recited in the Polymorph Claims. Tr. 948:2-14, 955:1-956:2 (Myerson); Tr. 870:18-22, 871:14-17, 884:6-10, 901:19-902:2, 907:16-20 (Zaworotko).

234.    **Cannata, Marchi, Normix Label.** Cannata is discussed above in ¶¶ 218-220. Marchi discloses the synthesis of rifaximin and compositions comprising it; the Normix Label describes the use of rifaximin as a pharmaceutical. Tr. 865:22-866:2, 907:22-908:4, 867:10-17 (Zaworotko); Tr. 955:7-11 (Myerson). Marchi and the Normix Label do not disclose that rifaximin is polymorphic, rifaximin β, or how to synthesize rifaximin β. Tr. 955:23-956:2 (Myerson).

235.    **Common Knowledge.** Norwich had three categories of "common knowledge": rifaximin (discussed in ¶ 234), polymorphs, and rifampicin. Tr. 955:1-18 (Myerson). Haleblein, Remington, 1987 FDA Guidelines, and Brittain disclose general information on polymorphs (e.g., how to look for them, screening experiments), but they do not describe anything specific to rifaximin. Tr. 955:1-16 (Myerson).

236.    A polymorph screen is a set of trial-and-error crystallization experiments to look for new polymorphs. Tr. 940:24-941:4 (Myerson); *see also* Tr. 894:8-15 (Zaworotko). As of November 2003, there were multiple screening techniques that could be used alone or in combination. Tr. 943:10-944:15 (Myerson) (discussing 8 techniques); PTX 614, Ch. 5; PTX 709. A POSA could vary the conditions of each screening technique (e.g., cooling, antisolvent), making the potential combination of experiments large.   Tr. 941:23-942:14, 943:10-944:15 (Myerson).

There was no standard way to perform a screen and varying the conditions could influence what crystalline forms, if any, result. Tr. 952:3-11 (Myerson); *supra* ¶¶ 227-228, 232.

237.    Henwood and Pelizza disclose rifampicin is polymorphic. Tr. 955:1-18 (Myerson). Rifampicin is structurally similar to rifaximin. *Id.*; Tr. 890:9-15 (Zaworotko). But knowing that rifampicin is polymorphic does not provide any guidance as to whether the structurally similar rifaximin will be polymorphic.  Tr. 940:6-941:11 (Myerson); PTX 418 at 2.

238.    Polymorphism was (and still is) unpredictable and discovering polymorphs requires trial and error. Tr. 913:24-915:8, 919:20-920:13 (Zaworotko); Tr. 939:2-940:5, 956:17-21 (Myerson); PTX 701 at 906; PTX 717 at 16802; PTX 699 at 1008; PTX 704 at 394; PTX 980 at 431. It was not possible to predict the existence or properties of a particular polymorph before its discovery and characterization. Tr. 957:12-21, 956:11-17 (Myerson).

239.    A POSA would not have had a reasonable expectation of success of finding rifaximin β with its claimed XRPD peaks and water content because "you can't have a reasonable expectation of success to find something you don't know exists." Tr. 956:17-957:3, 957:12-21 (Myerson). Rifampicin's known polymorphism would not have provided a reasonable expectation that rifaximin would be polymorphic, much less that a particular rifaximin polymorph (rifaximin β) would exist.  *Supra* ¶ 237; *see also* Tr. 913:21-914:23 (Zaworotko).

**C.    Adequate Written Description (All Claims)**

240.    The '199 patent is a continuation of, and contains substantially the same disclosures as, the '206 patent. Tr. 909:10-13 (Zaworotko). The Polymorph Claims recite the same XRPD peak limitation. *Id. Compare* JTX 2 at claim 4, *with* JTX 3 at claim 36. "About 5.4°, 9.0°, and 20.9° 2θ" in the claims means "about 5.4°, 9.0°, and 20.9° 2θ ± 0.2° 2θ." Tr. 959:12-21 (Myerson); *see* Tr. 886:1-7 (Zaworotko).

241.    XRPD peaks are an inherent characteristic of a polymorph. Pls' FoF ¶ 25. Each peak in an XRPD diffractogram is a structural element of that form. Tr. 958:25-959:7 (Myerson); *see also* Tr. 966:5-967:10 (Myerson). All of the rifaximin β claim limitations are expressly disclosed in the same embodiment. Tr. 960:6-962:20 (Myerson); JTX 2 at 5:64-6:3; JTX 3 at 5:64-6:3; *see also* JTX 2 at 8:45-54; JTX 3 at 8:44-51.

242.    A crystalline form of a known compound can be characterized by a subset of XRPD peaks. Tr. 963:2-17 (Myerson); Tr. 921:1-20 (Zaworotko); *see also* PTX 707 at 15:36-39; Tr. 917:9-25 (Zaworotko). The subset of XRPD peaks at about 5.4°, 9.0°, and 20.9° 2θ was sufficient as of the priority date to distinguish rifaximin β from the other known rifaximin polymorphs: α and γ. Tr. 963:18-965:1 (Myerson). There is no evidence that rifaximin β will not have XRPD peaks at about 5.4°, 9.0°, and 20.9° 2θ ± 0.2° 2θ.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

_____

OF COUNSEL:

Scott K. Reed
Steven C. Kline
Shannon K. Clark
Daniel A. Apgar
Alexis M. McJoynt
Damien N. Dombrowski
VENABLE LLP
1290 Avenue of the Americas
New York, NY  10104
(212) 218-2100

Becky E. Steephenson
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
(212) 307-5598

June 2, 2022

Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
kjacobs@morrisnichols.com
cclark@morrisnichols.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 2, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Karen E. Keller<br>Nathan R. Hoeschen<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 N. Market St., 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Matthew J. Becker<br>Stacie L. Ropka<br>Matthew S. Murphy<br>Chad A. Landmon<br>Rebecca L. Clegg<br>AXINN, VELTROP & HARKRIDER LLP<br>90 State House Square<br>Hartford, CT  06103<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Aziz Burgy<br>AXINN, VELTROP & HARKRIDER LLP<br>1901 L Street NW<br>Washington, DC  20036<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Richardo S. Camposanto<br>AXINN, VELTROP & HARKRIDER LLP<br>560 Mission Street<br>San Francisco, CA  94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

/s/ Karen Jacobs
Karen Jacobs (#2881)