IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., BAUSCH HEALTH IRELAND LTD., and ALFASIGMA S.P.A., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 20-430-RGA |
| NORWICH PHARMACEUTICALS, INC., | ) ) | |
| Defendant. | ) | |

**DEFENDANT NORWICH PHARMACEUTICALS, INC.'S
<u>RESPONSIVE POST-TRIAL BRIEF</u>**

<div style="margin-left:45%;">

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

</div>

OF COUNSEL:
Matthew J. Becker
Stacie L. Ropka
Matthew S. Murphy
Chad A. Landmon
Rebecca L. Clegg
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT  06103
(860) 275-8100

Aziz Burgy
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC  20036
(202) 721-5417

Richardo S. Camposanto
AXINN, VELTROP & HARKRIDER LLP
560 Mission Street
San Francisco, CA 94105
(415) 490-2000

Dated:  June 2, 2022

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ......................................................................................................... 1

II.    SALIX HAS NOT PROVEN DIRECT INFRINGEMENT OF ANY ASSERTED HE
       OR IBS-D CLAIM BY PHYSICIANS AND PATIENTS JOINTLY .............................. 2

III.   SALIX HAS NOT PROVEN THAT NORWICH HAS SPECIFIC INTENT TO
       INDUCE INFRINGEMENT OF ANY ASSERTED HE OR IBS-D CLAIM ................. 3

       A.    Salix Has Not Proven Intent to Induce Infringement by Patients Alone. .............. 3

       B.    Salix's Multi-Level Inducement Theory is Flawed. ................................................ 5

IV.    SALIX HAS NOT PROVEN THAT NORWICH'S LABEL
       WOULD INDUCE INFRINGEMENT OF ANY ASSERTED HE CLAIM ................... 7

       A.    "12 months or longer" (all Asserted HE Claims) ................................................... 7

       B.    "maintain remission" ('573 patent, claim 8) .......................................................... 9

       C.    "Conn score of 0 or 1" ('397 patent, claims 11 and 12) ..................................... 10

       D.    "lactulose" ('397 patent, claim 12) ...................................................................... 10

       E.    Substantial Non-Infringing Uses of Norwich's ANDA Product
             Preclude A Finding of Inducement of the Asserted HE Claims. ......................... 11

V.     SALIX HAS NOT PROVEN THAT NORWICH'S LABEL
       WOULD INDUCE INFRINGEMENT OF ANY ASSERTED IBS-D CLAIM ............. 12

       A.    "durability of response comprises  about 12 weeks of adequate relief of
             symptoms" ('569 patent, claim 2) ........................................................................ 12

       B.    "a subject 65 years of age or older" ('667 patent, claim 3) ................................. 16

VI.    SALIX'S ALLEGED EVIDENCE OF SKEPTICISM DOES NOT DEFEAT THE
       PRIMA FACIE OBVIOUSNESS OF THE ASSERTED HE AND IBS-D CLAIMS ..... 18

VII.   SALIX'S ALLEGED EVIDENCE OF LONG-FELT NEED DOES NOT DEFEAT
       THE PRIMA FACIE OBVIOUSNESS OF THE ASSERTED HE CLAIMS ................. 20

       A.    Xifaxan 550 mg Rifaximin Tablets Did Not Satisfy Any Long-Felt Need
             for A Treatment to Prevent HE Recurrence and Maintain Remission ................. 20

       B.    Publications Relied on by Salix Do Not Show Existence of a Long-Felt Need ... 21

       C.    FDA Approval Does Not Demonstrate Satisfaction of a Long-Felt Need. .......... 22

VIII.  CONCLUSION ........................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acorda Therapeutics Inc. v. Apotex Inc.*,
 C.A. No. 07-4937, 2011 WL 4074116 (D.N.J. Sept. 6, 2011),
 *aff'd*, 476 F. App'x 746 (Fed. Cir. 2012) ...............................................................................17

*Amarin Pharma, Inc. v. Hikma Pharm. USA Inc.*,
 449 F. Supp. 3d 967 (D. Nev. 2020)........................................................................................20

*Applera Corp. v. MJ Rsch., Inc.*,
 297 F. Supp. 2d 459 (D. Conn. 2004)........................................................................................6

*AstraZeneca LP v. Apotex, Inc.*,
 633 F.3d 1042 (Fed. Cir. 2010)....................................................................................9, 17, 18

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
 512 F.3d 1338 (Fed. Cir. 2008)................................................................................................19

*Bayer Healthcare Pharm., Inc. v. Watson Pharm., Inc.*,
 713 F.3d 1369 (Fed. Cir. 2013)................................................................................................19

*BTG Int'l Ltd. v. Amneal Pharm. LLC*,
 923 F.3d 1063 (Fed. Cir. 2019)................................................................................................21

*In re Cavanagh*,
 436 F.2d 491 (C.C.P.A. 1971) .................................................................................................21

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
 845 F.3d 1357 (Fed. Cir. 2017)........................................................................................ *passim*

*Envtl. Designs, Ltd. v. Union Oil Co. of Cal.*,
 713 F.2d 693 (Fed. Cir. 1983)..................................................................................................20

*Genentech, Inc. v. Sandoz, Inc.*,
 No. 19-0078-RGA, 2022 WL 842957 (D. Del. Mar. 22, 2022) ...................................... *passim*

*Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*,
 618 F.3d 1294 (Fed. Cir. 2010)................................................................................................21

*GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*,
 7 F.4th 1320 (Fed. Cir. 2021) ............................................................................................17, 18

*Grunenthal GMBH v. Alkem Labs. Ltd.*,
 919 F.3d 1333 (Fed. Cir. 2019)................................................................................................16

*Immunex Corp. v. Sandoz Inc.*,
    964 F.3d 1049 (Fed. Cir. 2021) ................................................................... 19

*Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co.*,
    424 F. Supp. 2d 388 (D. Conn. 2006), *adhered to on reconsideration*,
    2006 WL 2474306 (D. Conn. Aug. 24, 2006) .............................................. 6

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014) ...................................................................................... 6

*Neptune Generics, LLC v. Eli Lilly & Co.*,
    921 F.3d 1372 (Fed. Cir. 2019) ................................................................... 20

*Neptune Generics, LLC v. Eli Lilly & Co.*,
    IPR2016-00240, 2017 WL 4466557 (P.T.A.B. Oct. 5, 2017) ...................... 20

*Novartis AG v. Torrent Pharm. Ltd.*,
    853 F.3d 1316 (Fed. Cir. 2017) .............................................................. 19, 22

*Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*,
    363 F.3d 1306 (Fed. Cir. 2004) ..................................................................... 2

*Orexigen Therapeutics, Inc. v. Actavis Labs. FL, Inc.*,
    282 F. Supp. 3d 793 (D. Del. 2017) ............................................................ 15

*Pernix Ir. Pain DAC v. Alvogen Malta Operations Ltd.*,
    323 F. Supp. 3d 566 (D. Del. 2018), *aff'd sub nom. Persion Pharm. LLC v.
    Alvogen Malta Operations Ltd.*, 945 F.3d 1184 (Fed. Cir. 2019) ................. *passim*

