IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., BAUSCH HEALTH IRELAND LTD., and ALFASIGMA S.P.A., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 20-430-RGA |
| NORWICH PHARMACEUTICALS, INC., | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT NORWICH PHARMACEUTICALS, INC.'S**
<u>**REPLY POST-TRIAL BRIEF**</u>

OF COUNSEL:
Matthew J. Becker
Stacie L. Ropka
Matthew S. Murphy
Chad A. Landmon
Rebecca L. Clegg
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT  06103
(860) 275-8100

Aziz Burgy
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC  20036
(202) 721-5417

Richard S. Camposanto
AXINN, VELTROP & HARKRIDER LLP
560 Mission Street
San Francisco, CA 94105
(415) 490-2000

Dated:  June 9, 2022

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

## **TABLE OF CONTENTS**

I.    SALIX FAILED TO REBUT THAT THE METHOD CLAIMS ARE OBVIOUS........... 1

    A.    The Asserted HE Claims Are Obvious. .................................................................. 3

    B.    The Asserted IBS-D Claims Are Obvious. ............................................................. 6

II.   CLAIM 2 OF THE '569 PATENT IS INDEFINITE. ........................................................ 8

III.  THE ASSERTED POLYMORPH CLAIMS ARE INVALID. ......................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajinomoto Co. v. Int'l Trade Comm'n,*
  932 F.3d 1342 (Fed. Cir. 2019)........................................................10

*Allergan, Inc. v. Apotex, Inc.,*
  754 F.3d 952 (Fed. Cir. 2014)...........................................................8

*Allergan, Inc. v. Sandoz Inc.,*
  726 F.3d 1286 (Fed. Cir. 2013)........................................................2, 6

*Allergan, Inc. v. Sandoz Inc.,*
  796 F.3d 1293 (Fed. Cir. 2015)........................................................6

*Amgen Inc. v. Sanofi,*
  872 F.3d 1367 (Fed. Cir. 2017).......................................................10

*Amgen Inc. v. Sanofi,*
  C.A. No. 14-1317, 2019 WL 4058927 (D. Del. Aug. 28, 2019) .............................10

*Bayer Pharma AG v. Watson Lab'ys, Inc.,*
  874 F.3d 1316 (Fed. Cir. 2017).......................................................7

*In re Copaxone Consol. Cases,*
  906 F.3d 1013 (Fed. Cir. 2018).......................................................4

*Eli Lilly & Co. v. Teva Pharm. Int'l GmbH,*
  8 F.4th 1331 (Fed. Cir. 2021) .......................................................2, 9

*In re Gurley,*
  27 F.3d 551 (Fed. Cir. 1994).........................................................4

*H. Lundbeck A/S v. Apotex Inc.,*
  No. CV 18-88-LPS, 2020 WL 777210 (D. Del. Feb. 18, 2020) ...........................8

*Hoffmann-La Roche Inc. v. Apotex Inc.,*
  748 F.3d 1326 (Fed. Cir. 2014).......................................................2

*Interval Licensing LLC v. AOL, Inc.,*
  766 F.3d 1364 (Fed. Cir. 2014).......................................................8

*Medtronic, Inc. v. Daig Corp.,*
  789 F.2d 903 (Fed. Cir. 1986)........................................................4

*In re Merck & Co., Inc.*,
    800 F.2d 1091 (Fed. Cir. 1986)..................................................................................................3

*Nalpropion Pharm., Inc. v. Actavis Lab'ys FL, Inc.*,
    934 F.3d 1344 (Fed. Cir. 2019)................................................................................................1

*Novartis AG v. Torrent Pharm. Ltd.*,
    853 F.3d 1316 (Fed. Cir. 2017)................................................................................................4

*OSI Pharm., LLC v. Apotex Inc.*,
    939 F.3d 1375 (Fed. Cir. 2019)................................................................................................2

*Pfizer Inc. v. Apotex, Inc.*,
    480 F.3d 1348 (Fed. Cir. 2007)................................................................................................3

*Sanofi v. Glenmark Pharmaceuticals Inc., USA*,
    204 F. Supp. 3d 665 (D. Del. 2016)........................................................................................5

*Sonix Tech. Co. v. Publications Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017)................................................................................................8

