IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SALIX PHARMACEUTICALS, LTD.; SALIX PHARMACEUTICALS, INC.; BAUSCH HEALTH IRELAND LTD.; ALFASIGMA S.P.A., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-430 (RGA) |
| | ) | |
| NORWICH PHARMACEUTICALS, INC., | ) | **REDACTED -** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION
TO MOTION TO MODIFY JUDGMENT PURSUANT TO RULE 60(B)**

OF COUNSEL:

VENABLE LLP
Scott K. Reed
Steven C. Kline
Shannon K. Clark
Daniel A. Apgar
Alexis M. McJoynt
Damien N. Dombrowsi
1290 Avenue of the Americas
New York, NY 10104
(212) 218-2100

Becky Steephenson
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
(212) 307-5598

MORGAN, LEWIS & BOCKIUS LLP
Michael J. Abernathy
Karon N. Fowler
Michael T. Sikora
110 N. Wacker, Suite 2800
Chicago, IL 60606-1511
(312) 324-1000

William R. Peterson
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5005
(713) 890-5188

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiffs*

**Original Filing Date: September 21, 2022**
**Redacted Filing Date: September 28, 2022**

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................... 1

NATURE AND STAGE OF PROCEEDINGS AND STATEMENT OF FACTS ...................... 2

ARGUMENT ...................................................................................... 5

I.    Norwich Is Not Entitled to the Extraordinary Remedy of Relief Under Rule 60(b). ........ 5

  A.    Norwich Cannot Rely on Its Own Acts as Changed Circumstances to Modify the Judgment. ....................................................... 6

    1.    Norwich's unilateral decision to modify its label was not an unforeseen circumstance. ............................................. 6

    2.    Circumstances have not changed. ................................... 7

    3.    This Court's judgment follows the statute and orders the effective date of "approval of the drug . . . involved in the infringement." ............. 8

  B.    Norwich Has Not "Satisfied" the Judgment. ..................................... 10

  C.    The Only Cases to Consider the Issues Have Refused Similar Relief. ............... 11

II.   The Court Should Deny Norwich's Request for Summary Adjudication of an Important and Difficult Question. ........................................ 13

CONCLUSION ..................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allergan Sales, LLC v. Sandoz, Inc.*,
   211 F. Supp. 3d 907 (E.D. Tex. 2016) ................................................................12, 13

*Allergan, Inc. v. Sandoz Inc.*,
   No. 2:09 CV-200, 2013 WL 6253669 (E.D. Tex. Dec. 3, 2013), *aff'd*, 587 F.
   App'x 657 (Fed. Cir. 2014) ...........................................................7, 11, 12, 13

*Anderson v. Yungkau*,
   329 U.S. 482 (1947) ...........................................................................................8

*Apotex, Inc. v. Daiichi Sankyo, Inc.*,
   781 F.3d 1356 (Fed. Cir. 2015) ........................................................................12

*AstraZeneca LP v. Apotex, Inc.*,
   633 F.3d 1042 (Fed. Cir. 2010) ...................................................................14, 15

*Bldg. & Constr. Trades Council of Phila. & Vicinity, AFL-CIO v. N.L.R.B.*,
   64 F.3d 880 (3d Cir. 1995) .................................................................................6

*Bohus v. Beloff*,
   950 F.2d 919 (3d Cir. 1991) ...............................................................................5

*Eli Lilly & Co. v. Medtronic, Inc.*,
   496 U.S. 661 (1990) .......................................................................................1, 9

*Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*,
   No. CV 14-1119-MSG, 2019 WL 3574249 (D. Del. Aug. 6, 2019) ...........12, 13, 15

*Frew v. Janek*,
   780 F.3d 320 (5th Cir. 2015) ............................................................................10

*Gibson v. J.P. Harris Assocs.*,
   637 F. App'x 58 (3d Cir. 2016) ...........................................................................5

*Glaxosmithkline LLC v. Teva Pharms. USA, Inc.*,
   7 F.4th 1320 (Fed. Cir. 2021) ...................................................................13, 14, 15

*Gochin v. Thomas Jefferson Univ.*,
   667 F. App'x 365 (3d Cir. 2016) .........................................................................5

*H. Lundbeck A/S v. Apotex Inc.*,
   No. CV 18-88-LPS, 2019 WL 6065466 (D. Del. Nov. 15, 2019) ........................13

# TABLE OF CONTENTS
(continued)

**Page**

*Horne v. Flores*,
 557 U.S. 433 (2009) ...................................................................................................10