*Procter & Gamble Co. v. Teva Pharm. USA, Inc.*,
    566 F.3d 989 (Fed. Cir. 2009) ..................................................................... 22

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
    30 F.4th 1109 (Fed. Cir. 2022) .................................................................... 12

*Sanofi v. Glenmark Pharm. Inc., USA*,
    204 F. Supp. 3d 665 (D. Del. 2016), *aff'd sub nom.
    Sanofi v. Watson Labs. Inc.*, 875 F.3d 636 (Fed. Cir. 2017) ................ 7, 8, 10, 15

*Sanofi v. Watson Labs. Inc.*,
    875 F.3d 636 (Fed. Cir. 2017) ..................................................................... 15

*Shire LLC v. Amneal Pharm., LLC*,
    No. 11-3781, 2014 WL 2861430 (D.N.J. June 23, 2014), *aff'd in part, rev'd
    on other grounds*, 802 F.3d 1301 (Fed. Cir. 2015) ............................ 8, 10, 11, 16

*Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
    785 F.3d 625 ......................................................................................... *passim*

*Takeda Pharm., U.S.A., Inc. v. West-Ward Pharm. Corp.*,
  C.A. No. 14-1268-RGA-SRF, 2018 WL 6521922 (D. Del. Dec. 12, 2018)......................14, 16

*Vanda Pharm. Inc. v. West-Ward Pharm. Int'l Ltd.*,
  887 F.3d 1117 (Fed. Cir. 2018)........................................................................................17, 18

*Warner-Lambert Co. v. Apotex Corp.*,
  316 F.3d 1348 (Fed. Cir. 2003)........................................................................................11, 15

*Zimmer Surgical, Inc. v. Stryker Corp.*,
  365 F. Supp. 3d 466 (D. Del. 2019)................................................................................12, 14

## TABLE OF ABBREVIATIONS

| Abbreviation | Exhibit No. | Description |
|---|---|---|
| Norwich | | Norwich Pharmaceuticals, Inc. |
| Salix | | Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc., Bausch Health Ireland Ltd., Alfasigma S.p.A. |
| NDA | | New Drug Application |
| ANDA | | Abbreviated New Drug Application |
| Norwich's ANDA Product | | The product identified in ANDA No. 214369, namely rifaximin tablets in 550 mg dosage strength |
| Label | | The proposed label for Norwich's ANDA Product |
| FDA | | U.S. Food and Drug Administration |
| TD | | Travelers' Diarrhea |
| HE | | Hepatic encephalopathy |
| IBS | | Irritable bowel syndrome |
| IBS-D | | Irritable bowel syndrome with diarrhea |
| '573 patent | JTX11 | United States Patent No. 8,642,573 |
| '195 patent | JTX19 | United States Patent No. 9,421,195 |
| '397 patent | JTX22 | United States Patent No. 10,335,397 |
| Asserted HE Claims | | Claim 8 of the '573 patent, claim 6 of the '195 patent, and claims 11 and 12 of the '397 patent |
| '569 patent | JTX9 | United States Patent No. 8,309,569 |
| '667 patent | JTX26 | United States Patent No. 10,765,667 |
| Asserted IBS-D Claims | | Claim 2 of the '569 patent and claim 3 of the '667 patent |
| POBr. | | Plaintiffs' Opening Post-Trial Brief (D.I. 174) |
| PFOF | | Plaintiffs' Opening Findings of Fact (D.I. 175) |
| NOBr. | | Defendant Norwich Pharmaceuticals, Inc.'s Opening Post-Trial Brief (D.I. 176) |
| NFOF | | Defendant Norwich Pharmaceuticals, Inc.'s Findings of Fact (D.I. 177) |
| NRFOF | | Defendant Norwich Pharmaceuticals, Inc.'s Responsive Findings of Fact |

## I.    INTRODUCTION

Salix's theories of induced infringement liability fail on many fronts.  First, Salix has failed to prove underlying joint direct infringement by physicians and patients, given that physicians will not condition any benefit on their patients' performance of any step of the Asserted HE and IBS-D Claims.  *See* Part II, infra.  Second, Salix has failed to prove that Norwich's Label demonstrates specific intent to induce patients to infringe, given that patients will not administer rifaximin according to the claimed methods without further guidance from their physician.  *See* Part III.A, infra.  Third, Salix's theory that Norwich induces physicians who in turn induce patients to infringe is factually and legally flawed.  *See* Part III.B, infra.  Even to the extent that patients will practice the claimed methods by following physician instructions, that merely suggests inducement by physicians—not by Norwich or its Label.  *See id.*  Fourth, there are several limitations of the Asserted HE and IBS-D Claims that Norwich's Label simply does not encourage, recommend, or promote.  *See* Parts IV and V, infra.  Lastly, the high prevalence of substantial non-infringing uses of Norwich's ANDA Product warrants a finding of no inducement.  *See* Sections IV.E and V, infra.

Salix's theory of nonobviousness based on objective indicia is flawed as well.  The evidence of supposed skepticism relates only to concerns about resistance to antibiotics as a class, not to rifaximin in particular, let alone to the particular methods of administering rifaximin recited in the Asserted HE and IBS-D Claims.  *See* Part VI, infra.  Physicians before the October 2008 priority date – including the experts who testified for both parties at trial – conducted risk-benefit analyses and determined that the benefit of prescribing rifaximin off-label to their HE and IBS-D patients outweighed any risk of resistance.  *See id.*  The record also shows that Salix's Xifaxan 550 mg product did not satisfy any long-felt, unmet need as of October 2008; the need was either already met by the off-label use of rifaximin, or still remains unmet today.

1

## II.     SALIX HAS NOT PROVEN DIRECT INFRINGEMENT OF ANY ASSERTED HE OR IBS-D CLAIM BY PHYSICIANS AND PATIENTS JOINTLY

Salix asserts that physicians will "require patients to take rifaximin as directed (and claimed)" to receive certain benefits, and that therefore the Asserted HE and IBS-D Claims will be infringed by physicians and patients jointly.  POBr. at 5.  The record, however, does not support that assertion.[1]  Because "there can be no inducement . . . absent an underlying direct infringement," *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004), Norwich cannot be held liable for inducement on that basis.

Salix proposes that the conditioned "benefit" that patients would receive by performing the claimed methods is "to get a rifaximin prescription and its benefits."  POBr. at 5.  The benefit is not actually conditional, however.  For HE treatment, it is not conditional because physicians will continue to provide the benefit (i.e., prescribe rifaximin) to their patients even if the patients do not take it as directed.[2]  NRFOF ¶¶ 3, 6-7.  For IBS-D treatment, it is not conditional because the Asserted IBS-D Claims, which are directed to 14 days of administration of rifaximin, cannot even be performed by patients until after they receive their 14-day prescription.  NRFOF ¶ 5. Thus, even if an IBS-D patient is ultimately noncompliant and fails to perform the claimed

---

[1] Salix asserts that Norwich's experts "instruct their patients to take rifaximin *as claimed*," (POBr. at 5 (emphasis added)), but the cited testimony describes only that patients take rifaximin according to the physician's instructions.  *See* Tr. 583:8-19, 120:25-121:2, 123:10-124:8.  And as discussed below, that is insufficient for joint infringement because physicians will not withhold rifaximin prescriptions from their patients even if those instructions are not followed.