*W.L. Gore & Assoc., Inc. v. Garlock, Inc.*,
    721 F.2d 1540 (Fed.Cir. 1983)................................................................................................4

*In re Woodruff*,
    919 F.2d 1575 (Fed. Cir. 1990)...........................................................................................3, 7

**Other Authorities**

MPEP § 2107.03 ..........................................................................................................................2

## TABLE OF ABBREVIATIONS

| Abbreviation | Exhibit No. | Description |
|---|---|---|
| Norwich | | Norwich Pharmaceuticals, Inc. |
| Salix | | Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc., Bausch Health Ireland Ltd., Alfasigma S.p.A. |
| FDA | | U.S. Food and Drug Administration |
| SEC | | U.S. Securities and Exchange Commission |
| HE | | Hepatic encephalopathy |
| IBS | | Irritable bowel syndrome |
| IBS-D | | Irritable bowel syndrome with diarrhea |
| '199 patent | JTX2 | United States Patent No. 7,612,199 |
| '206 patent | JTX3 | United States Patent No. 7,902,206 |
| Polymorph Patents | | The '199 patent and '206 patent |
| Asserted Polymorph Claims | | Claim 4 of the '199 patent and claim 36 of the '206 patent |
| β | | Beta |
| α | | Alpha |
| γ | | Gamma |
| δ | | Delta |
| ε | | Epsilon |
| '573 patent | JTX11 | United States Patent No. 8,642,573 |
| '195 patent | JTX19 | United States Patent No. 9,421,195 |
| '397 patent | JTX22 | United States Patent No. 10,335,397 |
| HE Patents | | The '573 patent, '195 patent, and '397 patent |
| Asserted HE Claims | | Claim 8 of the '573 patent, claim 6 of the '195 patent, and claims 11 and 12 of the '397 patent |
| '569 patent | JTX9 | United States Patent No. 8,309,569 |
| '667 patent | JTX26 | United States Patent No. 10,765,667 |
| IBS-D Patents | | The '569 patent and '667 patent |
| Asserted IBS-D Claims | | Claim 2 of the '569 patent and claim 3 of the '667 patent |
| Patents-in-Suit | | The '199 patent, '206 patent, '573 patent, '195 patent, '397 patent, '569 patent and '667 patent |
| POSA | | Person of ordinary skill in the art |
| UF | | Uncontested Facts, Joint Pretrial Order, Ex. 1 (D.I. 149) |
| NOBr. | | Defendant Norwich Pharmaceuticals, Inc.'s Opening Post-Trial Brief (D.I. 176) |
| NFOF | | Defendant Norwich Pharmaceuticals, Inc.'s Findings of Fact (D.I. 177) |
| POBr. | | Plaintiffs' Opening Post-Trial Brief (D.I. 174) |
| PFOF | | Plaintiffs' Opening Findings of Fact (D.I. 175) |
| PABr. | | Plaintiffs' Answering Post-Trial Brief (D.I. 181) |