*Lopez v. Davis*,
 531 U.S. 230 (2001) .....................................................................................................8

*Nat'l Elevator Indus. v. McLaughlin*,
 773 F. App'x 671 (3d Cir. 2019) ...............................................................................11

*Onyx Therapeutics, Inc. v. Cipla Ltd.*,
 C.A. 16-988 (LPS) (D. Del. May 13, 2020) .............................................................12

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
 803 F. Supp. 2d 464 (E.D. Va. 2011) ..........................................................................9

*Sunderland v. City of Philadelphia*,
 575 F.2d 1089 (3d Cir. 1978) .....................................................................................10

*Takeda Pharms., U.S.A., Inc. v. Par Pharms. Co.*,
 Nos. 13-1524-SLR, 13-1729-SLR (D. Del. Sept. 4, 2014) ..........................................9

*United Therapeutics Corp. v. Sandoz, Inc.*,
 No. 12-CV-01617, 2014 U.S. Dist. LEXIS 52353 (D.N.J. Apr. 16, 2014) ...........................13

**Statutes**

21 U.S.C. § 355 .................................................................................................................4

35 U.S.C. § 271 ...........................................................................................................1, 8, 9

**Other Authorities**

Fed. R. Civ. P. 56(d) .......................................................................................................14

Fed. R. Civ. P. 60 .....................................................................................................*passim*

## SUMMARY OF ARGUMENT

The purpose of the Hatch-Waxman Act is certainty.  It establishes a unique process to allow for the early adjudication of whether a generic drug infringes, without needing to wait for regulatory approval.  *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990).  Congress created "a highly artificial act of infringement that consists of submitting an ANDA or a paper NDA" with a paragraph IV certification and mandated "specified consequences" for that act of infringement.  *Id.*  As this Court already acknowledged, one consequence is that "the court shall order the effective date of any approval of the drug . . . involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed."  35 U.S.C. § 271(e)(4)(A); D.I. 192.

This litigation followed the process set forth by Congress.  After Norwich filed an ANDA with a paragraph IV certification, Salix filed suit.  For years, the parties litigated infringement—eventually proceeding through trial and judgment—based on the ANDA submitted by Norwich.  During this process, Norwich never suggested amending its label.  And after this Court found that Salix's HE patents were valid and infringed, the Court properly ordered that the effective date of any approval would be no earlier than the expiration of Salix's HE patents.

In supplemental post-trial briefing, Norwich asked this Court to enter a judgment limited to final approval by FDA of Norwich's ANDA with proposed labeling containing the HE indication.  D.I. 192.  This Court properly rejected that argument and entered the final judgment requested by Salix.  D.I. 192.

Norwich now repeats its request and asks this Court to rethink what it has already decided and to amend its final judgment under Rule 60(b) so that Norwich can belatedly amend its ANDA and "carve out" the patented method.  That request should be denied.  Norwich cites no decision from any court granting such relief, and we have located none.  To the contrary, every court to

1

consider the issue has concluded that Rule 60(b) is an extraordinary remedy that does not permit this type of relief. The judgment has not been "satisfied," and there are no unanticipated changed circumstances that would render it inequitable. Indeed, it is uncertain whether FDA would even approve the label submitted by Norwich.

Moreover, Norwich's motion relies on the assertion that its new label could not infringe Salix's patents. But this complex issue cannot be resolved by this Court in summary adjudication on the papers in post-judgment proceedings—it requires discovery, full briefing, and (ultimately) trial. Norwich's attempt to evade this process through amendment under Rule 60(b) should be denied.

### NATURE AND STAGE OF PROCEEDINGS AND STATEMENT OF FACTS

In March 2020, Salix filed this Hatch-Waxman case after receiving notice of Norwich's paragraph IV certifications submitted in ANDA No. 214369. Plaintiffs' First Amended Complaint (D.I. 59). Salix initially asserted that this ANDA infringed 26 patents (collectively, the "Asserted Patents").

Norwich's ANDA sought FDA approval to make a generic copy of Salix's Xifaxan® (rifaximin) 550 mg tablet. The parties have referred to this generic copy as the "ANDA Product." Norwich proposed a label stating that the ANDA Product should be used for (1) the treatment of irritable bowel syndrome with diarrhea (IBS-D) in adults and (2) the reduction in risk of overt hepatic encephalopathy (HE) recurrence in adults.