[2] Indeed, despite confirming that he had no way of monitoring his patients every day to make sure they are taking rifaximin as directed, Dr. Brown testified that he typically prescribes a year's worth of rifaximin at a time, and would "probably give longer" if physicians were allowed to do so.  Tr. 72:6-14, 96:20-97:1.  While "double-checking another's performance" is not required if the physician's conduct goes "beyond merely 'guiding or instructing'"—for example, if the physician would indeed discontinue treatment if a patient does not comply with instructions—that is not the situation here.  *Pernix*, 323 F. Supp. 3d at 583-84 (quoting *Eli Lilly*, 845 F.3d at 1366) (finding that physicians would not "merely guide or instruct" because they would "establish strict conditions for initial prescriptions and continued opioid treatments" and following those conditions was "absolutely a requirement for the patient to receive treatment").

methods after receiving the prescription, there is no further "benefit" that the physician can withhold based on that noncompliance.

That distinguishes this case from *Eli Lilly*, where it was found that patients "must perform" a claimed method step ("administration . . . of folic acid prior to the first administration of pemetrexed disodium") or else they would not receive the benefit (pemetrexed treatment). *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1365-66 (Fed. Cir. 2017).

This case is also distinguishable from *Pernix*, where it was found that physicians conditioned prescription of the drug on patients taking it according to physician instructions, and patients signed physician-patient agreements that were specific to opioids and required patients to agree "to take this medication as prescribed, and not to change the amount or frequency" without discussing it with their doctor. *Pernix Ir. Pain DAC v. Alvogen Malta Operations Ltd.*, 323 F. Supp. 3d 566, 582-83 (D. Del. 2018), *aff'd sub nom. Persion Pharm. LLC v. Alvogen Malta Operations Ltd.*, 945 F.3d 1184 (Fed. Cir. 2019). Here, neither of those is present: both sides agree that doctors will not discontinue rifaximin for noncompliance, and there is no evidence of physician-patient agreements. NRFOF ¶¶ 6-8.

Simply put, patients do not need to perform any step of the Asserted HE or IBS-D Claims to continue to receive rifaximin prescriptions. That precludes a finding of joint infringement.

## III. SALIX HAS NOT PROVEN THAT NORWICH HAS SPECIFIC INTENT TO INDUCE INFRINGEMENT OF ANY ASSERTED HE OR IBS-D CLAIM

### A. Salix Has Not Proven Intent to Induce Infringement by Patients Alone.

Because patients will not take rifaximin correctly without physician instruction (Tr. 77:25-78:3), the Norwich Label does not induce patients[3] and cannot be the basis for finding

---

[3] The Norwich Label also cannot be inducing physicians, because physicians do not perform any step of the Asserted HE and IBS-D Claims. NRFOF ¶ 11.

specific intent.  As Salix itself notes, physicians, not patients, "are the principal intended audience of drug labels."  POBr. at 2; PFOF ¶ 45.  Nevertheless, Salix contends that Norwich's Label will induce patients to infringe because "patients will review the label (with or without the help of their physicians) and follow the claimed steps."  PFOF ¶ 51; *see also* POBr. at 4.

      Salix's theory is contradicted by the evidence, including its own experts' testimony.  Dr. Brown, for example, tells patients "how and when to take" rifaximin because "otherwise, they won't take it right."  Tr. 77:25-78:3; *see also* Tr. 119:16-18 (Mahl) ("no patients" review labels). That patients "won't take [rifaximin] right" without physician instruction shows that Norwich's Label will not induce patients to infringe (to the extent that patients read the Label at all).  That distinguishes this case from *Eli Lilly*, where physician input simply "g[a]ve patients even more specific guidance" beyond the inducing language of the label.  *Eli Lilly*, 845 F.3d at 1369.

      Salix's experts also agreed that patients will not read or understand all sections of Norwich's Label.  Tr. 88:5-15 (Brown) (portions of the Label "are really beyond the level of a patient"), 533:5-7 (Schoenfeld) ("Q. Besides physicians, does anyone else read the label?  A. Certainly, there's a section in the label that is for patients, instructing them about how to use the medication."), 550:8-22 (Schoenfeld) (patients would not understand design of trial described in the Label); *see also* Tr. 111:14-16 (Mahl) (patients lack "the skills to read and interpret [the clinical studies section] correctly.").  The record contains no evidence of how to determine whether a given section would be "beyond the level" of a patient; regardless, Salix's experts agree that even those patients who do read the Label will be unable to comprehend all of it.

      Salix's reliance on the "Patient Counseling Information" section of Norwich's Label (POBr. at 4), is misplaced for several reasons.  First, that section is directed to physicians, not patients.  NRFOF ¶ 14.  Second, that section only concerns the treatment of bacterial infections,

which, according to Salix, does not include HE or IBS-D.  NRFOF ¶ 15.  Third, that section's

citation to the "Warnings and Precautions (5.3)" portion of Norwich's Label shows that it is

directed only to the TD indication.  NRFOF ¶ 16.

Salix points to no other section of the Label that supposedly "provides instructions to the

patients" to perform the claimed methods.  *See* POBr. 2-4.  This case is therefore distinguishable

from *Pernix*, where the finding that the label induced patients to infringe was based on "a

Medication Guide, directed at patients," that instructed patients to "take the product 'exactly as

prescribed by your healthcare provider.'"  *Pernix*, 323 F. Supp. 3d at 586.  No such Medication

Guide, or any other information from Norwich and addressed to patients, is at issue here.

Accordingly, because (1) Salix's sole basis for inducing infringement by patients is that

patients will follow the Norwich Label, (2) it is uncontested that patients will not understand the

entirety of the Label, and (3) the "Patient Counseling Information" section Salix relies on is not

directed to patients and does not concern HE or IBS-D treatment, it follows that Salix has failed

to prove that Norwich's Label will induce patients to directly infringe.

### B.     Salix's Multi-Level Inducement Theory is Flawed.

Salix contends that inducement can be found when "physicians communicate to patients

the information from the label (e.g., by reading it to patients)."  POBr. at 4.  That cannot be

correct; to the extent that any physicians will even read the Label, they will not do so with (or to)

their patients.  Indeed, patients will not receive Norwich's Label until they have picked up their

prescription from the pharmacy (i.e., after they have already left the physician's office), and

physicians will never see the Label at all, let alone review it with patients.  NRFOF ¶ 18.  And

even if any patients practice the Asserted HE and IBS-D Claims as a result of following

physician instructions, it is the physician—not the Label—that will have induced such practice.

*See Eli Lilly*, 845 F.3d at 1368 ("[T]he intent for inducement must be with respect to the actions

5

of the underlying direct infringer . . . .").