| Abbreviation | Exhibit No. | Description |
|---|---|---|
| PAFOF | | Plaintiffs' Answering Post-Trial Findings of Fact (D.I. 182) |
| XRPD | | X-ray powder diffraction |
| Leevy 2007 | DTX390 | Leevy, Carroll B. & Phillips, James A., *Hospitalizations During the Use of Rifaximin Versus Lactulose for the Treatment of Hepatic Encephalopathy*, Dig. Dis. Sci., vol. 52, 737-41 (2007) |
| Williams 2000 | JTX66 | Williams, Roger et al., *Evaluation of the Efficacy and Safety of Rifaximin in the Treatment of Hepatic Encephalopathy: a Double-Blind, Randomized, Dose-Finding Multi-Centre Study*, Eur. J. Gastroenterology & Hepatology, vol. 12, num. 2, 203-08 (2000) |
| Mas | DTX425 | Mas, A. et al., *Comparison of rifaximin and lactitol in the treatment of acute hepatic encephalopathy: results of a randomized, double-blind, double-dummy, controlled clinical trial*, J. Hepatology, vol. 38, 51-58 (2003) |
| Pimentel 2006 | JTX53 | Pimentel, Mark et al., The Effect of a Nonabsorbed Oral Antibiotic (Rifaximin) on the Symptoms of the Irritable Bowel Syndrome, Annals Internal Med., vol. 145, num. 8, 557-63 (2006) |
| RFIB2001 Study Protocol | DTX340 | Study to Assess the Efficacy and Safety of Rifaximin Administered BID in the Treatment of Patients With Diarrhea-Associated Irritable Bowel Syndrome, NCT00269412 (Dec. 2005) |
| Yang | DTX892 | Yang, Janet, Rifaximin versus Other Antibiotics in the Primary Treatment and Retreatment of Bacterial Overgrowth in IBS, Dig. Dis. Sci. (2007) |
| Cannata | JTX37 | U.S. Patent No. 4,557,866 |
| Marchi | JTX48 | U.S. Patent No. 4,341,785 |
| Viscomi 2008 | JTX65 | G. S. Viscomi et al., *Crystal Forms of Rifaximin and Their Effect on Pharmaceutical Properties*, 10 CrystEngComm 1074 (2008). |
| Braga 2012 | JTX105 | Dario Braga et al., *The Structure-Property Relationship of Four Crystal Forms of Rifaximin*, 14 CrystEngComm 6404 (2012) |
| Bacchi 2008 | DTX43 | Alessia Bacchi et al., *Sampling Rifamycin Conformational Variety By Cruising Through Crystal Forms: Implications for Polymorph Screening and For Biological Models*, 32 New J. Chem. 1725 (2008). |
| Viscomi Declaration | JTX80 | Declaration of Giuseppe C. Viscomi under 37 C.F.R. § 1.132 |

## I.   SALIX FAILED TO REBUT THAT THE METHOD CLAIMS ARE OBVIOUS.

Unable to overcome the substance of Norwich's clear and convincing evidence of

invalidity, Salix continues to make flawed attacks on the weight and credibility of that evidence.

In addition to trying to cast doubt on the accessibility of the Salix Presentation (which Salix itself

submitted to the SEC as a public filing), Salix attempts to bury evidence of the widespread prior

use of rifaximin to treat HE and IBS-D, which Salix touted by inviting respected physicians to

speak at its conferences and acknowledged in its own market research data.  NFOF ¶¶ 5-8, 14,

17-21, 26-27, 66, 89-118, 126-29.  Salix's desperate attempts to undercut the evidence must be

rejected, and the Asserted Claims should be found invalid.

Widespread prior use provides motivation and a reasonable expectation of success.

There can be no better evidence of motivation and a reasonable expectation of success than the

widespread, off-label use of rifaximin before October 2008.  *See Nalpropion Pharm., Inc. v.

Actavis Lab'ys FL, Inc.*, 934 F.3d 1344, 1353-56 (Fed. Cir. 2019) (motivation to develop an

obesity treatment using known drugs based on "[t]he inescapable, real-world fact" that POSAs

had used them to reduce weight gain).  That Salix conducted surveys, published press releases,

and held conference calls about the safe and effective use of rifaximin to treat HE and IBS-D

shows that physicians were motivated to use, and were using, rifaximin because they had a

reasonable expectation that it would work.  DTX349-89, 130-31; DTX584-2-5; DTX660-9-11;

DTX582-4-8; DTX657-4; NFOF ¶¶ 6, 17-18, 21-23, 89-98.

Despite Salix's contrary arguments, Dr. Berg in fact "utilized chronic antibiotic

administration" in his HE patients, (Tr. 156:15-19), and he was not alone:  Dr. Leevy treated

hundreds of HE patients with rifaximin and had excellent results; Dr. Poordad viewed rifaximin

as his "drug of first choice" in his new HE patients; and Salix's surveys, even if not themselves

prior art, reflect that 79% of gastroenterologists had prescribed rifaximin to their HE patients by

January 2008.  DTX349-130, DTX584-2-4, DTX660-9-11.  Dr. Leevy even stated that he

expected rifaximin to become the "ideal" treatment in HE patients with a Conn score of 1 or

lower (which he also described as "mild" HE), and the "gold standard" for continuous HE

treatment.  DTX584-5; NFOF ¶ 23; Tr. 156:2-7, 347:2-19.