As this case proceeded over the next-two-and-a-half years, the parties (and this Court) relied on the label proposed by Norwich. Salix, for example, agreed to forego certain discovery that it did not need to establish infringement because of the label. *See* D.I. 117 at 2. Salix's 30(b)(6) notice contained topics including (i) actual, potential, or contemplated uses for which Norwich's ANDA Product would be prescribed, provided, administered, or substituted for

Xifaxan® tablets, and (ii) Norwich's knowledge, understanding, or beliefs relating to the safety and efficacy of rifaximin for the reduction in risk of overt HE recurrence in adults.  Norwich refused to provide a witness on these topics.  Based on Norwich's label and Norwich's agreement not to offer testimony at trial on this subject matter, Salix agreed not to move to compel testimony on the topics.  *Id*.

In compliance with this Court's scheduling order, Salix also limited the number of asserted claims, D.I. 23 ¶ 3(g)(iv), a decision based, in part, on the label proposed in Norwich's ANDA. And unsurprisingly, during trial, Salix presented evidence of infringement for only the claims it elected to assert.  The parties spent nearly half of the trial litigating infringement and validity of the HE patent claims, with five experts testifying on these issues.

After trial, the parties jointly asked the Court to enter a final judgment of non-infringement regarding the claims of the Asserted Patents that were not asserted at trial (the "Stipulation").  D.I. 179.  The Stipulation defined "Norwich's current ANDA No. 214369" and "current ANDA Product" to include "amendments or supplements to the ANDA that **do not change the indications of use**, the polymorph forms, or the formulation."  D.I. 179 at 2 n.1 (emphasis added). This Court entered the Stipulation in May 2022.  D.I. 180.

On July 28, 2022, this Court directed the parties to file a jointly proposed final judgment based on the Court's conclusion that all claims asserted at trial were infringed and the Asserted HE Patent claims were valid.  D.I. 189.  Instead, both parties filed proposed judgments, with joint letters outlining each party's position.

Consistent with the statute, Salix explained that the final judgment should order "the FDA approval date for 'Norwich's ANDA No. 214369.'"  D.I. 190.

Norwich, in contrast, asked this Court to order "the FDA approval date for . . . 'Norwich's ANDA with proposed labeling containing the HE indication.'" D.I. 190. Norwich stated that its proposed judgment accounted for Norwich's anticipated carve-out of the HE indication. *See* D.I. 190 at 3 ("This proposal would leave Norwich the option of seeking to amend its ANDA, which has not been tentatively approved, to carve out the HE indication pursuant to 21 U.S.C. § 355(j)(2)(A)(viii).").

On August 10, this Court agreed with Salix, entering a judgment ordering that "the effective date of any final approval by the [FDA] of Norwich's ANDA No. 214369 is to be a date not earlier than the date of the expiration of the last to expire" Asserted HE Patents. D.I. 193.

Just weeks later, on September 7, Norwich filed a motion to amend the judgment under Rule 60(b), again asking this Court to limit its judgment to a label containing the HE indication. Norwich explained that on September 6, it submitted a proposed amended label for its ANDA Product to FDA. We refer to this as the "Amended ANDA" and the label as the "New Label."

Norwich has submitted no evidence regarding FDA's views on its New Label, and it is unknown whether FDA will accept Norwich's attempted carve-out or in what form.

To the best of Salix's knowledge, Norwich still does not have tentative approval of its ANDA. Norwich continues to decline Salix's request for status updates. Other than the materials Norwich included in its Rule 60(b) motion, the last FDA correspondence Norwich produced was an October 18, 2021 Complete Response Letter, in which FDA stated that it could not approve the ANDA in its present form and requested, among other things, ██████████████████ ████████████████████████████████████████████████ ████████████████ Norwich has not disclosed whether it has responded to this letter, and if so, FDA's reaction to Norwich's response.

After the Court entered judgment, Salix requested that Norwich provide an update as to the status of its ANDA and produce all unproduced correspondence and future correspondence with FDA regarding its ANDA. Exhibit 1. Norwich refused, stating: "Plaintiffs' justification for seeking information about Norwich's ANDA and future business plans is therefore unsupported at least because, absent a change in circumstances and/or a request made of the Court, Norwich's ANDA cannot be approved until 2029." Exhibit 2.

Salix now files this response to Norwich's motion to modify the judgment.