The text of Section 271 as a whole indicates that there is no liability under Section 271(b) for inducing one (e.g., a physician) to induce infringement by another (e.g., a patient). While Section 271(a) recites that a direct infringer "*infringes* the patent" and Section 271(e)(2)(A) makes it an "*act* of infringement" to submit an ANDA, Section 271(b) recites that inducing another to infringe only makes one "*liable as* an infringer." In other words, an inducer does not "infringe[] the patent" and the act of inducement is not itself "an act of infringement." *See Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co.*, 424 F. Supp. 2d 388, 393 (D. Conn. 2006), *adhered to on reconsideration*, 2006 WL 2474306 (D. Conn. Aug. 24, 2006) (dismissing Section 271(b) inducement claim because patentee alleged only inducement of another's contributory infringement, rather than of another's direct infringement; "Danaher can be liable for active inducement only if it induced direct infringement."). Therefore, reading Section 271(b) in context, one who induces another to induce infringement by a third party cannot be liable under Section 271(b). *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 922-23 (2014) ("[W]hen Congress wishes to impose liability for inducing activity that does not itself constitute direct infringement, it knows precisely how to do so. The courts should not create liability for inducement of non-infringing conduct where Congress has elected not to extend that concept."); *see also Applera Corp. v. MJ Rsch., Inc.*, 297 F. Supp. 2d 459, 462 (D. Conn. 2004) (corporate officer can be liable for corporation's inducement of end-user direct infringement only if corporation's inducing acts are done at the direction or control of the officer). Notably, Salix does not point to a single case supporting infringement liability for inducing one actor to induce another actor to directly infringe.

Salix's proposed chain of events leading to infringement is therefore too attenuated to

prove specific intent.  Information that physicians convey to their patients will naturally include information beyond the Label, such as their professional opinion and their interpretation of the Label.  NRFOF ¶ 19.  At most, as Dr. Schoenfeld put it, "[t]he patient is infringing and the physician is encouraged to infringe."  Tr. 547:9-14.  That is insufficient to prove inducement at least because physicians and patients are not joint infringers (for the reasons discussed above) and because intent to induce must be specifically directed to the direct infringer (which cannot be the physician, because the physician will not perform any step of the claimed methods).  *See Eli Lilly*, 845 F.3d at 1368.

## IV.   SALIX HAS NOT PROVEN THAT NORWICH'S LABEL WOULD INDUCE INFRINGEMENT OF ANY ASSERTED HE CLAIM

### A.   "12 months or longer" (all Asserted HE Claims)

Norwich's Label will not encourage, recommend, or promote administering Norwich's ANDA Product for "12 months or longer" as required by each Asserted HE Claim.  In fact, the Label is entirely silent on duration of administration for HE.  NRFOF ¶ 24.

Salix offers no reason why a label's silence could be sufficient to show inducement. Despite Salix's assertion that this Court's decision in *Sanofi v. Glenmark* had "similar facts" to the present case (POBr. at 6), the Court in *Sanofi* found and relied on various "additional clues" in the defendants' labels to find inducement.  *Sanofi v. Glenmark Pharm. Inc., USA*, 204 F. Supp. 3d 665, 683-84 (D. Del. 2016), *aff'd sub nom. Sanofi v. Watson Labs. Inc.*, 875 F.3d 636 (Fed. Cir. 2017).  Such "clues" included the safety and monitoring information in the label, which "suggest[ed] that patients undergo cardiac rhythm assessment every three months and be checked for adverse effects during the first six months, which suggest that the drug is intended for long-term use."  *Id.* at 683-84.  Here, Norwich's Label contains no such information that would encourage administration for 12 months or longer.

7

This case is instead factually closer to *Genentech*, where this Court found no inducement because the allegedly inducing statements in the label did not actually "direct anyone to do anything." *Genentech, Inc. v. Sandoz, Inc.*, No. 19-0078-RGA, 2022 WL 842957, at *8, *10 (D. Del. Mar. 22, 2022). Norwich's Label's silence about duration of administration cannot reasonably be understood to "direct anyone to do anything." Rather, silence is more akin to indifference, which is indicative of permission—which is insufficient for inducement—rather than promotion. *See Shire LLC v. Amneal Pharm., LLC*, No. 11-3781, 2014 WL 2861430, at *5 (D.N.J. June 23, 2014), *aff'd in part, rev'd on other grounds*, 802 F.3d 1301 (Fed. Cir. 2015).

Norwich's Label's disclosures about clinical studies also do not induce administration for 12 months or longer.[4] While Section 6.1 of the Label discloses "a 6-month placebo-controlled clinical trial" and "a long-term follow up study" to evaluate rifaximin's safety, only results from the 6-month study are described in the Label. NRFOF ¶ 26. The study described in Section 14.2 was also only 6 months long. NRFOF ¶ 27. Even if these clinical studies could be the basis for inducing patient behavior – which they cannot (NRFOF ¶ 28) – they certainly do not encourage, recommend, or promote administration of Norwich's ANDA Product for any longer than 6 months (if that). The mere mention of a longer-term study does not show inducement. *See Pernix*, 323 F. Supp. 3d at 587 ("[V]ague instructions that require one to look outside the label" do not, "without more, induce infringement." (internal quotations and citation omitted)); *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (describing an infringing mode is not the same as recommending, encouraging, or promoting an infringing use).

---

[4] As a threshold matter, the "Indications and Usage" section of the Label relating to HE does not even mention or reference the Clinical Studies section. *See* JTX73-2. This further distinguishes this case from *Sanofi*, where inducement was found in part because the "Indications and Usage" section of the defendants' labels directed readers to "look[] at the clinical studies section," which in turn provided the requisite encouraging language. *Sanofi*, 204 F. Supp. 3d at 678-80.

Salix's other arguments on this point are inapt because they are unrelated to the Label. For example, that "HE is chronic, and patients must remain on rifaximin until they have a liver transplant or die," (POBr. at 7; *see also* Tr. 73:21-74:2), simply describes the nature of the disease and typical medical practice; it has nothing to do with the Label or what it encourages, recommends, or promotes. *Takeda*, 785 F.3d at 634 (rejecting patentee's attempt to "look outside the label to understand the alleged implicit encouragement in the label"); *see also AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1060 (Fed. Cir. 2010) ("The pertinent question is whether the proposed label instructs the users to perform the patented method."). Thus, even if physicians or patients were to read Norwich's Label at all, it would not encourage, recommend, or promote the administration of Norwich's ANDA Product for 12 months or longer.

## B.    "maintain remission" ('573 patent, claim 8)

Norwich's Label will contain an indication for "[r]eduction of risk of overt hepatic encephalopathy (HE) recurrence in adults" (JTX73-1), which is not the same as maintaining remission.  NRFOF ¶ 32.  One could still have a breakthrough HE episode—and therefore fail to maintain remission—despite having reduced the risk of that episode occurring.[5]  NRFOF ¶ 33. In fact, the FDA committee that discussed approving Xifaxan for HE proposed changing the indication from Salix's proposed "maintenance of remission" to "decreasing the risk for episodes of overt HE," further illustrating that the two are not the same.  NRFOF ¶ 34.  Salix and Dr. Brown agree that "[w]hen a patient experiences overt HE recurrence, the patient is no longer in remission."  PFOF ¶ 71; NRFOF ¶ 35.