    For IBS-D, Salix goes so far as to reduce its own expert's prior use as an "experiment" or

"hope," but it cannot avoid that he had been motivated to use rifaximin to treat IBS-D.  PABr. at

18.  Other physicians had been too, as confirmed by prescription audit, Salix's survey data and

published literature.  NFOF ¶¶ 89-118, 136-137.  Such rampant and effective prior use cannot

credibly be characterized as being done "out of desperation."  *Contra* PABr. at 15, 18.

    Salix confusingly argues that while it does not "take a position on what *would* be required

for there to be a reasonable expectation of success," Norwich has nonetheless failed to meet that

requirement.  *See* PABr. at 12 n.3.  Salix's reluctance to take a position is not surprising, given

that it continues to improperly hold Norwich to a standard that exceeds what is required by case

law.  *Compare* PABr. at 3-4 ("[B]y October 2008, no study had established rifaximin's ability to

prevent HE episodes.") *with Eli Lilly & Co. v. Teva Pharm. Int'l GmbH*, 8 F.4th 1331, 1346

(Fed. Cir. 2021) ("need not rely on clinical data" nor "include a demonstration of certainty that

the treatment would be successful in every instance"); *OSI Pharm., LLC v. Apotex Inc.*, 939 F.3d

1375, 1385 (Fed. Cir. 2019); *Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1292 (Fed. Cir. 2013)

(motivation not limited to "reasons the FDA sees fit to consider in approving drug applications");

*Hoffmann-La Roche Inc. v. Apotex Inc.*, 748 F.3d 1326, 1331 (Fed. Cir. 2014) ("Conclusive

proof of efficacy is not necessary to show obviousness."); *see also* MPEP § 2107.03 (initiating

clinical trials creates presumption that "the subject matter of that trial is reasonably predictive of

having the asserted therapeutic utility").  Norwich has met its burden under the proper standard:

"a reasonable expectation that the beneficial result will be achieved." *In re Merck & Co., Inc.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986); NOBr. at 13-16.

    <u>The claimed dosing regimens are not inventive.</u>  Salix argues that there was no motivation for a POSA to use a 550 mg tablet two or three times daily, despite admitting that the prior art disclosed daily dose ranges encompassing the claimed amounts.  PABr. at 8, 22-24; Tr. 361:2-15; JTX66 at 203-04; NFOF ¶¶ 13, 141.  Optimizing a dose within a range disclosed by the prior art is not inventive, however, and Salix has not proven any criticality or unexpected results relating to an 1100 mg (for HE) or 1650 mg (for IBS-D) daily dosage.  *Pfizer Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1368-69 (Fed. Cir. 2007); *In re Woodruff*, 919 F.2d 1575, 1578 (Fed. Cir. 1990).  Moreover, the 550 mg dosage was disclosed in the Bausch HE Study for HE and in the RFIB 2001 Protocol for IBS-D.  NFOF ¶¶ 25, 122-23.  A POSA would have been motivated to use a larger dose to be taken fewer times per day to reduce pill burden and improve patient compliance.  NFOF ¶¶ 36, 161.  Salix's cases, *Forest Laboratories* and *Ortho-McNeil*, are distinguishable as directed to either compound claims or new routes of administration, rather than the mere optimization of a daily dose of a known drug as here.  PABr. at 9.

### A.  The Asserted HE Claims Are Obvious.

    <u>Mas and Bass 2004 support obviousness.</u>  Salix seeks to minimize the positive results of the Mas study (conducted by Salix and at the top of Salix's "hierarchy of evidence") by arguing that the efficacy of lactitol, the comparator drug in the study, had never been established.  PABr. at 3.  Lactitol, however, was in fact a "first-line therapy" at the time and known to be effective to treat HE; Mas itself described lactitol as the "treatment of choice in patients with HE."  *See* DTX425-2; Tr. 224:6-225:24.  Similarly, Salix ignores that Bass 2004 found rifaximin significantly more effective than placebo in improving asterixis.  PTX-588; Tr. 226:14-227:1.

    Salix is incorrect that Dr. Berg "failed to consider" the Bass 2004 reference.  *See* PABr.

3

at 2-3.  In fact, Dr. Berg testified about the reference in his direct examination[1] and explained

that it showed that the methods of the Asserted HE Claims would have been expected to work.