## ARGUMENT

## I.   Norwich Is Not Entitled to the Extraordinary Remedy of Relief Under Rule 60(b).

Norwich fails to grapple with the strict standard for Rule 60(b) motions. These motions request "extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (internal citation and quotation marks omitted); *Gochin v. Thomas Jefferson Univ.*, 667 F. App'x 365, 367 (3d Cir. 2016) (same); *Gibson v. J.P. Harris Assocs.*, 637 F. App'x 58, 60 (3d Cir. 2016) (same).

Norwich purports to rely on Rule 60(b)(5) and Rule 60(b)(6), but it never develops any argument under Rule 60(b)(6), arguing only that "the judgment has been satisfied, released, or discharged" and that "applying it prospectively is no longer equitable" under Rule 60(b)(5). *See* Mot. at 5 & n.2. Neither argument is correct, and no case supports the relief sought by Norwich. Indeed, multiple courts have rejected similar attempts to game the system by amending an ANDA after final judgment. Norwich's Rule 60(b) motion should be denied.

For two years, Salix and Norwich litigated this case under the Abbreviated New Drug Application initially filed by Norwich, and Norwich never sought to amend its label to remove any infringing indications. The parties completed discovery, and this Court entered the final pretrial order, conducted the trial, and entered final judgment based on that ANDA—as the Hatch-

Waxman Act requires.  After losing at trial, Norwich's last-minute decision to amend its requested label to delay an appeal and undo this Court's judgment comes far too late in the day.  The relief Norwich seeks from the final judgment conflicts with the Hatch-Waxman Act's clear terms, distorts Rule 60(b), and contradicts its trial strategy.  Norwich's Rule 60(b) motion should be denied.

## A. Norwich Cannot Rely on Its Own Acts as Changed Circumstances to Modify the Judgment.

Norwich contends that its filing of the Amended ANDA constitutes changed circumstances that make it no longer equitable to apply this Court's judgment prospectively.  Fed. R. Civ. P. 60(b)(5).  Norwich's position has been rejected by each court that has considered the issue.

### 1. Norwich's unilateral decision to modify its label was not an unforeseen circumstance.

In deciding whether to grant relief under Rule 60(b)(5), the Third Circuit has identified the "central" consideration as "whether the modification is sought because changed conditions **unforeseen by the parties** have made compliance substantially more onerous or have made the decree unworkable." *Bldg. & Constr. Trades Council of Phila. & Vicinity, AFL-CIO v. N.L.R.B.*, 64 F.3d 880, 888 (3d Cir. 1995) (emphasis added).  Wright & Miller concurs that relief under Rule 60(b)(5) is unavailable when "changed circumstances were contemplated at the time the decree was entered."  Mary Kaye Kane, Federal Practice and Procedure § 2863 (3d ed. 2022).

Here, there are no "changed conditions" that were not contemplated—there is only unilateral action by Norwich, which voluntarily chose to amend its ANDA: the very circumstances Norwich already previewed in its proposed judgment that the Court rejected.  Norwich is not reacting to changed conditions—it is attempting to create them to escape the consequences of its own litigation decisions.

Nor were these circumstances "unforeseen." Norwich claims that it "could not have reasonably predicted that it would not prevail on the merits on the Asserted HE Patents." Mot. at 17. But "[e]very patent case involving disputes as to infringement and validity can inherently result in numerous combinations of infringement/validity that are each entirely foreseeable by the parties involved." *Allergan, Inc. v. Sandoz Inc.*, No. 2:09 CV-200, 2013 WL 6253669, at *3 (E.D. Tex. Dec. 3, 2013), *aff'd*, 587 F. App'x 657 (Fed. Cir. 2014). Additionally, the parties' post-trial briefing makes clear that Norwich fully contemplated these modifications before this Court entered judgment. D.I. 196 at 4. Norwich already asked this Court to enter judgment based on what might happen if "Norwich were to carve out the HE indication from its proposed ANDA labeling." *Id.* This Court properly refused to do so, and Norwich's unilateral post-judgment actions do not justify the extraordinary remedy of modification under Rule 60.

### 2.  Circumstances have not changed.

Nor have circumstances changed in the weeks since this Court entered the judgment. At most, Norwich's motion shows that it has submitted an amended label to FDA. But Norwich submits no evidence showing that FDA will accept its New Label, and in light of Norwich's removal of ███████████████████████████████ approval is far from certain. *See* 21 C.F.R. §314.127(a)(7) (requiring that differences in the labels "do not render the proposed drug product less safe"); Applications for FDA Approval to Market a New Drug, 68 Fed. Reg. 36,676, 36,682 (June 18, 2003). Salix has requested discovery on correspondence between Norwich and FDA, but Norwich has refused to provide it.