Norwich's Label therefore will not encourage, recommend, or promote the use of

---

[5] Salix mistakenly cites Dr. Berg to support its assertion that "reducing the risk of overt HE recurrence" is the same as "maintaining remission of HE."  (POBr. at 8.)  But in fact, Dr. Berg testified that "[r]educing the risk of recurrence means you may still have a recurrence and, therefore, not be in remission any longer."  Tr. 156:5-11.

Norwich's ANDA Product to "maintain remission." *Cf. Shire*, 2014 WL 2861430, at *5-*6 ("The labels do not say that the products are indicated for the treatment of amphetamine abuse. Because there is no evidence that the FDA has approved the use of lisdexamfetamine dimesylate as a treatment for amphetamine abuse, Defendants' product label cannot induce infringement of a method patent.").

      C.    **"Conn score of 0 or 1" ('397 patent, claims 11 and 12)**

Norwich's Label also will not encourage, recommend, or promote the administration of Norwich's ANDA Product to subjects "wherein the subject has a Conn score of 0 or 1." The "Indications and Usage" section of the Label, for example, contains no mention of a Conn score, let alone whether a patient must have a particular Conn score to take rifaximin. NRFOF ¶ 37. Indeed, in actual practice, clinicians do not even calculate their patients' Conn scores. NRFOF ¶ 38.

Salix plucks language from the Label that describes a clinical study involving subjects "who were defined as being in remission (Conn score of 0 or 1)." JTX73-13. That statement, however, is merely describing a parameter of the study, rather than actually encouraging, recommending, or promoting the administration of Norwich's ANDA Product to patients having a Conn score of 0 or 1. *See Takeda*, 785 F.3d at 631. And unlike *Sanofi*, there is nothing in the "Indications and Usage" section of Norwich's Label relating to HE that would direct a reader to look at the Clinical Studies section and read that parameter, let alone be encouraged by it. *Cf. Sanofi*, 204 F. Supp. 3d at 678-80.

      D.    **"lactulose" ('397 patent, claim 12)**

Norwich's Label will not encourage, recommend, or promote administering lactulose with Norwich's ANDA Product. Norwich's Label discloses that 91% of the patients in the rifaximin clinical trials for HE "were using lactulose concomitantly," and that "[d]ifferences in

the treatment effect of those patients not using lactulose concomitantly could not be assessed."

JTX73-2.  Dr. Brown agreed that this disclosure is "a statement to doctors that it [i.e., rifaximin]

could be used with or without [l]actulose."  Tr. 95:12-16.  He also noted that the fact that 9% of

patients did not take lactulose showed that "rifaximin can be used with or without [l]actulose."

Tr. 76:1-9.  *Cf. Shire*, 2014 WL 2861430, at *5 (label stating that drug could be taken "with or

without food" was "indifferent" as to which option was selected, and thus was not an instruction

to infringe; "At most, it may be understood to permit an infringing use, but permission is

different from encouragement.").  The Label's description of the clinical study, therefore,

"merely presents options" regarding co-administering lactulose with rifaximin.  *Genentech*, 2022

WL 842957, at *8.  That "is not the same as recommending, encouraging, or promoting an

infringing use" and is insufficient to find inducement.  *Takeda*, 785 F.3d at 631.

     The Label also lacks any particulars about how to co-administer lactulose with Norwich's

ANDA Product, such as a recommended dose of lactulose or how it is to be adjusted when

administering it alongside rifaximin.  NRFOF ¶ 44.  Without such details, the Label's disclosures

about the use of lactulose are at most "vague instructions that require one to look outside the

label to understand the alleged implicit encouragement," which is insufficient to induce

infringement.  *Pernix*, 323 F. Supp. 3d at 587.

     **E.**    **Substantial Non-Infringing Uses of Norwich's ANDA Product**
              **Preclude A Finding of Inducement of the Asserted HE Claims.**

     For the reasons discussed above, Norwich's Label does not "recommend[] infringing

acts."  *Genentech*, 2022 WL 842957, at *9 n.6.  That Norwich will not otherwise induce

infringement of the Asserted HE Claims is also shown by the existence of substantial non-

infringing uses.  *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-66 (Fed. Cir. 2003)

("Especially where a product has substantial noninfringing uses, intent to induce infringement

cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent.").

This Court recently reaffirmed that while "a high prevalence of non-infringing uses is not dispositive on the issue of inducement," it is nonetheless "relevant to the inquiry," "especially in an ANDA context." *Genentech*, 2022 WL 842957, at *9 n.6. Here, the record shows that there would be "a high prevalence of non-infringing uses" of Norwich's ANDA Product. The Asserted HE Claims, for example, each require administering rifaximin for "12 months or longer" to patients who have had at least one prior HE episode, but it is known that only 42% of HE patients are still alive one year after their first episode. NRFOF ¶ 46. It is also known that some patients who begin rifaximin treatment will receive a liver transplant within one year, and will not take rifaximin after the transplant. NRFOF ¶ 47. Patients who die or receive a liver transplant within a year of beginning rifaximin treatment will have necessarily not taken the drug for "12 months or longer," so any use of Norwich's ANDA Product by such patients will be non-infringing.

## V. SALIX HAS NOT PROVEN THAT NORWICH'S LABEL WOULD INDUCE INFRINGEMENT OF ANY ASSERTED IBS-D CLAIM

### A. "durability of response comprises about 12 weeks of adequate relief of symptoms" ('569 patent, claim 2)

Norwich's Label does not encourage, or establish Norwich's knowledge[6] of infringement of, the claimed "durability of response compris[ing] about 12 weeks of adequate relief of symptoms." NRFOF ¶¶ 78-79. *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30

---

[6] The Court should disregard Dr. Schoenfeld's testimony about Norwich's knowledge, intent, or state of mind because it is not the subject of proper expert opinion. *See Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019) ("Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the [factfinder] and would not be helpful to the [factfinder].")

F.4th 1109, 1117-18 (Fed. Cir. 2022) (rejecting a "knew or should have known" standard for specific intent).

Section 1.3 (Indications and Usage) of Norwich's Label states that rifaximin tablets are indicated for "the treatment of [IBS-D] in adults" and Section 2.3 (Dosage and Administration) states that "the recommended dose of rifaximin tablets is one 550 mg tablet taken orally three times a day for 14 days." NRFOF ¶¶ 53-54; JTX73-2. Section 1.3 does not describe or encourage a "durability of response" of any length or degree in any way. NRFOF ¶¶ 55-57.