*See* Tr. 226:14-227:1.  Even the title of Bass 2004 – "Rifaximin Treatment is Beneficial for Mild

Hepatic Encephalopathy" – belies Salix's argument that Bass 2004 was "a failure" that "would

have curtailed a POSA's expectations."  PABr. at 2-3; PTX588.  Like the clinical studies in

*Copaxone*, even to the extent that Mas and Bass 2004 did not meet their respective stated goals,

they did not teach away from the use of rifaximin – as evidenced by Salix's decision to proceed

with the later Bausch HE Study to further analyze rifaximin's utility to treat HE.[2]  *See In re*

*Copaxone Consol. Cases*, 906 F.3d 1013, 1027 (Fed. Cir. 2018).  Thus, the two references that

Salix considers "the most reliable evidence" support a finding of obviousness.

  <u>The prior art as a whole supports obviousness.</u>  Unable to rebut that the prior art discloses

all elements of the Asserted HE Claims and provides both a motivation to combine and

reasonable expectation of success, Salix instead tries to frame certain references as "low[er] in

the hierarchy of evidence" than others.  PABr. at 3.  As both sides agree, however, POSAs would

use "all of the available information" and "take all the data into consideration" in making

treatment decisions.  Tr. 248:2-10, 341:4-10.  As discussed, even if POSAs "would have given

more weight to Bass [2004] and Mas," (PABr. at 3), those references still support obviousness.

---

[1] That Bass 2004 and Mas were not on one of Dr. Berg's demonstratives, (PABr. at 2), does not
make his analysis somehow incomplete.  *Novartis AG v. Torrent Pharm. Ltd.*, 853 F.3d 1316,
1328 (Fed. Cir. 2017); *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 905-06 (Fed. Cir. 1986).
[2] Despite calling Bass 2004 a "failure," Salix does not argue that it (or any other prior art)
actually teaches away.  Nor could it, given that Salix did not identify anything in Bass 2004 that
would suggest that the claimed methods would not "be productive of the result sought."  *Cf. In re*
*Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994).  On Salix's mental state endpoint, Bass 2004 found at
worst only that improvement was "numerically but not statistically significantly greater with
rifaximin."  PTX588.  That is insufficient to teach away, especially given Bass 2004's report of
significant improvement in asterixis with rifaximin.  *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*,
721 F.2d 1540, 1550–51 (Fed.Cir. 1983) (totality of a reference's teachings must be considered).

Salix relies heavily on *Sanofi v. Glenmark Pharmaceuticals Inc., USA* to argue a lack of both motivation and reasonable expectation of success, but that case is readily distinguishable for at least three reasons.  First, the prior art at issue in *Sanofi* concerned only clinical trials, while the record here includes ample evidence of widespread, safe, and effective prior use of rifaximin to treat HE by practitioners in the field.  *Compare* NFOF ¶¶ 23, 25, 26, 30-31, 61, 65 *with Sanofi*, 204 F. Supp. 3d 665, 686-87 (D. Del. 2016).  Second, the "post-hoc analysis" criticized in *Sanofi* was an analysis of clinical trial results, while the Leevy 2007 and Mantry references here were retrospective chart reviews – i.e., analyses of medical records of patients who were prescribed rifaximin by POSAs as part of their treatment regimen rather than as part of research efforts.  *See* NFOF ¶¶ 19, 26, 29; DTX390-1-2, JTX111 at 4543.  Third, the "history of inconsistent clinical trial results" in *Sanofi* included a lack of drug safety and effectiveness, while here even Bass 2004 and Mas (which Salix asserts would have "curtailed a POSA's expectations") found that rifaximin was at least as effective as comparator treatment and placebo, and did not pose a safety risk.  *See* Tr. 224:6-227:1; PTX588; DTX425-1, 7; NFOF ¶ 13.