This Court's judgment does not prevent FDA from giving tentative approval (or disapproval) to Norwich's New Label. And FDA may well order other changes to the New Label, such as restoring safety information. At this point, the Amended ANDA is simply a request by Norwich, with no indication of FDA's response. As this Court previously noted, it "cannot rule

on facts that are not before [it]." D.I. 192 at 2. That holding applies equally to Norwich's requested amendment.

Indeed, Norwich's proposed judgment seeks essentially the same relief it sought in its initial form of judgment in different words. *Cf* D.I. 190 at Ex. B (seeking to limit judgment to ANDA with label including an HE indication) *with* D.I. 206, Ex. A, B (seeking to limit judgment to ANDA submitted before August 10, 2022 with a paragraph IV certification for the HE indication). But to extent any substantive differences exist, Norwich fails to explain why it did not offer its current proposal to the Court before judgment was entered. Norwich's request amounts to a belated request for reconsideration.

### 3. This Court's judgment follows the statute and orders the effective date of "approval of the drug . . . involved in the infringement."

This Court's judgment properly follows the plain language of Section 271(e)(4)(A). When there has been an act of infringement by the filing of an ANDA, "the court **shall** order the effective date of any approval of the drug . . . involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed." 35 U.S.C. § 271(e)(4)(A) (emphasis added). This statutorily mandated remedy contrasts sharply with other remedies mentioned in the Act, where Congress expressly preserved judicial discretion. *See* 35 U.S.C. § 271(e)(4)(B) ("injunctive relief may be granted"); 35 U.S.C. § 271(e)(4)(C) ("damages or other monetary relief may be awarded"). Where, as here, Congress specifically mandates certain relief while designating others as discretionary, the mandatory remedies bind courts. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress' use of the permissive 'may' . . . contrasts with the legislators' use of a mandatory 'shall' in the very same section. Elsewhere in [the statute], Congress used 'shall' to impose discretionless obligations[.]"); *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) ("The word 'shall' is ordinarily 'The language of command[.']  And when the

8

same Rule uses both 'may' and 'shall', the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." (citation omitted)).  Nothing in the statute suggests any discretion to order the lesser remedy requested by Norwich.  *See Pfizer Inc. v. Teva Pharms. USA, Inc.*, 803 F. Supp. 2d 464, 467 (E.D. Va. 2011) (denying defendant's motion to modify the judgment because there was no indication that modification could "be reconciled with the clear, statutorily-mandated effective date set forth in 35 U.S.C. § 271(e)(4)(A)" and refusing to depart from the "unambiguous statutory language").

As the Supreme Court explained, in addition to creating an "artificial" "defined act of infringement," the Hatch-Waxman Act provides for "specified consequences, as set forth in subsection (e)(4)."  *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990).  This Court's judgment merely enforces the consequences specified by Congress.

If Norwich wanted to avoid this statutory remedy, then it needed to modify its proposed label before trial, not after.  Had it done so, the parties could have conducted discovery concerning the impacts of its proposed "skinny label" and disputed issues could have been resolved at trial.  This is precisely the path other litigants have chosen in similar suits, amending their ANDAs to propose "skinny labels" before close of discovery, before the final pre-trial order, and before trial.  *See Takeda Pharms., U.S.A., Inc. v. Par Pharms. Co*., Nos. 13-1524-SLR, 13-1729-SLR, at 10-11 (D. Del. Sept. 4, 2014) (slip op.) (allowing plaintiff to file an amended complaint after defendants had carved out original indication in their proposed labels); *see also* D.I. 190 (noting that another ANDA filer (Sandoz) removed information from its label **before** litigation began).  There is no reason that Norwich could not have done the same.  Instead, Norwich chose to proceed to trial on its original ANDA with its original label, and this Court entered final judgment accordingly.

9

This Court did not base its judgment on equitable considerations but on the statutory mandate. Norwich identifies no authority permitting this Court to modify this judgment and depart from the statutory mandate based on equitable considerations.

### B.    Norwich Has Not "Satisfied" the Judgment.

Norwich contends that its "Amended ANDA effectively satisfies the judgment on the Original ANDA." Mot. at 7-8. Norwich cites no authority supporting the proposition that its Amended ANDA constituted "satisfaction" of the judgment under Rule 60(b)(5) because there is none.