Trial 3 of Section 14.3 (Clinical Studies) of Norwich's Label does not cure the void. Salix's expert, Dr. Schoenfeld, testified that patients will not review or understand Trial 3. NRFOF ¶ 64. Even assuming that, contrary to the evidence, a physician would deeply analyze Section 14.3 and then report the same to a patient, Trial 3 does not encourage the claimed "durability of response." NRFOF ¶¶ 55, 59, 76-77. IBS-D is a syndrome comprising numerous symptoms, including bloating, urgency, frequency, abdominal pain, and diarrhea. *E.g.*, NFOF ¶ 72; Tr. 618:23-620:2. As reported in Norwich's Label, Trial 3 evaluated two symptoms – abdominal pain and stool consistency. NRFOF ¶ 67; JTX73-18-19. Neither endpoint establishes "adequate relief of [IBS-D] symptoms" for "about 12 weeks." NRFOF ¶ 68 Dr. Schoenfeld testified that a treatment effect could not be discerned from a placebo effect using the data from the open-label part of Trial 3 – the data now cited by Salix. NRFOF ¶ 70; POBr. at 15. He also admitted that "adequate relief of symptoms" is a wholly "subjective assessment," and that a 30% improvement from baseline in abdominal pain, as reported in Trial 3, may or may not show "adequate relief of symptoms." NFOF ¶¶ 186, 188; Tr. 551:3-12. Without knowledge extrinsic to Norwich's Label, Salix cannot show that Norwich's Label encourages infringement of the claimed "durability of response compris[ing] about 12 weeks of adequate relief of symptoms," or

that Norwich possesses knowledge of the same.  NRFOF ¶¶ 78-79.

Because the abdominal pain *or* watery stool endpoints in Trial 3 are not surrogates for "adequate relief of [IBS-D] symptoms," the reported "time to recurrence" is also not a proxy for the claimed "durability of response."  NRFOF ¶ 68.  Further, Dr. Schoenfeld admitted that, based on the design of Trial 3, a subject could have no "response" whatsoever to rifaximin after Week 9, yet be recorded as a "responder" at the end of Week 12.  NRFOF ¶¶ 71-72.  Thus, "time to recurrence," as reported in Trial 3, is not a reliable measure of "about 12 weeks of adequate relief of symptoms," as required by claim 2 of the '569 patent.

Salix's reliance on the reported "median time to recurrence" in Trial 3 also fails to establish specific intent.  By definition, half of the subjects had lost the study-defined "response" after only 8 post-treatment weeks.  NRFOF ¶ 76.  Even drawing all inferences about the data in Salix's favor, Trial 3 would still describe infringing and noninfringing modes of treatment, yet would recommend neither.  "Merely describing an infringing mode is not the same as recommending [] an infringing use, or suggesting that an infringing use 'should' be performed." *Takeda*, 785 F.3d at 631 (cleaned up); *Genentech*, 2022 WL 842957, at *8.

Further, Salix asserts only that "some" subjects in Trial 3 did not have a "recurrence" of abdominal pain or watery stool.  POBr. 15.  That "some" subjects may have practiced the claim is not an affirmative instruction to infringe.[7]  "Intent to induce may not be inferred from the failure to avoid infringing results." *Takeda Pharm., U.S.A., Inc. v. West-Ward Pharm. Corp.*,

---

[7] Dr. Triadafilopoulos's clinical experience using rifaximin may be relevant to whether a direct infringement may occur, yet such extrinsic evidence is not relevant to Norwich's knowledge or whether Norwich's Label establishes specific intent to bring about such infringement by another. POBr. at 14.  Contrary to Salix's assertion, he did not testify that patients would have the "claimed durability of response," and Salix failed to both establish his subjective understanding of "adequate relief" or link his testimony to Norwich's Label. *Id.*

C.A. No. 14-1268-RGA-SRF, 2018 WL 6521922, at *5 (D. Del. Dec. 12, 2018).  Moreover,

neither Salix nor its expert can even quantify the number of subjects in Trial 3 that allegedly

practiced the claimed "durability of response."  NRFOF ¶ 75.  Dr. Schoenfeld agreed that the

382 subjects (a minority of 2,579 enrolled subjects) who did not experience a "recurrence" in the

open-label part of Trial 3 included those lost to follow-up, adverse events, and non-compliance,

or who had discontinued the study for other reasons.  NRFOF ¶¶ 66, 74.  Thus, Trial 3 also

shows substantial non-infringing uses that cut against a finding of specific intent to infringe

claim 2.  *Warner-Lambert,* 316 F.3d at 1363-66; *Genentech*, 2022 WL 842957, at *9 n.6.

*Eli Lilly*, *Sanofi*, and *Orexigen* do not apply to the facts of this case.  POBr. at 14-15.  In

*Eli Lilly*, the drug label expressly instructed administering folic acid – a critical step – before

starting the pemetrexed treatment.  845 F.3d at 1368.  In contrast, Norwich's Label does not

recommend or encourage the claimed "durability of response," and the "treatment of IBS-D" –

the labeled indication – does not require it.  NRFOF ¶¶ 55-57.  In *Sanofi*, the "indication" cross-

referenced the clinical study portion of the label, which expressly disclosed patients having the

claimed "risk factor."  *Sanofi v. Watson Labs. Inc*., 875 F.3d 636, 645 (Fed. Cir. 2017).  Section

1.3 of Norwich's Label does not cross-reference any clinical study.  NRFOF ¶ 58; JTX73-2.  Nor

is the claimed "durability of response" described in Trial 3.  NRFOF ¶¶ 76-77; JTX73-15-19.  In

*Orexigen*, a claimed method of treating obesity required administering a sustained-release

product having a dissolution profile determined by an *in vitro* test.  *Orexigen Therapeutics, Inc.

v. Actavis Labs. FL, Inc.*, 282 F. Supp. 3d 793, 813-816 (D. Del. 2017).  The accused ANDA

contained in vitro test data that established the infringer's knowledge of the claimed dissolution

profile (i.e., an attribute of its product).  *Id*.  Here, a "durability of response comprising about 12

weeks of adequate relief of symptoms" is a part of the claimed treatment determined by the

subjective assessment of the patient, and Norwich's Label does not evidence specific intent to encourage its performance.  Nor has Salix shown that Norwich has knowledge of infringement of this claim element.

### B.  "a subject 65 years of age or older" ('667 patent, claim 3)

Norwich's Label does not establish a specific intent to administer rifaximin tablets to persons "65 years of age of older" for "treating one or more symptoms" of IBS-D.  NRFOF ¶ 89.

Norwich's rifaximin tablets will be indicated for the "treatment of [IBS-D] in adults." NRFOF ¶ 53; JTX73-2 (§ 1.3).  Norwich's Label is permissive; it neither encourages or discourages the use of rifaximin tablets to treat "one or more symptoms" of IBS-D in any subset of adults, including patients older than 65 years.  NRFOF ¶ 89.  *Grunenthal GMBH v. Alkem Labs. Ltd.*, 919 F.3d 1333, 1339-40 (Fed. Cir. 2019) (affirming a finding of no induced infringement where the indicated use of a drug could cover three types of pain and the asserted claim was directed to one type of pain); *Shire*, 2014 WL 2861430, at *5-*6.  Norwich must have a specific intent to encourage an infringement, and not fail to prevent infringement.  *Takeda Pharms.,* 2018 WL 6521922, at *5 ("Inferring intent to induce from a failure to prevent infringing results does indeed 'turn[ ] the legal test on its head.'").