<u>Rifaximin had been used to maintain remission and reduce risk of recurrence.</u>  Salix misstates the testimony of Norwich's experts in asserting that "[t]reating HE and preventing it" are somehow distinct goals.  PABr. at 0 (page "1" appears on second page).  For example, Dr. Berg explained that the goals of HE treatment are "to optimize the patient's health" by "maintaining remission of HE" and "reducing the risk that [a patient is] going to have an HE recurrence."  Tr. 156:2-7.  Dr. Schoolnik agreed that "it is one thing to use a drug to induce a remission," and "another thing to use a drug to prevent a relapse," but did not suggest that a drug could not serve both of those purposes.  *Compare* Tr. 328:21-24 *with* PABr. at 0.  Regardless, the record is replete with prior art disclosing the use of rifaximin in patients in remission from HE

(i.e., having a Conn score of 0 or 1). *See, e.g.*, NFOF ¶¶ 23, 25, 26, 30-31, 61, 65. The Salix

Presentation and Leevy 2007, for example, disclose 12.5 months of continuous rifaximin

therapy, and the fact that some patients took rifaximin for that duration necessarily means that

they were in remission during treatment. NFOF ¶ 26. Leevy 2007 also discloses that rifaximin

treatment caused a significant decrease in hospitalizations, further demonstrating that patients

were maintaining remission and had a reduced risk of recurrence. DTX390-4-5; Tr. 181:4-21.

### B. The Asserted IBS-D Claims Are Obvious.

Salix's reliance on bacterial resistance is flawed. PABr. at 17-18. Dr. DuPont agreed

that a short-term (i.e., 14 days) use of rifaximin did not raise resistance concerns. Tr. 493:15-

494:20. Dr. Schoenfeld admitted that using rifaximin to treat an IBS-D patient did not pose a

resistance concern. Tr. 849:17-850:14. Indeed, prior uses show that theoretical considerations

about resistance, or *C. difficile*, did not deter the clinical use of rifaximin to treat IBS-D. NFOF

¶¶ 89-118, 136. Dr. Harary testified that a POSA would have been motivated to use rifaximin to

treat IBS-D despite any resistance considerations. Tr. 625:18-2; 630:20-633:1.

The prior art the taught dose, frequency, and length of therapy to treat IBS-D. *Contra*

PABr. at 22-24. Norwich's prior art combinations show that, as of February 2008, 1200-2200

mg of rifaximin per day, taken 2-3 times per day, for 10-14 days could be used to treat IBS-D.

Tr. 662:5-15. Other prior art corroborates these ranges. NFOF ¶¶ 111-117, 144-149. Unlike

Salix's cited dicta in *Pharmacyclics v. Alvogen Pine Brook LLC*, Norwich's prior art

combinations specify IBS-D, a narrow dose, frequency, and length of administration. PABr. at

24. In *Allergan v. Sandoz*, the Federal Circuit did not reach whether the prior art ranges of two

different ingredients were too large to rebut a presumption of obviousness. 796 F.3d at 1305.

Here, the dose range is far narrower, and a POSA could optimize the dosing to get a desired

result. Tr. 668:9-25; 699:12-700:9; JTX9 at 11:25-28.

Nor does choosing 1650 mg for its Phase III trial make that amount "critical." PABr. at 25. *In re Woodruff*, 919 F.2d at 1578. Salix's focus on "abdominal pain and diarrhea" is at odds with the '569 patent. For example, the patent describes "adequate relief of symptoms," or bloating, but did not link "adequate relief" to abdominal pain or diarrhea. It reports data from the RFIB2001 Study, which found that rifaximin, administered 550 mg BID for 14 days, provided "adequate relief" of IBS-D symptoms. JTX9, Ex. 1. That different doses may have also been suitable to treat IBS-D is not relevant. *Bayer Pharma AG v. Watson Lab'ys, Inc.*, 874 F.3d 1316, 1328 (Fed. Cir. 2017). Pimentel 2006 reported relief of global symptoms and the symptom of bloating in IBS patients (which alone sufficient to render claim 3 of the '667 patent (i.e., "one or more symptoms") obvious.) Tr. 648:25-649:14. Coupled with its suggestion that the optimal dosing may be higher than 1200 mg per day, and the RFIB2001 Protocol, Pimentel 2006 provides a motivation to use a higher dose in the known range. Tr. 667:7-668:25.