This clause of Rule 60(b)(5) has been applied in two circumstances. The first involves "institutional reform litigation." *Horne v. Flores*, 557 U.S. 433, 447 (2009). Such litigation involves injunctions that "often remain in force for many years," during which "the passage of time frequently brings about changed circumstances." *Id.* at 448-49. And "institutional reform injunctions often raise sensitive federalism concerns." *Id.* at 449. Because of these "features of institutional reform decrees," the Supreme Court has "held that courts must take a 'flexible approach' to Rule 60(b)(5) motions addressing such decrees." *Id.* at 450. These principles have no application here.

And even in these circumstances, "[t]he vast majority of motions for modification and termination of consent decrees, especially those involving institutional reform, invoke Rule 60(b)(5)'s third clause." *Frew v. Janek*, 780 F.3d 320, 327 (5th Cir. 2015). "In contrast, the first clause of Rule 60(b)(5) is raised far less often." *Id.*

The second circumstance—the typical circumstance in which the first clause of Rule 60(b)(5) is raised—is "when there is a dispute over the amount of the [money] judgment." *Id.*; *see Sunderland v. City of Philadelphia*, 575 F.2d 1089, 1091 (3d Cir. 1978) ("remand[ing] to the district court for the purpose of entering an order [under Rule 60(b)(5)] relieving the defendant

10

from that judgment to the extent of $7,500"); *see also Nat'l Elevator Indus. v. McLaughlin*, 773 F.

App'x 671, 673 (3d Cir. 2019) (evaluating Rule 60(b)(5) relief from a judgment lien).

No authority supports Norwich's contention that its Amended ANDA "satisfied" the

judgment within the meaning of Rule 60(b)(5).

### C.   The Only Cases to Consider the Issues Have Refused Similar Relief.

The relief sought by Norwich appears to be unprecedented.  Norwich identifies no case

modifying a judgment under Rule 60(b)(5) based on the filing of an Amended ANDA, and we

have located none.

The most that Norwich can say is that "[r]elief from judgment under Rule 60(b) has also

been granted in patent cases."  Mot. at 14.  But none of these cases involves the Hatch-Waxman

Act, much less holds that submitting an amended ANDA justifies modifying a judgment under

Rule 60(b)(5).

In Hatch-Waxman cases, courts have refused to allow defendants to make similar post-

judgment modifications.  In *Allergan, Inc. v. Sandoz Inc.*, 2013 WL 6253669, the defendant moved

under Rule 60(b) for the court to "make a determination that Sandoz's amended ANDA does not

infringe."  *Id.* at *2.  Like Norwich's Amended ANDA, "the amendment purport[ed] to carve out

an infringing element in an attempt to escape the judgment."  *Id.* at *3.

The district court readily rejected the argument that the defendant's foreseeable, intentional

act in amending its ANDA could justify modifying the judgment:

> Sandoz has not alleged a single change in its circumstances that was brought about
> by new or unforeseen conditions.  The only changed circumstance that is relevant
> to Sandoz's non-infringement argument is the ANDA that it voluntarily amended
> after the Federal Circuit affirmed validity of the '149 patent.  This was an
> intentional act that cannot be fairly characterized as unforeseen or unexpected.

*Id.*  Like Norwich's Amended ANDA, "the changed ANDA occurred entirely through the actions

of Sandoz and, by definition, is not beyond the defendant's control."  *Id.*   And like Sandoz,

Norwich tried its case, lost, and "is now trying to change positions to obtain another chance at non-infringement via the modified ANDA." *Id.* Norwich "must live with the consequences of the choices it freely made, and the calculated decisions it strategically reached in the course of prior litigation." *Id.*

Another court in this district, considering similar issues of a defendant's attempt to amend an ANDA after trial, noted the need to "prevent a waste of judicial resources." *Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*, No. CV 14-1119-MSG, 2019 WL 3574249, at *7 (D. Del. Aug. 6, 2019). Courts and parties need "certainty on the issues of infringement to be tested at trial." *Id.* As in *Forest Laboratories*, "there was no discussion at the trial before [the court] suggesting that [Norwich] would or should amend its ANDA to moot the issue of infringement." *Id. See also Onyx Therapeutics, Inc. v. Cipla Ltd*., C.A. 16-988 (LPS) (D. Del. May 13, 2020) (final judgment rejecting defendant's proposal to "carve out" future modification of its proposed ANDA product) (Final Judgment and related Status Report attached as Exhibit 3).