Contrary to Salix's assertion, Sections 8.5 (Geriatric Use) or 14.3 of Norwich's Label do not affirmatively encourage infringement.  NRFOF ¶ 87-88; JTX73-7, -15-19.  Section 8.5 states that "[i]n the clinical studies of IBS-D, 11% of patients were 65 and over . . ." and that "[n]o overall differences in safety or effectiveness were observed between these subjects and younger subjects for [the IBS-D] indication."  NRFOF ¶ 87; JTX73-7.  Neither statement is phrased as an affirmative instruction.  The first states an objective fact.  The second is phrased in the passive voice and simply states that "no differences . . . were observed."  It does not state that patients 65 and over had actually satisfied a study end point of any clinical study reported in Section 14.3, or

16

treated "one or more symptoms" of IBS-D as claim 3 requires.

In addition, the percentage of subjects (11%) aged 65 and over enrolled in the clinical studies reported in Section 14.3 undercuts a finding of specific intent.  NRFOF ¶¶ 81, 86.  It shows that at least 89% of subjects were under 65 and therefore did not infringe claim 3 of the '667 patent.  *Acorda Therapeutics Inc. v. Apotex Inc*., C.A. No. 07-4937, 2011 WL 4074116, at *19-*20 (D.N.J. Sept. 6, 2011), *aff'd*, 476 F. App'x 746 (Fed. Cir. 2012) (finding a lack of specific intent to induce infringement where at least 75% of a drug's uses were non-infringing).  Further, Norwich's Label does not state what portion of the 11% of subjects over 65 had received rifaximin or had treated "one or more symptoms" of IBS-D.  NRFOF ¶ 84.  In fact, it does not report any data point specific to the subpopulation of patients 65 and over regarding any symptom of IBS-D.  NRFOF ¶ 82.  Given the reported response rate of 40-50% for the overall population, less than the 11% of subjects 65 and over would have both received and responded to rifaximin, and thus noninfringing uses would have exceeded 89%.  NRFOF ¶ 83.  In fact, Enoch Bortey, a named inventor, testified that, as a matter of biostatistics, a treatment effect in subjects 65 and over could not be determined.  NRFOF ¶ 85.  Inferring specific intent to infringe based on this evidence, as Salix proposes, would allow mere knowledge of infringement to swallow the specific intent element.  Moreover, it would encourage obtaining an indication for a drug for a broad demographic based on an overall population and then claiming narrow patient subgroups (e.g., non-white males, 70 years of age, and blue eyes) falling within that demographic.

This case is distinguishable from *GSK*, *Vanda*, and *AstraZeneca*.  POBr. at 12-13.  In *GSK*, the issue was whether a "label's recitation of treating patients 'with or without symptomatic heart failure precludes inducement since this may encourage both infringing and noninfringing uses.'"  *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, 7 F.4th 1320, 1329 (Fed.

Cir. 2021).  Unlike here, the labeled indication cross-referenced a clinical study stating that 47% of subjects had "symptoms of heart failure."  Whether the "post-MI LVD indication falls within the definition of congestive heart failure" was a question of fact, and substantial evidence supported the jury's verdict.  *Id*. at 1328, 1330.  In *Vanda*, the drug label instructed administering a specific dose range to poor metabolizers, and the Federal Circuit merely held that the presence of non-infringing uses did not preclude a finding of inducement as a matter of law.  *Vanda Pharm. Inc. v. West-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1132-33 (Fed. Cir. 2018).  In *AstraZeneca*, the label also provided an express dosing instruction that would result in practicing the claimed once-a-day dosing.  633 F.3d at 1060.  Unlike here, the accused infringer had earlier tried and failed to carve from its label, which supported a finding of specific intent.  *Id*. at 1058-1059.  That a physician may disregard explicit dosing recommendations was insufficient to avoid a finding of specific intent to infringe in both *Vanda* and *AstraZeneca*.  Here, by contrast, the Label does not specifically instruct administer the drug to treat patients 65 and over, and the non-infringing uses flow from the indication and not merely ignoring a dosing recommendation.

## VI.   SALIX'S ALLEGED EVIDENCE OF SKEPTICISM DOES NOT DEFEAT THE PRIMA FACIE OBVIOUSNESS OF THE ASSERTED HE AND IBS-D CLAIMS

Salix's alleged evidence of skepticism fails for multiple reasons.  NRFOF ¶¶ 90-94. Contrary to Salix's assertion (POBr. 17-18), rifaximin, including Xifaxan 200 mg tablets, had already been used to "safely and effectively" treat HE and IBS-D before 2008.  *See* NOBr. at §§ II.B.1, III.B.1.  This real-world clinical evidence, standing alone, negates any alleged skepticism.

At bottom, the alleged skepticism is based on hypothetical concerns about bacterial resistance arising from either long-term or widespread use of an antibiotic.  POBr. at 17-18.  As of 2008, there was no evidence that the use of rifaximin resulted in clinically relevant bacterial resistance.  NOBr. at 4, 11-12, 25-26; NFOF § I.D.1.  Regardless, a lack of bacterial resistance is

not an element of the asserted HE and IBS-D claims.  Each claim recites the use of rifaximin to treat "a subject" (i.e., one or more).  *Baldwin Graphic Sys., Inc. v. Siebert, Inc*., 512 F.3d 1338, 1342–43 (Fed. Cir. 2008).  Yet, the alleged skepticism is based on epidemiological considerations and not the safety or effectiveness of treating one patient, and thus lacks a nexus to each patent claim.  *Novartis AG v. Torrent Pharm. Ltd.*, 853 F.3d 1316, 1330 (Fed. Cir. 2017) ("Where the offered secondary consideration actually results from something other than what is both claimed and *novel* in the claim, there is no nexus to the merits of the claimed invention.").  Indeed, Dr. Schoenfeld testified that he had no concerns about resistance when using rifaximin to treat IBS-D patients in 2007.  NFOF ¶ 93; Tr. 849:17-850:14 ("I was not concerned about spreading bacterial resistance by prescribing it to ten people per year.").  Nor may a nexus be presumed because, unlike the product claims in *Immunex*, the asserted claims here recite methods of treatment.  POBr. at 17-18 (citing *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1067 (Fed. Cir. 2021)).

Salix's cherry-picked and out-of-context statements from FDA advisory committee meetings in 2010 (HE) and 2011 (IBS-D) are insufficient to show skepticism.  POBr. at 17-18.  FDA approved rifaximin for the HE indication in March 2010 notwithstanding the statements of the February 2010 FDA advisory committee.  NRFOF ¶ 92.  The cited passages from the 2011 FDA advisory committee meeting regarding the IBS-D indication did not criticize the safety or effectiveness of rifaximin to treat IBS-D in at least some patients.  POBr. at 18.  The committee deliberated the need for and design of a clinical trial to verify the effectiveness of *re-retreatment* of IBS-D patients with rifaximin and the absence of bacterial resistance.  Such a request for data is insufficient to show skepticism.  *Bayer Healthcare Pharm., Inc. v. Watson Pharm., Inc*., 713 F.3d 1369, 1377 (Fed. Cir. 2013).  Moreover, re-treatment is not an element of the IBS-D claims.