Some IBS-D patients have SIBO. Tr. 618:23-620:2. Salix's cited references do not say otherwise. At best, they weigh the value of breath tests in identifying such patients, or comment that not all IBS patients have SIBO. Dr. Drossman[3] – dubbed a "leading expert" by Salix – stated that the "challenge is to identify the subset of patients with IBS who are most likely to have bacterial overgrowth," and suggested using an antibiotic after a positive breath test. PTX457-2. Further, Salix condemns the RFIB2001 Protocol and Yang for being "built on the hypothesis that SIBO contributed to IBS," but ignores that the '569 patent relies on each

---

[3] *Salix* introduced Drossman at trial, but failed to disclose its suggested use of antibiotics to treat IBS. PTX457-2. Exposing this failure is not attorney-argument. PABr. at 25. That the prior art, as a whole, must render a claim obvious, did not require Dr. Harary, despite considering them, to testify about each of Salix's references, especially where they either align with his opinion and fail to teach away from the use of rifaximin. *Supra* n.1. Salix is grasping at straws.

reference.  PABr. at 26;  JTX9, Ex. 1; NFOF ¶ 101.  And, the Xifaxan label cites patents tying

SIBO to IBS, and none of the reported IBS-D studies excluded SIBO patients.  NFOF ¶ 88.

Salix's RFIB2001 Press Release is prior art.  PABr. at 21.  It issued before the claimed

filing date.  NFOF ¶ 126.  Salix failed to offer evidence that it was published by an inventor or

comprises the inventor's own work.  *Allergan, Inc. v. Apotex, Inc.*, 754 F.3d 952, 968-69 (Fed.

Cir. 2014) (inventor failed to show that a reference was not prior art).  It waived this argument by

not raising it in the Pretrial Order.  Further, each IBS-D patent names a different inventor group,

which Salix did not address.  JTX9-1; JTX26-1.  *Invitrogen* does not hold that any publication

"derived" from the inventor's own work is not prior art.  PABr. at 21.  The RFIB2001 Protocol

disclosed administering rifaximin 550 mg BID for 14 days to treat IBS-D in 2005, and the

RFIB2001 Press Release reports what that method achieved.  NFOF ¶¶ 122-129.

## II.   CLAIM 2 OF THE '569 PATENT IS INDEFINITE.

None of Salix's cases hold that a term of degree, like "adequate relief," that is based on a

purely subjective assessment is definite.  NOBr. 28-29.  For example, "visually negligible" was a

term of degree, but was based on an objective baseline – the "normal human eye."  *Sonix Tech.*,

844 F.3d 1370, 1378.  In *Lundbeck A/S,* the district court construed the term "has to be ceased or

reduced due to sexually related adverse events," which is not a term of degree.  2020 WL

777210, at *3.  Further, the issue here is not, as Salix asserts, whether the claim is "patient-

dependent" (PABr. at 32), or requires a doctor's "patient-specific judgment," but that "adequate

relief" is wholly opinion-based.  PFOF ¶ 107; NFOF ¶ 186-187.

Salix did not ask for a construction of "adequate relief," and should be precluded from

doing so now by improperly narrowing claim 2 to an embodiment.  PABr. at 33.  *Interval*

*Licensing LLC v. AOL, Inc*., 766 F.3d 1364, 1373-74 (Fed. Cir. 2014).  The '569 patent discloses

different embodiments of "adequate relief."  Tr. 514:14-21; JTX9 at 2:33-34, 39-45.  Salix also

cannot qualify its expert's admission that a 30% reduction in abdominal pain from baseline may not reflect "adequate relief."  PABr. at 33; Tr. 551:3-12; *see also* Tr. 556:15-24 ("generally you're looking for about 50 percent or so improvement in [ ] severity of symptoms").  Nor may it credibly cite that endpoint to assert infringement (PBr. at 15), assert that it is a recognized scale (PAFOF ¶ 213), and yet argue that it is unrelated to the "indefiniteness issue" (PABr. at 33).

This case *is* like *Teva* and *Dow*, and the issue is not merely "patient-to-patient variation." PABr. at 33-34.  How the claimed "durability" is temporally measured across "about 12 weeks," for even one patient, will necessarily affect the result.  NOBr. at 29-30; NFOF ¶¶ 189-192.