Norwich cannot distinguish these cases. Its attempt to do so are unrelated to the courts' reasoning. For example, Norwich asserts that the ANDA-filer (Sandoz) in *Allergan* "maintained an active Paragraph IV certification to the asserted patents." Mot. at 8, 15. But Sandoz, like Norwich, filed its purported carve-out under Section viii. *See Allergan Sales, LLC v. Sandoz, Inc*., 211 F. Supp. 3d 907, 918 (E.D. Tex. 2016) ("Sandoz's section viii carve out, which omits the words 'glaucoma or' from the label, indicates that it is seeking approval from the FDA to 'market the generic drug for a different method of use' than the methods of use claimed in Sandoz's [original] ANDA product."). Sandoz did not and could not "maintain" its original paragraph IV certification as to the infringed patent. *Apotex, Inc. v. Daiichi Sankyo, Inc*., 781 F.3d 1356, 1364 & n.3 (Fed. Cir. 2015). More importantly, Sandoz did not send a new paragraph IV certification

for its amended label until **after** the Federal Circuit affirmed the denial of Sandoz's Rule 60(b) motion to modify the injunction. *Allergan Sales*, 211 F. Supp. 3d at 913. Sandoz's paragraph IV certification did not factor—and could not have factored—into the decisions on its Rule 60(b) motion. And the paragraph IV certification is not even mentioned in the decision. The same is true of *Forest Laboratories*, in which the decision denying the Rule 60(b) does not mention any paragraph IV certification. 2019 WL 3574249. Norwich's attempt to distinguish these cases on this basis is unavailing.

Norwich made the choice, before trial, not to seek amendment of its ANDA. It cannot undo the judgment now that it has lost and regrets its litigation strategy. Rule 60 offers it no relief.

## II.   The Court Should Deny Norwich's Request for Summary Adjudication of an Important and Difficult Question.

Norwich argues that the judgment should be modified because the New Label does not infringe the Asserted HE Patents. D.I. 206 § V(A)(3). In so doing, Norwich's Rule 60(b) motion is "tantamount to seeking summary judgment," *Allergan*, 2013 WL 6253669, at *3, on an issue that is not properly before the Court and without the benefit of discovery and full argument.

Norwich's own authority makes clear that infringement following an attempted carve-out is a "quintessential fact question" that should not be resolved as a matter of law. *Glaxosmithkline LLC v. Teva Pharms. USA, Inc*., 7 F.4th 1320, 1328, 1330 (Fed. Cir. 2021) ("Critically, the district court erred by treating this fact question—whether the [remaining] indication instructs a physician to prescribe carvedilol for a [carved-out] use—as though it were a legal one for it to decide *de novo*."); *H. Lundbeck A/S v. Apotex Inc*., No. CV 18-88-LPS, 2019 WL 6065466, at *2 (D. Del. Nov. 15, 2019) (holding that infringement did not become "strictly legal" because the ANDA-filer "'carved out' [certain] patents by filing section viii statements," but rather involved "a number of factual issues"); *see also United Therapeutics Corp. v. Sandoz, Inc*., No. 12-CV-01617, 2014 U.S.

13

Dist. LEXIS 52353, at *13-14 (D.N.J. Apr. 16, 2014) (finding a "carve out theory does not warrant judgment as a matter of law," where patentee argued a "label implicitly instructs" infringing use, which turned on circumstantial evidence of intent). This precedent forecloses Norwich's theory that a carve-out confers an automatic exemption to inducement, which this Court can summarily adjudicate post-judgment on the papers.

Because infringement is a factual question, additional fact and expert discovery would be needed before the Court could decide if the New Label infringes the Asserted HE Patents. *Cf.* Fed. R. Civ. P. 56(d). As an initial matter, FDA has not accepted the New Label, and as noted above, it may change before a fact-finder is properly called upon to decide infringement. And the Federal Circuit routinely upholds inducement findings based on evidence, such as FDA correspondence and the ANDA-filer's marketing efforts, that Salix has not had an opportunity to discover.

For example, in *AstraZeneca LP v. Apotex, Inc*., 633 F.3d 1042 (Fed. Cir. 2010), the claims required once-daily dosing. The ANDA-filer (Apotex) submitted a Section viii statement removing "all mention of once-daily dosing" from its label. *Id.* at 1057. The court nevertheless found the patentee likely to prevail on infringement. Relying in part on FDA correspondence, the court concluded that the label would "necessarily lead . . . at least some" patients to use the drug once daily. *Id*. at 1057, 1060. The court further cited testimony concerning Apotex's dealings with FDA and Apotex's failure to pursue alternatives that would more clearly preclude once-daily dosing as evidence of Apotex's specific intent to induce infringement. *Id*. at 1058-59.