Nor do the cited statements by the FDA advisory committees align with the facts in *Neptune*. POBr. at 17-18 (citing *Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1378 (Fed. Cir. 2019)).  In *Neptune*, the drug had not been approved and a toxicity issue resulted in the death of 7% of clinical trial subjects.  *Neptune Generics, LLC v. Eli Lilly & Co.*, IPR2016-00240, 2017 WL 4466557, at *28-*29 (P.T.A.B. Oct. 5, 2017).  FDA expressed skepticism that pre-treatment with vitamin B12 would be needed or ameliorate toxicity.  *Id.*  Here, by contrast, rifaximin had been safely used with no reported toxicity issues.  NFOF ¶¶ 5-20, 90-92, 99, 105.

The Quigley, Vanner, and Drossman articles do not establish skepticism concerning the claimed IBS-D methods.  POBr. at 17.  Drossman was published before Yang and the RFIB 2001 Press Release, and neither Quigley nor Vanner cited those references.  NOBr. at 25. *Amarin Pharma, Inc. v. Hikma Pharm. USA Inc.*, 449 F. Supp. 3d 967, 1014 (D. Nev. 2020) ("[T]he person who made the statement was unaware of relevant prior art that would likely have made them less skeptical.") (citing *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1365 (Fed. Cir. 2007)).  Further, Vanner states that antibiotics reduce bloating in IBS patients, and Drossman recommends antibiotic treatment for some IBS patients.  NOBr. at 25-26. Thus, the facts here are incongruent with the "disbelief" of both parties' experts in *Envtl. Designs, Ltd. v. Union Oil Co. of Cal.*, 713 F.2d 693, 697-98 (Fed. Cir. 1983).  POBr. at 17.

## VII.  SALIX'S ALLEGED EVIDENCE OF LONG-FELT NEED DOES NOT DEFEAT THE PRIMA FACIE OBVIOUSNESS OF THE ASSERTED HE CLAIMS

### A.  Xifaxan 550 mg Rifaximin Tablets Did Not Satisfy Any Long-Felt Need for A Treatment to Prevent HE Recurrence and Maintain Remission.

Salix's contention that its Xifaxan 550 mg tablets (when taken according to the methods of the Asserted HE Claims) satisfied a long-felt, unmet need (POBr. at 16) is contradicted by testimony from both sides.  Norwich's expert, Dr. Berg, explained that no such need existed by October 2008 because physicians "were already utilizing . . . the combination of rifaximin with

20

[l]actulose or rifaximin alone for the treatment of hepatic encephalopathy.  NRFOF ¶ 97.  The

need was no longer unmet."  Tr. 222:7-20.  *Cf. BTG Int'l Ltd. v. Amneal Pharm. LLC*, 923 F.3d

1063, 1076 (Fed. Cir. 2019) (finding no long-felt need where the use of the claimed active agents

to treat the claimed condition "was well-known," and further because other treatments for the

condition were available).  The ample evidence of safe and effective use of rifaximin to treat HE

before October 2008 further shows that the need had already been met.  *See* NFOF ¶¶ 2, 5-8.

On the other hand, Salix's expert, Dr. Brown, testified that "we still have an unmet

medical need."  NRFOF ¶ 97; Tr. 400:14-16; *see also* Tr. 400:16-17 ("From the data, 20 percent

failed [l]actulose plus rifaximin.  What do we have for them?  Nothing.").  *See In re Cavanagh*,

436 F.2d 491, 496 (C.C.P.A. 1971) (existence of a long-felt need does not demonstrate

nonobviousness without proof that the claimed invention satisfied that need).

Thus, either the need no longer existed by October 2008 or Xifaxan 550 mg did not

satisfy it.  NRFOF ¶ 99.  In either case, Salix has failed to demonstrate satisfaction of a long-felt,

unmet need.  *See Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1304-05

(Fed. Cir. 2010) ("Where the differences between the prior art and the claimed invention are as

minimal as they are here, however, it cannot be said that any long-felt need was unsolved.").

### B.     Publications Relied on by Salix Do Not Show Existence of a Long-Felt Need.

Neither of Salix's two cited publications demonstrates existence of a long-felt need as of

October 2008.  *See* POBr. at 16-17.  For example, Salix contends that Bass 2004 proved

"rifaximin was no better than placebo" (POBr. at 16), but Bass 2004 in fact found that "rifaximin

was significantly more effective than placebo at improving asterixis in both the intend to treat

population and the subgroup of patients with asterixis at baseline."  NRFOF ¶¶ 100-101; Tr.

226:11-17.  Even the title of Bass 2004—"Rifaximin Treatment is Beneficial for Mild Hepatic

Encephalopathy"—contradicts Salix's argument.  NRFOF ¶ 102; PTX588; Tr. 226:18-23.

Salix also relies on a single statement from a World Congresses of Gastroenterology article for the idea that "'[t]he current decade has not witnessed major therapeutic breakthroughs in' managing HE." POBr. at 16 (quoting PTX465-1). That article, however, was published in 1998, so the "current decade" being referred to was six years before rifaximin first became available in the U.S. and a decade before the priority date of the Asserted HE Claims. NRFOF ¶¶ 103-105; PTX465-1; Tr. 168:24-169:11, 409:13-14. The article is therefore unenlightening about the existence of a need as of October 2008.[8] *See Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 998 (Fed. Cir. 2009) ("[W]e look to the filing date of the challenged invention to assess the presence of a long-felt and unmet need.").

### C. FDA Approval Does Not Demonstrate Satisfaction of a Long-Felt Need.

Salix points to Xifaxan being the first drug "approved to prevent HE recurrence" as demonstrative of the existence and satisfaction of a long-felt, unmet need. POBr. at 17. That approval, however, neither demonstrates the existence of a long-felt need nor the satisfaction of such a need, especially in light of the well-established, widespread, off-label use of rifaximin to treat HE in the U.S. prior to October 2008. NRFOF ¶¶ 108-109; *see also* NOBr. at 3-5; NFOF ¶¶ 2, 5-8, 11; *Novartis AG*, 853 F.3d at 1331.

## VIII.   CONCLUSION

Based on the foregoing, Norwich respectfully requests that this Court find that Norwich will not induce infringement of the Asserted HE and IBS-D Claims, and that Salix's evidence of purported secondary considerations is insufficient to overcome the obviousness of those claims.

---

[8] The article also sheds no light on whether the first use of rifaximin to treat HE outside of the U.S. was a "major therapeutic breakthrough[]." NRFOF ¶ 107. Rifaximin was introduced in Italy in 1985, before the "current decade" referred to in the article. NRFOF ¶ 106.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Matthew J. Becker
Stacie L. Ropka
Matthew S. Murphy
Chad A. Landmon
Rebecca L. Clegg
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT  06103
(860) 275-8100

Aziz Burgy
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC  20036
(202) 721-5417

Richardo S. Camposanto
AXINN, VELTROP & HARKRIDER LLP
560 Mission Street
San Francisco, CA 94105
(415) 490-2000

Dated:  June 2, 2022