## III.    THE ASSERTED POLYMORPH CLAIMS ARE INVALID.

<u>The prior art inherently yields rifaximin β.</u>  The asserted claims are product claims; new processes for making the claimed rifaximin β are not relevant.  *Contra* PABr. at 34.  Rifaximin β was necessarily obtained by prior art processes using ethanol and water.

Unlike in *Novopharm*, *Armodafinil*, and *Custopharm*, Cannata inherently produced rifaximin β every time, either directly *or as a necessary precursor* to the α, δ, and ε forms and mixtures disclosed in the Viscomi Declaration.  Tr. 921:24-922:6.  *Contra* PABr. at 35, 37.  Even if another form had been obtained via drying (after first forming β), it would revert to rifaximin β under ambient temperature and humidity.  NOBr. at 32-34; NFOF ¶¶ 210-15.  Salix does not – and cannot – dispute the natural relationship between rifaximin β and the α, δ, and ε forms. Moreover, Viscomi's own work conclusively demonstrates that "[r]ifaximin prepared according to [Cannata]" yielded rifaximin β, α, δ, or ε, and mixtures thereof.  NOBr. at 33; NFOF ¶¶ 213-14.  Thus, the *Eibel*, *Tilghman*, and *Pittsburgh Iron* cases are inapposite.  *Contra* PABr. at 37.

Contrary to Salix's post hoc argument, PABr. at 36, there is no record evidence that the cited processes of Cannata yields rifaximin γ.  The batches prepared according to Cannata and tested by Viscomi did not yield rifaximin γ.  *See* JTX80 at ¶¶ 7-8; Tr. 921:24-922:6.

The Asserted Polymorph Claims Lack Written Description.  Salix argues that the asserted claims do not recite a genus because they "are limited on their face to a *specific* polymorphic form: rifaximin β."  PABr. at 41.  This is antithetical to Dr. Myerson's testimony that the claimed "subsets of peaks [] allow you to identify one form [i.e., rifaximin β] versus another."  Tr. 963:2-10.  *See also id.* 964:20-21, 964:25-965:1.  It also renders the claimed three-peak subset superfluous because, as described in the patents, it is subsumed by the 12 XRPD peaks that "characterize[]" "rifaximin in polymorphic form β."  NFOF ¶ 248.

By claiming fewer peaks to "identify" rifaximin β than used to "characterize[]" it in the patents, Salix expanded its claims beyond the only disclosed embodiment.[4]  NOBr. at 37-38.  This is not merely theoretical.  Rifaximin is a channel hydrate whose crystal structure changes with gain or loss of water, which shifts its XRPD peaks.  Tr. 875:12-878:22, 896:25-898:3, 959:1-7.  The claims recite any "water content greater than 5%."  *E.g.*, JTX2 claim 4.  The inventors fail to show possession of all rifaximin having the recited water content and identified by only the three recited XRPD peaks.  *See* Tr. 909:25-910:6, 925:2-926:7; JTX65 at Table 1, 1074, 1076; NFOF ¶¶ 249-52; *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1374-75 (Fed. Cir. 2017) (post-priority-date evidence showed a lack of representative species).  *Contra* Tr. 963:11-965:1.

Salix's reliance on the structural features test to show possession of the claimed genus is also misplaced.  PABr. at 42.  That test applies to functional claim limitations – which the asserted XRPD limitations are not.  *Amgen Inc. v. Sanofi*, C.A. No. 14-1317, 2019 WL 4058927, at *3-*4 (D. Del. Aug. 28, 2019).  *See also Ajinomoto Co. v. Int'l Trade Comm'n*, 932 F.3d 1342, 1360 (Fed. Cir. 2019) (evaluating a "functionally defined genus").

---

[4] By analogy, an inventor possessing a pentagon, but claiming "a shape comprising three sides" would impermissibly encompass quadrilaterals, hexagons, etc. within the scope of the claim.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Matthew J. Becker
Stacie L. Ropka
Matthew S. Murphy
Chad A. Landmon
Rebecca L. Clegg
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT  06103
(860) 275-8100

Aziz Burgy
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC  20036
(202) 721-5417

Richardo S. Camposanto
AXINN, VELTROP & HARKRIDER LLP
560 Mission Street
San Francisco, CA 94105
(415) 490-2000

Dated:  June 9, 2022