Moreover, the Federal Circuit recently reaffirmed in *Glaxosmithkline* that ANDA-filers could be held liable for inducing infringement based not only on labels but also on any "active steps to encourage doctors or patients to use the drug in an infringing manner." 7 F.4th at 1326 (citation omitted). The brand label there included three indications: treating hypertension, treating

14

congestive heart failure (CHF), and reducing cardiovascular mortality. Teva's generic label carved out the CHF indication. The Federal Circuit relied on evidence outside the label, including "testimony from Teva's own witnesses, showing that Teva encouraged carvedilol sales for CHF despite its attempted carve-out," as support for the finding that Teva induced infringement. *Id.* at 1335. The *Glaxosmithkline* court also relied on extensive expert testimony.

Here, the parties have conducted no fact or expert discovery concerning the New Label. And Norwich's arguments only underscore the need for experts. Norwich asserts that the IBS-D and HE indications are directed to "distinct populations." Mot. at 11. But the overlap between those populations should be decided (if at all) based on expert testimony, not the unsubstantiated say-so of Norwich's counsel. *See Glaxosmithkline*, 7 F.4th at 1330 (district court erred by reweighing evidence and discounting "overlap between populations of patients"). Whether the instruction ultimately included in Norwich's label will cause "at least some" HE patients to take 550 mg twice a day for 12 months or longer likewise would depend on expert testimony, not attorney argument. *AstraZeneca*, 633 F.3d at 1060.

Without this discovery and the opportunity to fully develop its arguments, attempting to resolve infringement by the New Label post-judgment would prejudice Salix. Throughout the litigation, Salix made strategic choices based on the label in the ANDA, such as allocating discovery resources and selecting patent claims to assert. Had Norwich submitted its New Label earlier, Salix would have tried this case differently. *See Forest*, 2019 WL 3574249, at *8 ("[I]t is neither fair to [plaintiff] nor an efficient use of judicial resources for me to guess as to how the parties will modify their arguments based on the [ANDA] amendments.").

And in evaluating whether the New Label infringes, Salix (and any court) will not be limited to the claims asserted by Salix at trial. Norwich's proposed modification of the judgment

15

fails to account for the other claims of the Asserted Patents.  The Stipulation and Order make clear that the stipulated final judgment of non-infringement applies to "Norwich's current ANDA No. 214369" and "current ANDA Product" **only so long as** amendments "do not change the indication of use."  D.I. 180.  By trying to carve out the HE indication in its New Label, Norwich has changed the indication of use for its ANDA Product, rendering the Stipulation and Order inapplicable.

Now that the case has proceeded to trial and this Court has entered final judgment, the effective approval for the drug in the ANDA No. 214369 has been set.  Rule 60(b) does not allow Norwich to evade this Court's judgment and short-circuit the ordinary rules of litigation.

## **CONCLUSION**

For these reasons, the motion to modify the judgment under Rule 60(b) should be denied.

OF COUNSEL:

Scott K. Reed
Steven C. Kline
Shannon K. Clark
Daniel A. Apgar
Alexis M. McJoynt
Damien N. Dombrowski
VENABLE LLP
1290 Avenue of the Americas
New York, NY  10104
(212) 218-2100

Becky E. Steephenson
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, NY  10020
(212) 307-5500

Michael J. Abernathy
Karen N. Fowler
Michael T. Sikora
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker, Suite 2800
Chicago, IL  60606-1511
(312) 324-1000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

_____
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiffs*

16

William R. Peterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002-5005
(713) 890-5000

September 21, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 21, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Karen E. Keller<br>Nathan R. Hoeschen<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 N. Market St., 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Matthew J. Becker<br>Stacie L. Ropka<br>Matthew S. Murphy<br>Chad A. Landmon<br>Rebecca L. Clegg<br>AXINN, VELTROP & HARKRIDER LLP<br>90 State House Square<br>Hartford, CT  06103<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Aziz Burgy<br>AXINN, VELTROP & HARKRIDER LLP<br>1901 L Street NW<br>Washington, DC  20036<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Richardo S. Camposanto<br>AXINN, VELTROP & HARKRIDER LLP<br>560 Mission Street<br>San Francisco, CA  94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

*/s/ Karen Jacobs*
Karen Jacobs (#2881)